1  Leodis C. Matthews [SBN 109064]
   **MATTHEWS & PARTNERS**
2  SUITE 200
   4322 WILSHIRE BOULEVARD
3  LOS ANGELES, CALIFORNIA 90010-3792
   TELEPHONE: 323.930.5690
4  FACSIMILE: 323.930.5693
   LEESQ@AOL.COM
5
   Attorneys For: PLAINTIFF
6  **C-ONE TECHNOLOGY**
   **& PRETEC ELECTRONICS CORPORATION.**
7

*FILED*

8  MAY 1 2 2008

**RICHARD W. WIEKING**
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8  **UNITED STATES DISTRICT COURT**

9  **NORTHERN DISTRICT OF CALIFORNIA**

10 **SAN FRANCISCO DIVISION**

11 CV 08 2442

12

13 **C-ONE TECHNOLOGY & PRETEC**        **CASE NUMBER:**
   **ELECTRONICS CORPORATION**

   MEJ

14
                                        **CLAIM FOR DAMAGES**
15            **Plaintiff**

                            1) **BREACH OF WRITTEN CONTRACT;**
16
                            2) **BREACH OF ORAL CONTRACT;**
17
   - Vs -                   3) **BREACH OF FIDUCIARY DUTY;**
18
                            4) **FRAUD AND DECEIT**
19
                            5) **PROFESSIONAL NEGLIGENCE**
20 **MOUNT & STOELKER, P.C., & Daniel S.**
   **Mount**, inclusive        6) **EQUITABLE INDEMNITY**
21
                            7) **DECLARATORY RELIEF**
             **Defendant.**
22

23

24     COMES NOW, C-ONE TECHNOLOGY ["C-One"] AND PRETEC ELECTRONICS

25 CORPORATION ["Pretec"] by and through its attorneys of record, Leodis C. Matthews, of

26 Matthews and Partners, who hereby submit the following Claim for Damages and allege as

27

28 **CLAIM FOR DAMAGES**
   **C-ONE TECHNOLOGY -v- MOUNT & STOELKER**
   **Case No.**

1 follows:

2 **THE PARTIES**

3    1    At all times herein relevant, Plaintiff C-One is and was a Taiwanese
4 Corporation which has its principal place of business in Hsin-Chu, Taiwan.

5    2.    Plaintiff Pretec was at all times herein relevant a California Corporation[1] which
6 had its principal place of business in the City of Fremont, California and, while operational,
7 handled the distribution of C-One's technological products in the United States, which
8 included certain and specific flash memory devices.

9    3    At all times herein relevant, Defendant Mount & Stoelker, P.C. ["M&S"] is
10 and was a Professional Corporation engaged in the practice of law with its principal office
11 located in the City of San Jose, County of Santa Clara, State of California, which holds itself
12 out as having an international client base and which "specializes in intellectual property
13 litigation". M&S further represents that it has "successfully represented clients in lawsuits
14 involving (among other things) Patent(s)" and employs attorneys who "are knowledgeable
15 about technologies", including but not strictly limited to "Electronic Circuitry" and "Memory
16 Devices"[2].

17    4.    At all times herein mentioned Defendant Daniel S. Mount was licensed to
18 engage in the practice of law in the State of California and was practicing law at M&S
19 located at Suite 1650, 333 West San Carlos, San Jose, California [collectively M&S]..

20    5.    C-One and Pretec are informed and believe, and thereon allege, that each of
21 the named and fictitiously-named Defendants, inclusive, are responsible in some manner for
22 the occurrences and circumstances herein alleged and that C-One and Pretec's damages as
23 herein alleged were directly and/or proximately caused by said Defendants, and each of them.

24    6.    C-One and Pretec are informed and believe, and thereon allege, that at all times

25 ----------

26    [1] Pretec's corporate structure has since been dissolved

27    [2] Ref.: http://www.mount.com/index.cfm (Areas of Practice: Intellectual Property Litigation)

28 **CLAIM FOR DAMAGES**
**C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
**Case No.**                                                                    Page -2-

1   herein mentioned, said Defendants, and each of them, were the agents, servants, employees

2   or partners of each of the remaining Defendants, and acting within the course and scope of

3   such agency and employment and with the full knowledge and consent of all other

4   Defendants when performing the acts herein alleged.

5                             **JURISDICTION AND VENUE**

6       7.     This Court has jurisdiction over the subject matter of this Complaint pursuant

7   to 28 U.S.C. § 1332 and the venue is proper [28 U.S.C. § 1391] because [a] Plaintiff C-One

8   is a foreign corporation with no significant ties to this State and whose officers and directors

9   are all foreign nationals; [b] there is complete diversity of citizenship between Plaintiff C-

10   One and all Defendants; [c] the amount in controversy exceeds the sum of $75,000.00

11   exclusive of interest and costs; and [d] a substantial part of the events giving rise to the claim

12   occurred in this District.

13                             **GENERAL ALLEGATIONS**

14   A.    Introduction

15       8.     The genesis of this claim lay on the well founded legal principals of contract,

16   indemnification, professional responsibility, and the fiduciary duties which attorneys owe to

17   their respective clients throughout the course of the attorney-client relationship and beyond.

18   B.    M&S's Involvement In The Federal Patent Claims

19       9.     On or about April 21, 2001 Lexar Media, Inc.["Lexar"][3], filed a patent

20   infringement case in federal district court (Northern District of California Case No 00-4770

21   MJJ) against several defendants, including Pretec, C-One[4] and Memtec Products, Inc.

22

23

24

25      [3] Referred to in M&S invoices as "File No. Prete.001"

26      [4] C-One was substituted in later in time in the stead of a fictitiously named Doe Defendant
27   (See Below)

28   **CLAIM FOR DAMAGES**
     **C-ONE TECHNOLOGY -v- MOUNT & STOELKER**
     **Case No.**                          Page -3-

1  ["Memorex"][5], alleging that the flash memory controller units manufactured by C-One,

2  distributed by Pretec, and sold by Memorex infringed upon five of Lexar's patents.

3      10.    On or about July 30, 2001 C-One and Pretec entered into a written

4  indemnification agreement with Memorex whereby C-One and Pretec agreed to fully defend,

5  indemnify, and hold Memorex harmless from and against all claims or causes of action that

6  have been raised, could have been raised by Lexar or any third party in connection with any

7  Products sold by Memorex that may infringe or violate the patent, copyright, trade secret, or

8  other intellectual property right of a third party. More specifically, the scope of this

9  indemnity included, without limitation, the following:

10      1. . . . .(I) the obligation of C-One and Pretec to pay on behalf of
Memtek any and all losses, costs, damages (compensatory and punitive),
11  expenses, judgments, settlements, awards of costs or attorney fees, royalties,
or any other amounts arising out of any claim that Memtek paid or is required
12  to pay to opposing parties in connection with such claims; and (ii) the
obligation for C-One and Pretec to assign counsel of its choice acceptable to
13  Memtec to undertake the professional responsibility of representing Memtek
in Lexar's claim and to assert any counterclaims, cross-claims, and/or third
14  party claims arising out of the same transaction or series of transactions, and
to pay all fees and expenses of such counsel and other professionals rendering
15  assistance to such counsel. . . . ..

16      2. C-One and Pretec agree to instruct its counsel to communicate with
Memtec . . . and to keep Memtec regularly informed of the progress of the
17  Action, settlement discussion, and any related third party claims or allegations
of infringement. Memtec retains the right to have its counsel participate in any
18  proceedings relating to Lexar's and/or any third party claims at Memtec's sole
cost and expense; provided, however, that if Memtec claims that C-One or
19  Pretec has breached this Agreement or is not satisfied with the legal
representation being provided by C-One or Pretec on its behalf, then Memtec
20  also reserves the right to serve written notice in C-One or Pretec and to have
its own counsel resume representation of Memtec, and in that event Memtec
21  reserves the right to seek recovery of all damages, attorney fees, and costs, and
C-One and Pretec reserve the right to raise all claims and defenses thereto.

22  

23      11.    Thereafter, on or about October 20, 2001, SanDisk Corporation ["SanDisk"][6]

24  

25      [5] PNY Technologies, Inc., a Delaware Corporation, was also a named defendant in this
action and Pretec and C-One also provided a defense for PNY for certain claims pursuant to its
26  distributor agreement.

27      [6] Referred to in M&S invoices as "File No. Prete.002".

28  **CLAIM FOR DAMAGES**
**C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
**Case No.**                        Page -4-

1    filed a separate a separate complaint in federal district court (Northern District of California

2    Case No 01-4063 VRW) against, amongst others, Memorex and Pretec in which it alleged

3    that the flash memory technologies products distributed by Pretec Memorex infringed on a

4    SanDisk patent. C-One was never a named party in the SanDisk case.

5    12.    Pursuant to the express terms of the Indemnity Agreement set forth above C-

6    One and Pretec were obliged to indemnify and hold Memorex harmless in the SanDisk case

7    as well.

8    13.    On September 26, 2003 Memorex filed a Complaint for Declaratory Relief,

9    Breach of Contract, and Injunctive Relief against both C-One and Pretec (Alameda Superior

10    Court Case No RG03118916) alleging specific breaches of the Indemnification Agreement[7].

11    14.    Initially, attorney Thomas C. Jeing was retained to represent Pretec and

12    Memorex in both the Lexar and SanDisk federal court actions in or around October 2001.

13    However, in or around October 2002, it became apparent that Mr. Jeing had abandoned any

14    meaningful representation of either Pretec or Memorex in both of these pending patent

15    infringement cases[8].

16    15.    On or about October 7, 2002 M&S was retained to represent Pretec, and the

17    two American distributors, Memorex and PNY, in the Lexar litigation but Memorex declined

18    to accept M&S's representation and instead retained the firm Keker & VanNest, LLP, to

19    represent its interests.

20    16.    M&S was also retained on that October 7, 2002 date to represent both Pretec

21    and Memorex in the SanDisk case. M&S continued to represent Memorex in SanDisk

22

23

---

24    [7] These allegations and their implication on this instant claim will be discussed more

25    fulsomely below.

26    [8] Mr. Jeing also abandoned several other clients' cases during this same time and was
ultimately disciplined by the California State Bar [Case Nos. 03-O-02715, 03-O-03913, and 04-O-

27    13948]

28    **CLAIM FOR DAMAGES**
**C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
**Case No.**      Page -5-

1     through on or about November 14, 2002[9].

2        17.   On May 8, 2003 C-One was served in Taiwan with a summons and an amended
3     complaint naming it as an additional defendant in the Lexar litigation at which time M&S
4     appeared on behalf of C-One as its attorneys of record. Although M&S actively represented
5     both C-One and Pretec in Lexar until May 30, 2006, at which time its motion to withdraw
6     as attorneys of record was granted[10], no retainer agreement was ever entered into by and
7     between C-One and M&S regarding this representation.

8        18.   On July 11, 2003 Memorex sent a letter to C-One and Pretec requesting that
9     they approve and finance a proposed settlement agreement by and between Memorex and
10    SanDisk. Acting on the advice of M&S, C-One and Pretec informed Memorex that it would
11    neither approve nor finance the settlement agreement and further went on to assert that they
12    were not obligated under the indemnification agreement to pay for the fees and costs of
13    Memorex's separate representation in both Lexar and SanDisk.

14       19   M&S ceased to actively participate and represent Pretec in SanDisk after filing
15    its first motion to withdraw in May 2006. M&S's second motion to withdraw as counsel for
16    Pretec was also denied on June 6, 2007 "for the same reasons and with the same conditions
17    as its prior (May 2006) motion to withdraw"; to wit: M&S "fails to show that Pretec has
18    obtained substitute counsel or that Pretec refuses to engage new counsel. To the contrary,
19    the current motion requests that the court allow counsel to withdraw and "provide Pretec with
20    appropriate time to engage new counsel".

21       20.   On June 14, 2005 Memorex was dismissed from Lexar with prejudice based
22    on its approval of the settlement agreement and mutual release reached by and between its
23    attorneys (not M&S) and those representing the Plaintiff.

24

25

26       [9] More fulsomely discussed in subsections "C" below

27      [10] The court gave C-One and Pretec thirty days to find substitute counsel

28   **CLAIM FOR DAMAGES**
    **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
    **Case No.**                     Page -6-

1    21.    On November 8, 2006 a stipulated order was entered in Lexar which
2  substituted the firm Beck, Ross, Bismonte & Finley, LLP, as attorneys of record for PNY in
3  the stead of M&S.

4    22.    Thereafter, on April 18, 2007 PNY entered into a settlement agreement with
5  the Plaintiff in Lexar which resulted in its dismissal from the case with prejudice on May 8,
6  2007.

7    23.    It is noted with acute particularity that in the Lexar litigation, all named
8  defendants have already settled and have been dismissed except for C-One and Pretec and,
9  with respect thereto, since retaining new counsel on June 30, 2007, C-One has reached a
10  settlement with the Plaintiff in the Lexar matter.

11    24.    Similarly, Pretec, with the same new counsel, has also reached a settlement in
12  the SanDisk litigation (all other Defendants having long since either settled or dismissed on
13  other grounds).

14  C.    Memorex's Superior Court Action Against C-One And Pretec

15    25.    On September 26, 2003 filed a complaint against C-One and Pretec for
16  Declaratory Relief, Breach of Contract (the indemnity agreement referenced above), and
17  Injunctive Relief [Alameda Superior Court Case No. RG03118916] in which M&S appeared
18  as the attorneys of record for both C-One and Pretec.

19    26.    In its Statement of Decision of April 26, 2006 (Phase One), the Court found
20  that Memorex was "justified, using an objectively reasonable standard of acceptability, in
21  finding that (M&S) and their actions unacceptable under the terms of the Indemnification
22  Agreement". In making this finding, the Court cited, *inter alia,* the following established
23  facts:

24        a.    That M&S failed to communicate with Memorex's designated in-house
25  counsel;

26        b.    That M&S did not communicate regularly to Memorex the status of
27

28  **CLAIM FOR DAMAGES**
    **C-ONE TECHNOLOGY -v- MOUNT & STOELKER**
    **Case No.**                                                        Page -7-

1    important events in the SanDisk case;

2    c.    That M&S failed to provide Memorex with copies of the pleadings in
3    the SanDisk case and did not clearly state the position it was taking in the SanDisk sanctions
4    regarding Memorex and Pretec's respective conduct and culpability; and

5    d.    That M&S failed to inform Memorex that SanDisk was attempting to
6    obtain sanctions against Memorex because of M&S's failure to present evidence that
7    Memorex had no knowledge of Mr. Jeing's actions[11].

8    27.    In making its ruling that Memorex had objectively reasonable grounds for
9    rejecting M&S, the Court made further and peculiar reference to a letter to Memorex from
10   an M&S attorney (Ron C. Finley), dated November 15, 2002, which it found illustrative of
11   "Memorex's concerns about the potential conflicts with" M&S's duel representation; noting
12   that the "letter begins by stating that it sets forth Pretec's position. The letter then refers to
13   Pretec as "our client". The letter takes positions adverse to Memorex in outlining why Pretec
14   did not believe it was responsible for Memorex's legal fees. . . . The tone of the letter, failure
15   to specifically state that Mr. Finley was neutral in any disputes between the parties, and
16   advocacy on behalf of Defendants' (C-One and Pretec) position against Memorex, would
17   give the recipient Memorex reasonable doubt about the loyalties of Mr. Finley."

18   28.    The Court further found that (1) C-One and Pretec breached the terms of the
19   Indemnification Agreement and (2) that Memorex may recover damages as provided in
20   Section 2 of the Agreement subject to any remaining defenses C-One and Pretec may have.

21   29    Two months later, on June 26, 2006, M&S's motion to be relieved as counsel
22   for C-One and Pretec was granted.

23   30.    On December 15, 2006 a default judgment was entered against C-One and
24   Pretec and in favor of Memorex in the amount of $1,046,895.02 down as follows:

25

26   [11] In SanDisk, the court imposed sanctions against both Mr. Jeing and Memorex while in
     Lexar, where Memorex was represented by Keker and VanNest, sanctions were only imposed
27   against Mr. Jeing alone.

28   **CLAIM FOR DAMAGES**
     **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
     **Case No.**                                                      Page -8-

1          a.    $374,956.52 for attorney fees and costs incurred in the Lexar and

2 SanDisk cases;

3          b.    $486.939.50 for attorney fees and costs incurred in litigating the

4 Superior Court action; and

5          c.    $185,000.00 for the amount Memorex paid in settlement of the Lexar

6               case.

7 **D.    M&S Billings For Legal Services Rendered**

8     31.    M&S's invoices for fees ($3,759,224.42) and costs ($156,027.41) total

9 $3,915,251.73 were all billed to its Pretec. Both Pretec and C-One believe that M&S

10 contends that it is entitled to additional fees and costs over and above these amounts which

11 were all previously paid.

12     32.    For the reasons set forth immediately below, Pretec and C-One challenge both

13 the reasonableness and propriety of these fees and costs.

14                                 Time Increments & Blocked Billing[12]

15     33.    M&S billed time in 0.10 hour ( six minute) increments. Eighty-four (84%)

16 percent (9,221 of 10,922) were billed in a block billing (multitask) format and only 32 of

17 these total tasks were charged at the 0.10 hour increment.

18     34.    C-One and Pretec both contend that this method of billing prevented them from

19 not only evaluating the reasonableness of time and fees charged for individual tasks but also

20 prevented it from determining whether or not the total daily time and fees charged by any

21 particular timekeeper was overstated, inflated, or duplicative of work performed by others.

22     35.    C-One and Pretec are informed and believe that M&S charged $2,774,193.75

23 using blocked billing entries.

24

25

26     [12] Blocked billing is the practice of grouping multiple tasks in a single entry with only a

27 single time amount associated with all the tasks in the entry.

28 **CLAIM FOR DAMAGES**
**C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
**Case No.**                                         Page -9-

1        Lack Of Meaningful Review

2        36.   C-One and Pretec contend that the exercise of meaningful judgment is a crucial

3    element of attorneys' billing processes and that the appropriate exercise of this judgment

4    requires a good-faith effort to exclude from M&S billing statements time charges for tasks

5    that are excessive, redundant, or otherwise unnecessary.

6        37.   While occasional misspelling or typographical error is unavoidable by even the

7    most conscientious law firm, on the other hand, a number of obvious errors in billing entries

8    indicates a lack of attention by the law firm's billing partner as well as suggests the absence

9    of a meaningful billing review.

10       38.   As is applicable here, C-One and Pretec are informed and believe that 63

11   instances of obvious M&S task description errors were identified on all 87 invoices

12   reviewed, including the misspelling of party names ("Lexar" for "Lexar", "Ritec" for

13   "Ritek") and the misspelling of the *City By the Bay* ("San Fracisco" instead of "San

14   Francisco").

15       39.   Viewed in a vacuum this apparent lack of attention to detail may lose its

16   significance. However, C-One and Pretec contend that the failure of M&S billing attorneys

17   to identify and correct task description errors in the firms invoices is especially noteworthy

18   in the context of the frequency of charges at premium rates by M&S partner-level attorneys

19   for such things as "review", "attention to", and "consider" Lexar and SanDisk files and

20   documents.

21                          Double Billing[13]

22       40.   The invoices prepared and submitted by M&S to Pretec and paid by C-One

23   contain at least 5.65 hours, for a combined fee total of $2,091.00 which appear to be for

24   identical task descriptions.

25

26       [13] Double Billing is defined as tasks billed on the same day and performed by the same
27   timekeeper where the task descriptions and time billed are identical or nearly so

28   **CLAIM FOR DAMAGES**
     **C-ONE TECHNOLOGY -v- MOUNT & STOELKER**
     **Case No.**                                          Page -10-

1                             <u>Hourly Billing Increases</u>

2       41.      The fee agreements by and between M&S and Pretec provided for a maximum
3 hourly rate of $400 per hour for senior attorneys to a low of $190 per hour for youngest
4 attorneys. While the agreement further provided that this "rate schedule may increase from
5 time to time" at no time did M&S give Pretec any advance notice of an anticipated, future
6 rate increase prior to it being implemented.

7       42.      Claimants are informed and believe that, during the course of M&S's
8 representation of C-One and Pretec, M&S implemented rate increases for 13 timekeepers one
9 or more times, ranging from a low of 10% to a high of 89%, without prior notice. The rates
10 for named partner Daniel Mount increased by 19%.

11       43.      Claimants are further informed and believe that the total amount of fees billed
12 based on the increased rates was calculated to be at least $377,560.50.

13                      <u>Potentially Rounded-Up Time Entries</u>

14       44.      C-One and Pretec further contend that timekeepers who demonstrate an
15 obvious pattern (increments of 0.25, 0.50, or 1.00 hour) may be systematically overcharging
16 the actual time required to perform the task or tasks described.

17       45.      For example, attorney Mount submitted 588 total billing entries related to the
18 Lexar and SanDisk cases of which 554 (or 94%) suggest a significant pattern of potentially
19 round-up entries (63 entries were even-hour amounts, 158 entries were half-hour amounts,
20 and 333 were quarter-hour amounts). The total time charged by attorney Mount in these
21 increments totaled $481,862.50.

22                      <u>Non-Defense Related Activities</u>

23       46.      C-One and Pretec contend that a law firm's activities to prepare and obtain
24 court approval for a motion to withdraw are not considered defense-related tasks chargeable
25 to the client. Likewise, tasks related to winding up the relationship after withdrawal motion
26 has been filed are also considered noncompensable.

27

28    **CLAIM FOR DAMAGES**
     **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
     **Case No.**                                   Page -11-

1    47.    The invoices submitted by M&S display combined hours of 51.48 and
2   combined fees of $14,655.32 which identify tasks related solely to M&S's withdrawal from
3   the Lexar and SanDisk litigation.

4                              Vaguely Described Tasks

5    48.    C-One and Pretec contend that, at a minimum, task descriptions should identify
6   each service separately and in a manner sufficient to permit the client to determine the nature
7   of the professional services performed and its benefit to the client. Here, M&S, a law firm
8   which claims a level of expertise regarding patent litigation matters should be skilled in
9   drafting accurate task descriptions that are both highly descriptive and yet still preserve both
10   privileged and otherwise confidential client information.

11    49.    M&S firm task descriptions for the most part do not meet the objective
12   standards of specificity and for the most part are so unacceptably vague that they preclude
13   any insight into the nature of the task performed.  For instance:

14            a.    2,920 task descriptions referencing documents, issues and litigation
15   activities prefaced only with the phrase "attention to";

16            b.    924 task descriptions were charged to "consider" or "consider issues re
17   specific documents:

18            c    598 task descriptions relating to meetings, internal conferences and
19   telephone calls were so vaguely described that they shed absolutely no light on the subject
20   matter being discussed;

21            d.    250 task descriptions relating to correspondence and correspondence
22   review which neither identified an intended recipient or detail nor identified the source or its
23   subject matter; and

24            e.    222 task descriptions for miscellaneous tasks, such as "review", which
25   were too generally described to be meaningful.

26

27

28   **CLAIM FOR DAMAGES**
     **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
     **Case No.**                                                        Page -12-

1    50.    Taken together, a combined total of 4,934.44 hours and $1,570,038.94 in fees
2    were charged by M&S for the types of vaguely described tasks set forth above.

3                                Duplication of Effort

4    51.    C-One and Pretec contend that since M&S identifies itself as a patent litigation
5    specialist, attorneys with that level of skill and experience should, in most instances, be able
6    to handle important client matters without the involvement of multiple attorneys. However,
7    since the retainer agreement does provide that "legal personnel assigned to this matter will
8    confer among themselves as required, the following summary defines "Duplication of Effort"
9    when time is charged by more than two attorneys and when preparation for activities are
10    charged by attorneys who did not attend or participate in the activity for which such
11    preparation time was billed. Using this yardstick, C-One identifies the following:

12         a.    M&S billed 25.36 hours and $5,407.75 in combined fees for multiple
13    involvement in outside meetings and conferences.

14         b.    M&S billed 69.57 hours and $16,835.58 in combined fees for multiple
15    involvement at court appearances and depositions.

16         c.    M&S charges for internal firm conferences are approximately 7% of the
17    total fees billed by the firm. Although productive conversations on relevant legal and factual
18    issues between firm attorneys was contemplated by the retainer agreement, C-One contends
19    that since meetings between three or more attorneys (particularly those which include
20    associates and junior associates) have a significant downstream administrative component,
21    it should not be charged for the time M&S used to train its associates and, with respect
22    thereto, C-One has identified at least 11.19 hours and combined fees of $2,570.64 associated
23    with unnecessary participation in intra-office conferences.

24                            Duplicative or Redundant Activities

25    52.    C-One and Pretec concede that there are legitimate reasons for law firms to
26    sometime charge for more than one timekeeper to research the same topic, prepare the same

27

28    **CLAIM FOR DAMAGES**
       **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
       **Case No.**                                                    Page -13-

1   letter, pleading, or memorandum, or review the same document. However, Claimants
2   nevertheless contend that these duplicative and/or redundant activities should not be billed
3   to the client if their underlying purpose was to benefit the law firm rather than directly aided
4   M&S in the presentation of their clients' defense, particularly where the utility to the client
5   of these redundancies cannot be demonstrated.

6       53.    With respect to litigation project activities, by allowing the time and tasks
7   charged by the most senior attorneys on these projects, and questioning only the duplicative
8   involvement of lower level attorneys, C-One and Pretec are informed and believe that a
9   combined total of $1,434.75 hours and a total of $258,488.10 in combined fees as having a
10  high probability of being duplicative efforts.

11      54.    Both C-One and Pretec submit that more experienced attorneys frequently
12  review and edit drafts of major pleadings prepared by less experienced attorneys. By the
13  same token, they are informed and believe that multiple review of the same documents by
14  multiple attorneys is also at times duplicative. Likewise charges by both junior and senior
15  attorneys to review the same incoming documents also reflects a similar redundancy. By
16  questioning only the time charged by the more junior attorneys, C-One and Pretec are
17  informed and believe that at least 54.09 cumulative hours and $11,727.50 in combined fees
18  are either duplicative or redundant.

19      55.    C-One and Pretec are further informed and believe that at least five sporadic
20  timekeepers, each of whom billed less than 15.00 hours, are lacking in utility, nonproductive,
21  or duplicative of the activities of the other and more regular timekeepers. Likewise, C-One
22  and Pretec question the transient billing by attorney LaFleur for all three entries charged to
23  the "Polaroid" matter, none of which appeared to reflect substantive legal services on an
24  identifiable project. Within this category, C-One and Pretec both question the efficacy of the
25  30.80 hours and combined fees of $6,881.00 billed by M&S and paid by C-One based on
26  these invoiced services.

27

28  **CLAIM FOR DAMAGES**
    **C-ONE TECHNOLOGY -v- MOUNT & STOELKER**
    **Case No.**                                                    Page -14-

1                    Legal Research and Drafting Projects

2          56.     As advertised M&S attorneys are specialists in patent litigation and should

3  therefore be well-versed with basic procedural rules of the jurisdictions where they routinely

4  practice as well as the substantive area of law for which the law firm represents itself to have

5  a superior level of competence. Notwithstanding the vagueness of its billings, C-One and

6  Pretec are informed and believe that at least $6,783.33 in combined legal fees for legal

7  research activities for which the subject matter as described is such that an experienced

8  patent litigation attorney should already be most familiar with.

9                              Clerical Tasks

10         57.     Clerical tasks are those types of tasks that do not require legal acumen and that

11 secretaries, file clerks, messengers, and other nonprofessional staff (as opposed to attorneys,

12 paralegals, and legal assistants) can effectively perform. M&S timekeepers charged for such

13 tasks as new matter set-up and organization, scheduling meetings and events, electronic

14 document retrieval, scanning, copying, e-filing, and simple document organization; all of

15 which fall within the ambit of the definition of a "clerical task". With peculiar reference

16 thereto, C-One and Pretec are informed and believe that not less than 408.35 total hours and

17 $55,664.15 in combined fees was inappropriately charged to Pretec for the performance of

18 such "clerical" tasks by its professional legal staff.

19                            Administrative Tasks

20         58.     While C-One and Pretec submit that administrative tasks such as preparing

21 invoices, managing and supervising support staff, processing invoices, in-house training and

22 continuing education for attorneys, preparing budgets and forecasts, scheduling, software and

23 systems training, and other similar tasks of an administrative nature are necessary for the

24 effective and efficient administration of a law practice, they contend that these types of tasks

25 are not typically considered "legal services" passed on and chargeable to a client. C-One and

26 Pretec is informed and believes that at least 98.23 total hours and $29,975.75 in combined

27

28 **CLAIM FOR DAMAGES**
   **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
   **Case No.**                                                    Page -15-

1 | fees were billed to Pretec as "legal fees" when in fact that they were actually administrative
2 | "costs".

3 | ## Expenses

4 |     59.   C-One and Pretec contend that M&S should have provided supporting
5 | documentation for external expenses to allow for the reconciliation of the expense charges
6 | to underlying receipts to determine if the expenses are billed to the appropriate client matter
7 | and at actual cost. C-One and Pretec are informed and believe that external expenses totaling
8 | $155,580.31 for which no supporting documentation was provided and on this basis alone
9 | considers these external expenses questionable.

10 |     60.   M&S also billed Pretec for computer-assisted legal research charges totaling
11 | $16,868.38[14]. Traditionally, a "brick and mortar law library" was treated and considered as
12 | an overhead expense. C-One and Pretec contend that computer-assisted legal research is but
13 | an alternative means of conducting legal research and accordingly should be treated the same
14 | - as part of the law firm's overhead and the cost included in the determination of M&S'
15 | hourly rates. This is all the more true if the legal research engine is provided to the law firm
16 | as a fixed, monthly cost.

17 | ### State Court Action Billed As Part Of Federal Patent Claims Litigation

18 |     61.   Of the total amount of fees and costs paid to M&S to date, $727,156.00 in fees
19 | and $10,635.38 in costs were billed as legal services and costs rendered and expended in
20 | connection with M&S' representation of C-One and Pretec in the Lexar and SanDisk
21 | federal cases when in fact they were actually performed and directly related to M&S's
22 | defense of C-One and Pretec in the Alameda County Superior Court action filed by
23 | Memorex.

24 |
25 |
26 |     [14] This amount is included in the $155,580.31 set forth in Paragraph 65 but is set forth
27 | separately in this paragraph for the purpose of advancing an additional basis for this particular line-item's exclusion from the invoice

28 | **CLAIM FOR DAMAGES**
**C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
**Case No.**                                   Page -16-

1          **FIRST CAUSE OF ACTION**

2          **BREACH OF WRITTEN CONTRACT**

3          **First Count**

4          **[Pretec Against All Defendants]**

5      62.    Pretec incorporates by this reference Paragraphs 2 through 7 and 9 through 61,

6   inclusive, of the General Allegations set forth above.

7      63.    On October 10, 2002 Pretec entered into two separate written retention

8   agreements with M&S whereby M&S was to provide legal services to Pretec in connection

9   with federal claims filed against it by both Lexar Media and Sandisk Media alleging certain

10  and specific patent infringements [Copies of both of these two agreements are attached

11  hereto, marked for identification as Exhibits "D-1" and "D-2", respectively, and incorporated

12  herein by this reference].

13     64.    Pretec performed all conditions, covenants, and promises on its part to be

14  performed in accordance with the express terms of the written retainer agreements executed

15  by and between Pretec and M&S on October 10, 2002.

16     65.    As part of its agreement with Pretec M&S promised to perform the "legal

17  services called for under this agreement".

18     66.    At the time M&S entered into these written agreements with Pretec M&S knew

19  that Pretec was under an affirmative duty both indemnify and hold Memorex harmless from

20  and against all claims raised by Sandisk Media in connection with any products sold by

21  Memorex that may infringe or violate the patent, copyright, trade secret, or other intellectual

22  property right of a third party and to assign counsel of its choice to undertake the professional

23  responsibility of representing Memorex in Sandisk Media's claims.

24     67.  ·  M&S agreed to and did in fact undertake the professional responsibility of

25  representing Memorex in the Sandisk Media federal patent claims in keeping with Pretec's

26  obligations under its indemnity agreement with Memorex.

27

28  **CLAIM FOR DAMAGES**
    **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
    **Case No.**                                                    Page -17-

1    68.    It was not until sometime after April 26, 2006 that Pretec became aware for the

2    first time that M&S had materially breached the express terms of the retainer agreement by,

3    among other things, failing to communicate regularly with Memorex, failing to inform

4    Memorex of the positions it was taking in the SanDisk motion for sanctions against

5    Memorex, and failing to present evidence on Memorex's behalf; all of which led the

6    Alameda Superior Court to conclude that, as a result of M&S's actions, Pretec had "breached

7    the terms of the indemnification agreement" and that Pretec was subject to damages as

8    provided in the agreement "subject to any remaining defenses" Pretec may have.

9    69.    M&S further and materially breached the express terms of its agreements with

10    Pretec in that, although the agreement expressly provides that M&S may withdraw at any

11    time as permitted under the rules of Professional Conduct of the State Bar of California, it

12    nevertheless withdrew from its obligation to continue representing Pretec in violation of the

13    spirit and intent of these rules of Professional Conduct by:

14    a)    Ceasing to actively participate and represent Pretec in the SanDisk matter after

15         filings its motion to withdraw as its attorneys of record even though the Court

16         denied this motion as well as its subsequent motion requesting the same on

17         June 6, 2007; and

18    b)    Ceased to actively participate and zealously represent Pretec in the Lexar

19         matter while its motion to withdraw as its attorneys of record in this case was

20         still pending.

21    70.    M&S also further and materially breached the express terms of its agreements

22    with Pretec, as they applied to the charging of attorney fees and costs, in that M&S:

23    a)    Over-billed Pretec for services rendered which were outside the scope of and

24         unrelated to the federal patent claims filed against it by Lexar and SanDisk

25         Media. More particularly, of the approximate amount of fees and costs paid

26         to M&S at least $727,156 in fees and $10,635 in costs which were billed in

27

28    **CLAIM FOR DAMAGES**
     **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
     **Case No.**                                                    Page -18-

1         connection with the federal claims were in fact directly related to M&S's

2         representation of Pretec in the State Court action filed by Memorex fo breach

3         of the indemnity agreement.

4     b)   Over-billed Pretec for administrative and overhead costs which were not

5         covered under the express terms of the retainer agreement;

6     c)   Over-billed Pretec for attorney fees which were not directly related to the

7         defense of Pretec;

8     d)   Over-billed Pretec for attorney fees at increased hourly rates over and above

9         those set forth in the retainer agreement without prior notice; and

10     e)   Over-billed Pretec for legal services provided on the behalf of C-One.

11    71.   As a result of Defendants', and each of their, material breach of these

12 agreements as set forth above Pretec is entitled to damages according to proof.

13     WHEREFORE, Pretec prays for judgment against Defendants and each of them as set

14 forth below.

15                   **BREACH OF WRITTEN CONTRACT**

16                         **Second Count**

17                 **[Pretec Against All Defendants]**

18    72.   Pretec incorporates by this reference Paragraphs 2 through 7, inclusive, of the

19 General Allegations set forth above.

20    73.   On October 10, 2002 Pretec entered into two separate written retention

21 agreements with M&S whereby M&S was to provide legal services to Pretec in connection

22 with federal claims filed against it by both Lexar Media and Sandisk Media alleging certain

23 and specific patent infringements [Ref. Exhibits "D-1" and "D-2", respectively].

24    74.   Pretec performed all conditions, covenants, and promises on its part to be

25 performed in accordance with the express terms of the written retainer agreements executed

26 by and between Pretec and M&S on October 10, 2002.

27

28  **CLAIM FOR DAMAGES**
    **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
    **Case No.**                             Page -19-

1    75.   As part of its agreement with Pretec M&S included a provision that any dispute
2    arising out of these retainer agreements were to be submitted to binding arbitration before
3    the American Arbitration Associations. Daniel S. Mount signed and agreed to the agreement
4    in behalf of M&S.

5    76.   In keeping with the terms of this agreement on June 28, 2007 Pretec filed a
6    claim with AAA [Case No. 50-194-T-00227] setting forth the grounds upon which it
7    contended that M&S had materially breached this agreement and tendered a filing fee of
8    $8,000,00 in good faith.

9    77.   After the filing of this claim Daniel S. Mount, on behalf of M&S, personally
10   participated in an administrative conference call held on July 6, 2007 during which the
11   parties, in private caucus, agreed to withdraw the matter without prejudice for the purpose
12   of pursing potential settlement of all issues. Moreover, in connection with this withdrawal
13   of the AAA claim, Mr. Mount executed a stipulation on behalf of M&S, which was also
14   "binding upon their agents and assigns", whereby it waived "any defenses or bar to this
15   action based upon the period within which this matter is dismissed without prejudice.

16   78.   Thereafter, no settlement of the claim having been reached, Pretec filed a
17   second claim with the AAA on January 11, 2008 and tendered the required filing fee of
18   $4,250.00 in good faith[15].

19   79.   M&S materially breached the terms of retainer agreements by failing and
20   refusing to agree to arbitrate the claim filed by Pretec and C-One with AAA and be filing a
21   civil action in Santa Clara Superior Court [Case Number: 108 CV 105975] restraining and
22   enjoining the arbitration of these claims before the AAA.

23   80.   As a result of Defendants', and each of their, material breach of these
24

25        [15] The filing fee for this first claim was $8,000 - $4,000 of which was refunded due to the
26   stipulated withdrawal [Ref. Exhibit D-4]. Accordingly, a total of $8,250 has been paid to the AAA
     by Claimant based on M&S's agreement to arbitrate any disputes arising out of its retainer
27   agreements with PRETEC [Ref. Exhibits D-1 & D-2].

28   **CLAIM FOR DAMAGES**
     **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
     **Case No.**                                                          Page -20-

1  agreements as set forth above Pretec is entitled to damages according to proof.

2      WHEREFORE, Pretec prays for judgment against Defendants and each of them as set

3  forth below.

### SECOND CAUSE OF ACTION

### BREACH OF ORAL CONTRACT

### First Count

### [C-One Against All Defendants]

8      81.    C-One incorporates by this reference Paragraphs 1, 3 through 7, and 9 through

9  61, inclusive, of the General Allegations set forth above.

10     82.    After being served with a summons and an amended complaint naming it as

11 an additional defendant in the Lexar federal patent claim litigation on May 8, 2003, M&S

12 appeared on behalf of C-One as its attorneys of record without first obtaining a written

13 retainer agreement from C-One.

14     83.    C-One performed all conditions, covenants, and promises on its part to be

15 performed in accordance with the implied terms of the oral agreement under which M&S

16 assumed the professional responsibility to represent C-One interests in the pending federal

17 actions in which it was directly (as named defendant in Lexar) and indirectly

18 (indemnification of Memorex in SanDisk) involved.

19     84.    At the time M&S undertook its obligations to represent C-One in the Lexar

20 litigation it was also aware that, although not named as a party in the SanDisk case, C-One

21 was nevertheless still under an affirmative duty, pursuant to a written agreement providing

22 for the same, to both indemnify and hold Memorex harmless from and against all claims

23 raised by Sandisk Media in connection with any products sold by Memorex that may infringe

24 or violate the patent, copyright, trade secret, or other intellectual property right of a third

25 party and to assign counsel of its choice to undertake the professional responsibility of

26 representing Memorex in Sandisk Media's claims.

27

28 **CLAIM FOR DAMAGES**
   **C-ONE TECHNOLOGY -v- MOUNT & STOELKER**
   **Case No.**                                                                     Page -21-

1       85.    M&S did in fact undertake the professional responsibility of representing

2  Memorex in the Sandisk Media federal patent claims in keeping with C-One's obligations

3  under its indemnity agreement with Memorex.

4       86.    It was not until sometime after April 26, 2006 that C-One became aware for

5  the first time that M&S had materially breached its agreement with C-One by, among other

6  things, failing to communicate regularly with Memorex, failing to inform Memorex of the

7  positions it was taking in the SanDisk motion for sanctions against Memorex, and failing to

8  present evidence on Memorex's behalf; all of which led the Alameda Superior Court to

9  conclude that, as a result of M&S's actions, C-One had "breached the terms of the

10  indemnification agreement" and that C-One was subject to damages as provided in the

11  agreement "subject to any remaining defenses" C-One may have.

12       87.    M&S further and materially breached its agreement with C-One in that it

13  withdrew from its obligation to continue representing C-One in violation of the spirit and

14  intent of the Rules of Professional Conduct as promulgated by the State Bar of California

15  by ceasing to actively participate and zealously represent C-One in the Lexar matter while

16  its motion to withdraw as its attorneys of record in this case was still pending.

17       88.    M&S also further and materially breached its agreement with C-One in that

18  M&S:

19      a)    Over-billed C-One for services rendered which were outside the scope of and

20             unrelated to the federal patent claim filed against it by Lexar. More

21             particularly, of the approximate amount of fees and costs paid to M&S at least

22             $727,156 in fees and $10,635 in costs which were billed in connection with the

23             federal claims were in fact directly related to M&S's representation of C-One

24             in the State Court action filed by Memorex fo breach of the indemnity

25             agreement.

26      b)    Over-billed C-One for administrative and overhead costs which were not

27

28  **CLAIM FOR DAMAGES**
      **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
      **Case No.**                             Page -22-

1  covered under the express terms of the retainer agreement;

2  c)  Over-billed C-One for attorney fees which were not directly related to the

3  defense of C-One;

4  d)  Over-billed C-One for attorney fees at increased hourly rates over and above

5  those set forth in the retainer agreement without prior notice; and

6  e)  Over-billed C-one for legal services provided on the behalf of C-One at its

7  hourly rate instead of on a quantum meruit basis.

8  89.  As a result of Defendants', and each of their, material breach of these

9  agreements as set forth above C-One is entitled to damages according to proof.

10  WHEREFORE, C-One prays for judgment against Defendants and each of them as set

11  forth below.

12  **BREACH OF ORAL CONTRACT**

13  **Second Count**

14  **[C-One and Pretec Against All Defendants]**

15  90.  C-One and Pretec incorporate by this reference Paragraphs 1 through 7, and

16  9 through 61, inclusive, of the General Allegations set forth above.

17  91.  The written fee agreements between Pretec and M&S dealt with the two federal

18  court actions (Lexar and SanDisk) which involved federal issues and questions of law

19  relating to intellectual property and patent infringement and, while the fee agreement does

20  refer to "any other matters in which we might represent you", it is Pretec's position that at

21  the time that this written agreement was executed it was not contemplated by the parties that

22  Pretec would become embroiled in a civil action a direct and proximate result of M&S' legal

23  representation of Memorex in the SanDisk federal litigation pursuant to the indemnification

24  agreement by and between Memorex, Pretec, and C-One.

25  92.  M&S did not enter into a written retainer agreement with either Pretec or C-

26  One which covered the legal services provided by M&S to C-One and Pretec in defense of

27

28  **CLAIM FOR DAMAGES**
**C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
**Case No.**                                                                    Page -23-

1    its actions during its representation of Memorex in the SanDisk federal patent litigation.

2        93.    Both C-One and Pretec performed all conditions, covenants, and promises on
3    their part to be performed in accordance with the implied terms of the oral agreement under
4    which M&S assumed the professional responsibility to represent C-One and Pretec in the
5    Alameda Superior Court action for breach of the indemnity agreement it had entered into
6    with Memorex in the SanDisk litigation and for which M&S had provided the legal services
7    called for thereunder.

8        94.    M&S did in fact undertake the professional responsibility of representing both
9    C-One and Pretec in their defense of the State action filed by Memorex for breach of their
10    indemnity agreement with Memorex.

11        95.    M&S breached its agreement to provide professional legal services in defense
12    of both C-One and Pretec in the state court action filed by Memorex in that it withdrew from
13    its obligation to continue representing both C-One and Pretec in violation of the spirit and
14    intent of the Rules of Professional Conduct as promulgated by the State Bar of California
15    by ceasing to actively participate and zealously represent in the Memorex state litigation
16    matter while its motion to withdraw as their attorneys of record in this case was still pending.

17        96.    M&S further preached its agreement M&S breached its agreement to provide
18    professional legal services in defense of both C-One and Pretec in the state court action filed
19    by Memorex in that it over-billed C-One and Pretec for legal services provided on their
20    behalf due to the fact it billed based on its contractual rate rather than on a quantum meruit
21    basis.

22        97.    As a result of Defendants', and each of their, material breach of these
23    agreements as set forth above C-One and Pretec are entitled to damages according to proof.

24        WHEREFORE, C-One and Pretec prays for judgment against Defendants and each of
25    them as set forth below

26

27

28    **CLAIM FOR DAMAGES**
      **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
      **Case No.**                                                    Page -24-

1                              **THIRD CAUSE OF ACTION**

2                              **BREACH OF FIDUCIARY DUTY**

3        98.    C-One and Pretec incorporate by this reference Paragraphs 1 through 7, and

4    9 through 61, inclusive, of the General Allegations set forth above.

5        99.    On or about October 7, 2002, at 333 West San Carlos, San Jose, California,

6    Pretec retained and employed M&S to represent it as its attorneys of record to represent it in

7    the federal patent infringement claims filed against it by Lexar and SanDisk Media as well

8    as to provide Memorex with a defense against the claims levied against it by SanDisk Media

9    pursuant to the express terms of an indemnity agreement entered into by and between

10   Memorex, Pretec, and C-One.

11       100.   Thereafter, on or about May 8, 2003 C-One agreed to be represented by M&S

12   in the claims levied against it by Lexar in the same federal patent claim actions that it had

13   previously been providing legal representation to Pretec.

14       101    Finally, on or about September 26, 2003, both C-One and Pretec agreed to be

15   represented by M&S in the state court action filed by Memorex alleging their breach of the

16   indemnification agreement relating to the SanDisk federal litigation.

17       102    At such times and places as set forth immediately above M&S accepted such

18   employment, agreed to perform, and did in fact provide, legal services to both C-One and

19   Pretec relating to the above-described matters.

20       103.   By virtue of the attorney-client relationship that existed between C-One and

21   their attorney M&S, and by virtue of both C-One and Pretec having placed confidence in the

22   fidelity and integrity of M&S, and in entrusting M&S with the responsibility of representing

23   theirs interests, asserting their rights, tendering a valid defense on their behalf, and by virtue

24   of their placing their trust and confidence in the representations that M&S had made to them

25   regarding the level of experience and expertise M&S possessed in these areas of the law, a

26   confidential relationship existed at all times herein mentioned between C-One and M&S and

27

28   **CLAIM FOR DAMAGES**
     **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
     **Case No.**                                                    Page -25-

1    M&S owed a fiduciary duty to both Pretec and C-One even after the attorney-client
2    relationship was terminated on June 26, 2006.

3         104.   Despite having voluntarily accepted this trust and confidence of C-One and
4    Pretec with regard to various matters involved in the litigation of the federal claims,
5    including the duties and responsibilities owed by C-One and Pretec under its indemnify
6    agreement with Memorex, and the state action brought by Memorex alleging the breach
7    thereof, and in violation of this trust and confidence, M&S abused this trust and confidence
8    of C-One and/or Pretec by doing all of the following acts as set forth in three specific counts
9    set forth below.

10        105.   In doing those acts alleged herein below, Defendants, and each of them, acted
11   with oppression, fraud and malice in that, while acting within the course and scope of their
12   fiduciary duties and obligations to their clients, Defendants knowingly misused their position
13   of trust and confidence and took unfair advantage of the fact, as foreign, Taiwanese
14   nationals, the officers, directors, and principals of both C-One and Pretec had no education
15   in United States law, had no prior experience dealing with either American contract law, let
16   alone the intricacies of U.S. Patent Law, and had English as their second language and more
17   often than not had to rely on translators in order to adequately communicate with Defendants;
18   all of which combined to result not only in economic loss but, more importantly, C-One and
19   Pretec's substantive rights as well and thusly entitling them to an award of exemplary
20   damages as well.

21                           **First Count**

22              **M&S's Billing And Collection Practices**

23              [C-One And Pretec Against All Defendants]

24        106.   C-One and Pretec incorporate by this reference Paragraphs 98 through 105,
25   inclusive, of the Third Cause of Action for Breach of Fiduciary Duty as set forth above

26        107.   California Rules of Professional Conduct, Rule 3-500 states that an attorney

27

28   CLAIM FOR DAMAGES
     C-ONE TECHNOLOGY -v- MOUNT & STOELKER
     Case No.                                                        Page -26-

1  has an affirmative duty to communicate promptly with a client regarding any significant
2  changes in its representation and included in the definition of "significant changes" is the
3  requirement that attorneys provide their clients with advance notice of any changes in the
4  amount of the fees being charged for the services being rendered. M&S failed to provide
5  either Pretec or C-One with advance notice of the numerous increases in fees prior to the
6  time when these increases were implemented and in so doing breached its fiduciary duty to
7  both Pretec and C-One.

8      108.  Under California Rules of Professional Conduct [Rule 4-200(A)] it a breach
9  of an attorneys fiduciary duty to either charge or collect an unconscionable fee. Rule 4-
10 200(B) sets forth a series of factors to be considered in determining whether or not a fee is
11 unconscionable; not the least of which include: [a] the amount of the fee in proportion to the
12 value of the services performed; [b] the relative sophistication of the lawyer and the client;
13 [c] the informed consent of the client to the fee; and [d] the amount involved and the results
14 obtained. California Rules of Professional Conduct, Rule 4-200(B) also provides that the
15 amount of the fee must be in proportion to the value of the services rendered. M& S violated
16 these Rules of Professional Conduct and in so doing breached its fiduciary duties to both
17 Pretec and C-One in that:

18     a)   M&S collected $3,759,224.72 in fees and $156,027.31 in costs from C-One
19          and Pretec before making its motion to withdraw without any result to C-One
20          favorable or otherwise[16];

21     b)   Off the $3,759,224.42 in fees billed and collected by M&S, C-One and Pretec
22          is informed and believes that based on the result of the preliminary audit of its
23          invoices at least $2,395,022.40 (64%) of which is questionable.

24     c)   Separately, Pretec contends that it should not have either been billed under its

25

26     [16] Corollary, Memorex was able to settle its case with Lexar for $185,000 and incurred total
27 attorney fees and costs for both the Lexar and SanDisk cases of only $374,956.52.

28 **CLAIM FOR DAMAGES**
   **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
   **Case No.**                                                           Page -27-

1    retainer agreement with M&S for the legal services M&S performed on behalf

2    of C-One in the federal patent claims or for the legal services provided by

3    M&S in its representation of Pretec in the state action brought by Memorex.

4    d)    Separately, C-One contends that, absent a signed retainer agreement with

5    M&S, it is not bound by the billing arrangements set forth in the retainer

6    agreement by and between M&S and Pretec but rather should only be charge

7    a reasonable fee based on quantum meruit.

8    109.    As a result of M&S' aforementioned breach of its fiduciary duties owed to C-

9    One and Pretec, M&S gained a pecuniary advantage over its clients at the expense of both

10   C-One and Pretec.

11   110.    As a result of Defendants', and each of their, breach of these fiduciary duties

12   owed to C-One and Pretec, C-One and Pretec are entitled to damages according to proof.

13   WHEREFORE, C-One and Pretec prays for judgment against Defendants and each of

14   them as set forth below

15                    **Second Count**

16         **M&S's Failure To Disclose Adverse Interest**

17            [C-One And Pretec Against All Defendants]

18   111.    C-One and Pretec incorporate by this reference Paragraphs 98 through 105,

19   inclusive, of the Third Cause of Action for Breach of Fiduciary Duty as set forth above

20   112.    At the same time that M&S was representing Pretec and C-One in the federal

21   patent claims M&S was also representing Memorex pursuant to the indemnity agreement

22   entered into by and between Memorex and C-One and Pretec in the SanDisk Media federal

23   claim.

24   113.    The legal interests of Memorex and those of both C-One and Pretec were

25   adverse at the time of the duel representation in that, although M&S was representing

26   Memorex in the SanDisk federal claim until Memorex notified M&S by letter dated

27

28   **CLAIM FOR DAMAGES**
     **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
     **Case No.**                                    Page -28-

1  November 19, 2002 that it was dissatisfied with its performance and was replacing M&S due
2  to its failure to keep Memorex informed about material events in the case, failure to obtain
3  its approval and consent of pleadings prior to filing, and failure to consult with Memorex
4  either about the extent of its knowledge of the facs relevant to the case or about the litigation
5  in general. Memorex was thereafter represented in both the SanDisk and Lexar federal cases
6  by the legal firm Keker & Van Nest LLP..

7      114.. The legal interests of both C-One and Pretec and those of M&S became
8  potentially adverse on or about November 15, 2002 when M&S sent a letter to Memorex
9  stating the reasons why "our client" Pretec was responsible for Memorex's legal fees owed
10  to the firm Keker & Van Nest; a letter which took a position adverse to Memorex while M&S
11  were still acting as its attorneys of record. The potential of the legal interests of M&S and
12  those of C-One and Pretec to become even more adverse, when in response to a letter dated
13  July 11, 2003 requesting that C-One and Pretec approve and finance a proposed settlement
14  agreement between Memorex and SanDisk, M&S responded to Memorex's request on July
15  15, 2003 on C-One and Pretec's behalf stating that they would neither finance nor approve
16  the settlement agreement and which further went on to assert that they were not obligated
17  under the indemnification agreement to pay the fees and costs of Memorex's separate
18  representation in either the SanDisk or Lexar federal matters.

19      115. As of direct result of following M&S' advice on these issues and either
20  approving the settlement agreement nor covering Memorex's attorney fees and costs
21  Memorex filed a complaint in Alameda Superior Court against both C-One and Pretec for,
22  inter alia, breach of the indemnity agreement. As part of the grounds for its allegations of
23  this breach, Memorex alleged facts which directly bore on the quality and efficacy of M&S's
24  representation in the SanDisk federal patent claim.

25      116. Based on the allegations contained in the complaint filed by Memorex in state
26  court the interests of C-One and Pretec the legal interests of C-One and Pretec and those of

27

28  **CLAIM FOR DAMAGES**
**C-ONE TECHNOLOGY -v- MOUNT & STOELKER**
**Case No.**                                                    Page -29-

1  M&S came into actual conflict in that, although it did not name M&S as a defendant,
2  Memorex nevertheless alleged that C-One and Pretec's breach of the indemnification
3  agreement was based in large measure on the actions and inactions of M&S while acting its
4  its attorneys in the SanDisk litigation as well as upon the advice given to and taken by both
5  C-One and Pretec which ultimately led to the filing of this complaint; specifically C-One and
6  Pretec followed the advise of M&S and took the position that Memorex's refusal to accept
7  M&S as its counsel in these federal claims absolved them of their duties and responsibilities
8  under the indemnity agreements and in so doing relied on M&S's assurance that taking this
9  course of action was in both C-One and Pretec's mutual best interests.

10      117.   Although C-One and Pretec were aware that M&S was presenting both Pretec
11  and Memorex in the SanDisk federal claim, the latter as a result of the express provisions of
12  the aforementioned indemnity agreement, M&S failed to disclose to either C-One or Pretec
13  the areas of potential conflict between their legal interests and those of Memorex.

14      118.   More particularly, and with peculiar reference to the state action brought by
15  Memorex against both C-One and Pretec, M&S failed to disclose to them the areas of
16  potential conflict between itself and both C-One and Pretec and further failed to advise either
17  C-One of Pretec of the possibility and desirability of their seeking independent legal advice,
18  including their right to seek independent legal advice regarding both their right and the
19  efficacy of filing a counter-claim for indemnification or other form legal or equitable relief
20  against M&S.

21      119.   On June 26, 2006, two months after the Court entered its statement of decision
22  on April 26, 2006 finding that C-One and Pretec had both breached the terms of the
23  indemnification agreement with Memorex, M&S withdrew as attorneys of record for both
24  C-One and Pretec.

25      120.   As a proximate result of M&S' breach of its duty of care and of its fiduciary
26  duties to C-One and Pretec, suffered a default judgment against them in the aforementioned

27

28  CLAIM FOR DAMAGES
    C-ONE TECHNOLOGY -v- MOUNT & STOELKER
    Case No.                                                          Page -30-

1 action dated December 15, 2006 and for which C-One and Pretec were found jointly and
2 severally liable for all of Memorex's damages in the total amount of $1,046,896.02.

3       121.   As a result of Defendants', and each of their, breach of these fiduciary duties
4 owed to C-One and Pretec, C-One and Pretec are entitled to damages according to proof.

5       WHEREFORE, C-One and Pretec prays for judgment against Defendants and each of
6 them as set forth below .

7                              **Third Count**

8                        **Abandonment of Client**

9                  [C-One And Pretec Against All Defendants]

10      122.   C-One and Pretec incorporate by this reference Paragraphs 98 through 105,
11 inclusive, of the Third Cause of Action for Breach of Fiduciary Duty as set forth above.

12      123.   As attorneys licensed to practice in this State Defendants each had a fiduciary
13 duty not to withdraw their representation of either C-One or Pretec until after they have taken
14 reasonable steps to avoid foreseeable prejudice to their client's rights [California Rules of
15 Professional Conduct, Rule 3-700(A)(2)]. This is all the more true here given the fact that
16 both C-One (a foreign corporation) and Pretec are corporate entities and cannot as a matter
17 of law cannot appear in court and defend against an action without licensed counsel.

18      124    Defendants, and each of them, breached their fiduciary duties to their clients
19 in that:

20      a)    In the Lexar federal patent claim case, M&S ceased all meaningful
21            representation of C-One and Pretec prior to filing its motion to be relieved as
22            counsel on May 19, 2006;

23      b)    In the SanDisk federal patent claim case, M&S ceased all meaningful
24            representation of both C-One and Pretec prior to filing its motion to be
25            relieved on May 19, 2006, continued in its failure to provide meaningful
26            representation after this motion to be relieved was denied, and further

27

28 **CLAIM FOR DAMAGES**
**C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
Case No.                                                                        Page -31-

1      continued in its failure to provide meaningful representation even after its

2      second request to be relieved as counsel was also denied on June 6, 2007; and

3      c)     In the Memorex state action, M&S withdrew as counsel on June 6, 2006, twp

4      months after the superior court held that C-One and Pretec's breach of its

5      indemnity agreement with Memorex was due to the actions, inactions, and

6      advice of M&S; a proximate result of which was that a default judgment being

7      taken against C-One and Pretec in the total amount of $1,046,896.02.

8      125.   As a result of Defendants', and each of their, breach of these fiduciary duties

9      owed to C-One and Pretec, C-One and Pretec are entitled to damages according to proof.

10      126     As a further result of Defendants', and each of their, breach of this fiduciary

11      duty owed to C-One and Pretec, C-One and Pretec have incurred additional attorney fees and

12      costs according to proof.

13      WHEREFORE, C-One and Pretec prays for judgment against Defendants and each of

14      them as set forth below .

15                          **FOURTH CAUSE OF ACTION**

16                          **FRAUD AND DECEIT BY ATTORNEY**

17                     [C-ONE AND PRETEC AGAINST ALL DEFENDANTS]

18      127.   C-One and Pretec incorporate by this reference Paragraphs 1 through 7, and

19      9 through 30, inclusive, of the General Allegations set forth above.

20      128.   On or about July 15, 2003, at M&S's request, C-One and Pretec discussed the

21      content of a letter from Memorex dated  July 11, 2003 which requested that C-One and

22      Pretec approve and finance a proposed settlement agreement between Memorex and SanDisk

23      in the federal patent claim then pending pursuant to the terms of their indemnity agreement..

24      129.   During the course of this conference with its clients, M&S falsely represented

25      to C-One and Pretec that they were not bound by the terms of the indemnity agreement due

26      to the fact that Memorex had not accepted the offer of the legal services of M&S in the

27

28      **CLAIM FOR DAMAGES**
         **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
         **Case No.**                                                    Page -32-

1    SanDisk case and that C-One and Pretec were therefore not obligated under the
2    indemnification agreement to either pay the fees and costs of Memorex's separate
3    representation in either the SanDisk or Lexar federal matters or approve the settlement
4    agreement negotiated by the law firm .

5        130.    In the face of the fact that Memorex had previously refused its services in the
6    Lexar federal case and had since replaced it with another law firm in the SanDisk federal
7    case, M&S made the aforesaid misrepresentation of the law with the intent to further
8    entrench itself in the good graces of C-One and Pretec and to induce C-One and Pretec to
9    continue to employ M&S as its attorneys of record in the SanDisk and Lexar federal patent
10   claims; thus enabling them to ultimately receive fees in excess of $3,759,224. and costs in
11   excess of $156,027. from C-One and Pretec for a total of over $3,915,251.

12       131.    As foreign, Taiwanese nationals, the officers, directors, and principals of both
13   C-One and Pretec had no education in United States law, had no prior experience dealing
14   with either American contract law, let alone the intricacies of U.S. Patent Law, at best had
15   English as their second language, and more often than not had to rely on translators in order
16   to adequately and comfortably communicate with Defendants.

17       132.    At the time that these misrepresentations were made, and at the time they took
18   the actions herein alleged, C-One and Pretec were ingnorant of the true nature of the law
19   involved and relied entirely on the advice given to them by M&S with respect thereo. If C-
20   One and Pretec had been aware of the true nature of the law they would not have heeded
21   M&S's counsel and advice as to the same and would have affirmatively acted on Memorex's
22   request that they both approve and finance the settlement reached by Memorex in the
23   SanDisk federal patent claim and pay for Memorex's accrued attorney fees and costs
24   pursuant to the terms of the indemnity agreement.

25       133.    As a direct and proximate result of M&S's misrepresentations of the law C-
26   One and Pretec litigated the issue of their obligations under the indemnity agreement in the

27

28   **CLAIM FOR DAMAGES**
     **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
     **Case No.**                                                    Page -33-

1  lawsuit filed by Memorex in Alameda Superior Court and lost. During the course of this

2  state court action to enforce the terms of the indemnity agreement C-One and Pretec paid

3  M&S $737, 791.38 in attorney fees and related costs by reason of which both Pretec and C-

4  One was damaged.

5       134.  As a further direct and proximate result of M&S's misrepresentations C-One

6  and Pretec were ordered by the state superior court to additionally pay Memorex the attorney

7  fees and costs it incurred in prosecuting this action in the total amount of $486,939.50 by

8  reason of which C-One was caused to suffer even further damage and detriment.

9       135  In doing the acts herein alleged, Defendants, and each of them, acted with

10  malice in that their conduct was carried out with a conscious disregard of C-One and Pretec's

11  legal rights and the fiduciary duties they owed to C-One and Pretec as clients.

12       136.  C-One and Pretec did not learn of the aforesaid facts constituting Defendants'

13  fraud until the superior court issued its order relating to the same which was issued on April

14  26, 2006 and had no way of knowing or obtaining knowledge of the aforesaid fraudulent acts

15  prior to the above date because of their steadfast relaince and belief in M&S's assurances of

16  the correctness of their advice and legal counsel.

17      WHEREFORE, C-One and Pretec prays for judgment against Defendants and each of

18  them as set forth below.

19                     **FIFTH CAUSE OF ACTION**

20                     **PROFESSIONAL NEGLIGENCE**

21            **[C-ONE AND PRETEC AGAINST ALL DEFENDANTS]**

22       137.  C-One and Pretec incorporate by this reference Paragraphs 1 through 7, and

23  9 through 30, inclusive, of the General Allegations set forth above.

24       138.  On or about July 15, 2003, at M&S's request, C-One and Pretec discussed the

25  content of a letter from Memorex dated July 11, 2003 which requested that C-One and

26  Pretec approve and finance a proposed settlement agreement between Memorex and SanDisk

27

28  **CLAIM FOR DAMAGES**
     **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
     **Case No.**                         Page -34-

1  in the federal patent claim then pending pursuant to the terms of their indemnity agreement..

2  139.  In rendering legal advise to C-One and Pretec pursuant to such representation,
3  M&S failed to exercise reasonable skill and negligently advised C-One and Pretec that they
4  were not bound by the terms of the indemnity agreement due to the fact that Memorex had
5  not accepted the offer of the legal services of M&S in the SanDisk case and that C-One and
6  Pretec were therefore not obligated under the indemnification agreement to either pay the
7  fees and costs of Memorex's separate representation in either the SanDisk or Lexar federal
8  matters or approve the settlement agreement negotiated by the law firm

9  140.  As foreign, Taiwanese nationals, the officers, directors, and principals of both
10  C-One and Pretec had no education in United States law, had no prior experience dealing
11  with either American contract law, let alone the intricacies of U.S. Patent Law, at best had
12  English as their second language, and more often than not had to rely on translators in order
13  to adequately and comfortably communicate with Defendants.

14  141.  C-One and Pretec were ignorant of the true nature of the law involved  and
15  relied entirely on the advice given to them by M&S with respect thereo.  C-One and Pretec
16  so acted only at the advice of Daniel S. Mount in particular and M&S in general and would
17  not have so acted without such advice.  Had C-One and Pretec been aware of the true nature
18  of the law they would not have heeded M&S's counsel and advice as to the same and would
19  have affirmatively acted on Memorex's request that they both approve and finance the
20  settlement reached by Memorex in the SanDisk federal patent claim and pay for Memorex's
21  accrued attorney fees and costs pursuant to the terms of the indemnity agreement.

22  142.  As proximate result of such negligence and advice, C-One and Pretec litigated
23  the issue of their obligations under the indemnity agreement in the lawsuit filed by Memorex
24  in Alameda Superior Court and lost.  During the course of this state court action to enforce
25  the terms of the indemnity agreement C-One and Pretec paid M&S $737, 791.38 in attorney
26  fees and related costs by reason of which both Pretec and C-One was damaged.

27

28  **CLAIM FOR DAMAGES**
   **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
   **Case No.**                                                    Page -35-

1    143.   As a further proximate result of M&S's misrepresentations C-One and Pretec
2    were ordered by the state superior court to additionally pay Memorex the attorney fees and
3    costs it incurred in prosecuting this action in the total amount of $486,939.50 by reason of
4    which C-One was caused to suffer even further damage and detriment.

5    144    Had Defendants, and each of them, exercised proper care and skill in the
6    foregoing matter C-One and Pretec would not have litigated the issues of its continuing
7    obligations under their indemnity agreement with Memorex and would not have had a default
8    judgment entered against them in the above amounts on December 15, 2006.

9    WHEREFORE, C-One and Pretec prays for judgment against Defendants and each of
10   them as set forth below.

11                          **SIXTH CAUSE OF ACTION**
12                          **EQUITABLE INDEMNITY**
13               **[C-ONE AND PRETEC AGAINST ALL DEFENDANTS]**

14   145.   C-One and Pretec incorporate by this reference Paragraphs 1 through 7, and
15   9 through 30, inclusive, of the General Allegations set forth above.

16   146.   On or about July 15, 2003, at M&S's request, C-One and Pretec discussed the
17   content of a letter from Memorex dated July 11, 2003 which requested that C-One and
18   Pretec approve and finance a proposed settlement agreement between Memorex and SanDisk
19   in the federal patent claim then pending pursuant to the terms of their indemnity agreement..

20   147.   During the course of this conference, M&S advised C-One and Pretec that they
21   were not bound by the terms of the indemnity agreement due to the fact that Memorex had
22   not accepted the offer of the legal services of M&S in the SanDisk case and that C-One and
23   Pretec were therefore not obligated under the indemnification agreement to either pay the
24   fees and costs of Mcmorex's separate representation in either the SanDisk or Lexar federal
25   matters or approve the settlement agreement negotiated by the law firm representing
26   Memorex in the SanDisk case.

27

28   **CLAIM FOR DAMAGES**
     **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
     **Case No.**                                              Page -36-

1    148.    On or about September 26, 2003 Memorex filed a complaint in Alameda
2    County Superior Court [Case No. RG03-118916] seeking to enforce the terms of the
3    indemnity agreement between itself and both C-One and Pretec.

4    149.    On or about September 26, 2003 M&S entered into an oral agreement whereby
5    M&S agreed to represent and defend C-One and Pretec in the action filed by Memorex to
6    enforce the terms of the indemnity agreement.

7    150.    On or about April 26, 2006 the court issued a "phase one" order stating that C-
8    One and Pretec had breached their indemnity agreement with Memorex and based its ruling
9    almost entirely on M&S's own wrongful acts. More specifically, in its Statement of Decision
10    the Court found that Memorex was "justified, using an objectively reasonable standard of
11    acceptability, in finding that (M&S) and their actions unacceptable under the terms of the
12    Indemnification Agreement".

13    151.    On or about June 26, 2006 M&S withdrew as attorneys of record for both C-
14    One and Pretec in this state court action.

15    152    On or about December 15, 2006 the Alameda Superior Court entered a default
16    judgment which required C-One and Pretec to pay, among other things, the attorney fees and
17    costs Memorex had incurred in prosecuting this action in the total amount of $486,939.50.

18    153.    But for the advice received by C-One and Pretec it would not have litigated the
19    issue of its duties and obligations under their indemnity agreement with Memorex but instead
20    would have voluntarily fulfilled its obligations thereunder.

21    154.    By reason of the foregoing, including the fiduciary duty M&S owed to C-One
22    and Pretec as an integral of their attorney-client relationship, C-One and Pretec are entitled
23    to indemnity from M&S for all of the attorney fees and costs awarded to Memorex  in
24    connection with its litigation of the  Superior Court Action. This breach of duty is all the
25    more egregious given the fact that M&S withdrew from the case prior to the Phase Two
26    damage portion of the trial which resulted in this judgment being entered by way of default

27

28    **CLAIM FOR DAMAGES**
     **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
     **Case No.**                                                    Page -37-

1    WHEREFORE, C-One and Pretec prays for judgment against Defendants and each of
2  them as set forth below.

## SEVENTH CAUSE OF ACTION

### DECLARATORY RELIEF

### [C-ONE AND PRETEC AGAINST ALL DEFENDANTS]

6    155.   C-One and Pretec incorporates by this reference Paragraphs through 7 and 9
7  through 61, inclusive, of the General Allegations set forth above.

8    156    Pretec also separately incorporates by this reference, in addition to the above,
9  Paragraphs 73 though 79, inclusive of the First Cause of Action for Breach of Written
10 Contract.

11    157.   An actual controversy has arisen and now exists between Defendants and C-
12 One and Pretec concerning their respective rights and duties in that C-One and Pretec
13 contend that, for the reasons set forth in this claim grossly overcharged them for the legal
14 services that Defendants performed on their respective behalf in the federal patent cases and
15 the state civil action brought by Memorex. Corollary, Defendants contend that they were
16 clearly entitled to bill for and collect attorneys fees and costs in excess of $3,915,251.

17    158.   Both C-One and Pretec desire a judicial determination of their respective rights
18 and duties, and a declaration as to the amount, if any, Defendants were actually legally and
19 equitably entitled to receive based on the facts set forth in this claim, as well as a declaration
20 as to the amount, if any both C-One and Pretec are entilted to have refunded to them by
21 Defendants based on the above.

22    159.   Separately, Pretec also contends that an actual controversy has arisen between
23 Defendants and Pretec concerning their respective rights and duties in that Pretec contends
24 that it was required under the terms of the retainer agreement entered into with M&S to bring
25 its claims against Daniel S. Mount and M&S in an arbitral form provided by AAA.
26 Corollary, Daniel S. Mount and M&S contend that they are not bound by the provisions of
27

28 **CLAIM FOR DAMAGES**
**C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
**Case No.**                                                    Page -38-

1    their own retainer agreement which Daniel S. Mount expressly assented to.

2        160    For the reasons set forth above an actual controversy exists and a judicial

3    determination is necessary in order that C-One and Pretec may ascertain their legal rights and

4    duties under the written (Pretec) and oral (C-One) retainer agreements they had with M&S.

5        WHEREFORE, C-One and Pretec prays for judgment against Defendants and each of

6    them as set forth below.

7                        **REQUEST FOR JURY TRIAL**

8        161    Both C-One and Pretec hereby request the right to have this matter tried before

9    a jury of its peers.

10   ////

11                         **PRAYER FOR RELIEF**

12       WHEREFORE, C-One and Pretec pray for judgment against Defendants and each of

13   them as follows:

14   First Cause of Action For Breach Of Written Contract

15       1.    For actual damages in the approximate amount of not less than $2,395,000 on

16             Pretec's claim for breach of written contract and further economic damages in

17             an amount according to proof at trial;

18       2.    For actual damages in the amount of $8,500 which represents the amount of

19             filing fees Pretec paid to AAA in order to initiate the arbitral proceedings

20             required under its written agreements with Defendants and further economic

21             damages in an amount according to proof at trial;

22   Second Cause of Action for Breach of Oral Contract

23       3.    For actual damages in the approximate amount of not less than $374,956.52

24             on C-One's claim for breach of oral contract and further economic damages

25             in an amount according to proof at trial;

26       4.    For actual damages in the approximate of amount of not less than $486,939.50

27

28   **CLAIM FOR DAMAGES**
     **C-ONE TECHNOLOGY -v- MOUNT & STOELKER**
     **Case No.**                                                    Page -39-

1      which represents the amounts C-One and Pretec were required to pay

2      Memorex for the attorney fees and costs it incurred in prosecuting the

3      Alameda Superior Court case and further economic damages in an amount

4      according to proof at trial;

5      **Third Cause of Action for Breach of Fiduciary Duty**

6    5.    For general damages in the approximate amount of not less than $2,395,000

7      due to Defendants' and each of their breach of fiduciary duties owed to C-One

8      and Pretec and further economic damages in an amount according to proof at

9      trial

10    6.    For exemplary damages.

11      **Fourth Cause of Action for Fraud and Deceit by Attorney**

12    7.    For general damages in the approximate amount of not less than $1,224,730.50

13      due to Defendants' and each of their misrepresentations of law and breach of

14      fiduciary duties owed to C-One and Pretec and further economic damages in

15      an amount according to proof at trial

16    8.    For exemplary damages.

17      **Fifth Cause of Action For Professional Negligence**

18    9.    For general damages in the approximate amount of not less than $1,224,730.50

19      due to Defendants' and each of their misrepresentations of law and breach of

20      fiduciary duties owed to C-One and Pretec and further economic damages in

21      an amount according to proof at trial

22      **Sixth Cause of Action for Equitable Indemnification**

23    10.   For indemnification in the approximate amount of not less than $486,939.50

24      due to Defendants's and each of their breach of the fiduciary duties owed to

25      C-One and Pretec or according to proof at trial

26      **Seventh Cause of Action for Declaratory Relief**

27

28    **CLAIM FOR DAMAGES**
**C-ONE TECHNOLOGY -v- MOUNT & STOELKER**
**Case No.**                    Page -40-

1  11.  That the court ascertain, determine and declare the rights of the parties under

2       the respective fee agreements as herein alleged;

3  12.  That the court declare that C-One and Pretec be entitled to the refund of all

4       fees and costs paid to and/or allegedly still owing to M&S over and above the

5       amount of $374,956.52 which represents the reasonable value of the legal

6       services it provided to C-One and Pretec

7  **As to All Causes of Action**

8  13.  For costs of suit herein incurred; and

9  14.  For any such further relief as the Court may deem proper and just.

10  ////

11  ////

12                                    Respectfully Submitted

13

14                                    **Matthews & Partners**

15

16

17  Date: May ___, 2008

18

19

20                              By: _____

21                                  Leodis C. Matthews
                                    Attorneys for Plaintiffs
22                                  C-One Technologies &
                                    Pretec Electronics Corporation

23

24

25

26

27

28  **CLAIM FOR DAMAGES**
    **C-ONE TECHNOLOGY -V- MOUNT & STOELKER**
    **Case No.**                                         Page -41-

AO 440 (Rev. 03/08) Civil Summons

# UNITED STATES DISTRICT COURT

### for the

### Northern District of California

C-One Technology & Pretec Electronics Corporation )
                        Plaintiff                  )
                v.                                 )    Civil Action No.
Mount & Stoelker, P.C. & Daniel S. Mount           )
                        Defendant                  )

### Summons in a Civil Action

To:    Mount & Stoelker, P.C.

            (Defendant's name)

A lawsuit has been filed against you.

       Within 30 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

   Leodis C. Matthews
   Matthews & Partners
   4322 Wilshire Blvd., Suite 200
   Los Angeles, CA 90010

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

                                                              Richard W. Wieking
                                                            Name of clerk of court

Date: _____                                    MARY ANN BUCKLEY

                                                           Deputy clerk's signature

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*

AO 440 (Rev. 03/08) Civil Summons

# UNITED STATES DISTRICT COURT
### for the

### Northern District of California

| | |
|---|---|
| C-One Technology & Pretec Electronics Corporation | ) |
| Plaintiff | ) |
| v. | )  Civil Action No. |
| Mount & Stoelker, P.C. & Daniel S. Mount | ) |
| Defendant | ) |

#### Summons in a Civil Action

To:    Daniel S. Mount
    *(Defendant's name)*

A lawsuit has been filed against you.

Within   30   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

Leodis C. Matthews
Matthews & Partners
4322 Wilshire Blvd., Suite 200
Los Angeles, CA 90010

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

|  |  |
|---|---|
| | Richard W. Wieking |
| | Name of clerk of court |
| Date: | MARY ANN BUCKLEY |
| | Deputy clerk's signature |

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*