PHILLIPS, GREENBERG & HAUSER, L.L.P.
JERRY R. HAUSER, SBN. 111568
ERIK C. VAN HESPEN, SBN. 214774
Four Embarcadero Center, 39th Floor
San Francisco, California 94111
Telephone:     (415) 981-7777
Facsimile:     (415) 398-5786

Attorneys for Defendants,
MOUNT & STOELKER, A PROFESSIONAL CORPORATION;
DANIEL S. MOUNT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| C-ONE TECHNOLOGY; PRETEC ELECTRONICS CORPORATION | CASE NO.: CV 08-02442 PJH |
| Plaintiffs, | **DECLARATION OF JERRY R. HAUSER IN SUPPORT OF DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| -v- MOUNT & STOELKER, P.C.; DANIEL S. MOUNT, inclusive, | |
| Defendants. | Date:     August 27, 2008 Time:     9:00 am Ctrm.     3 |

I, Jerry R. Hauser, declare as follows:

1.     I am an attorney at law duly licensed to practice before this court and a partner in the law firm of Phillips, Greenberg & Hauser, LLP, attorneys for Defendants Mount & Stoelker, A Professional Corporation and Daniel S. Mount.

2.     The Defendants in this action request that this court take judicial notice, pursuant to Federal Rules of Evidence, Rule 201, of the pleadings filed in the action entitled *Mount & Stoelker, A Professional Corporation v. C-One Technology and Pretec Electronics Corporation*, Santa Clara Superior Court, Action No. 108 CV 105975, copies of which are attached hereto as the following exhibits:

Exhibit A     First Amended Complaint filed on February 25, 2008

Exhibit B     Notice of Motion and Motion for Preliminary Injunction

1

Exhibit C     Memorandum of Points and Authorities in Support of Motion for
Preliminary Injunction

2

Exhibit D     Pretec Electronics Corporation's Opposition to Motion for Preliminary
Injunction

3

4

Exhibit E     Special Appearance by Defendant C-One Technology for the Limited
Purpose of Challenging the Court's Jurisdiction and Opposition to Motion
for Preliminary Injunction filed on March 11, 2008

5

6

Exhibit F     Notice of Entry of Order and Order Granting and Issuing Preliminary
Injunction Enjoining the Arbitration from Going Forward

7

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of

8

July, 2008, at San Francisco, California.

9

10

11

_____
JERRY R. HAUSER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of Jerry R. Hauser in Support of Motion to Dismiss

# EXHIBIT A

1 | PHILLIPS, GREENBERG & HAUSER, L.L.P.
JERRY R. HAUSER, SBN. 111568
2 | ERIK C. VAN HESPEN, SBN. 214774
Four Embarcadero Center, 39th Floor
3 | San Francisco, California 94111
Telephone:    (415) 981-7777
4 | Facsimile:    (415) 398-5786

5 | Attorneys for Plaintiff,
MOUNT & STOELKER, A PROFESSIONAL CORPORATION

6

7

8 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF SANTA CLARA

10

11 | MOUNT & STOELKER, A PROFESSIONAL        CASE NO.: 108 CV 105975
CORPORATION,
12
Plaintiffs,                              **FIRST AMENDED COMPLAINT FOR**
13                                         **DECLARATORY RELIEF,**
-v-                                      **TEMPORARY RESTRAINING ORDER**
14                                         **AND PRELIMINARY AND**
C-ONE TECHNOLOGY, A TAIWANESE            **PERMANENT INJUNCTION**
15 | CORPORATION; PRETEC ELECTRONICS
CORPORATION, A CALIFORNIA
16 | CORPORATION; INTERNATIONAL
CENTER FOR DISPUTE RESOLUTION, A
17 | DIVISION OF THE AMERICAN
ARBITRATION ASSOCIATION; AND             **BY FAX**
18 | DOES 1 through 50 inclusive,

19 | Defendants.
_____/
20

21 |      1.      Defendant C-One Technology ("C-One"), is a Taiwanese Corporation.

22 |      2.      Defendant Pretec Electronics Corporation, is a California Corporation ("Pretec"), with its

23 | principle place of business in Fremont California. On November 28, 2006, Pretec dissolved its corporate

24 | structure. Pretec was a subsidiary of C-One.

25 |      3.      Defendant International Center for Dispute Resolution ("ICDR") is a division of the

26 | American Arbitration Association ("AAA") located in New York and entity of some unknown form.

27 | ICDR is located in New York.

28 |      4.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1

1

1 | through 50, inclusive, and therefore sues these defendants by these fictitious names. Plaintiff will amend

2 | the complaint to allege their true names and capacities when ascertained.

3 |      5.     On or about October 7, 2002, Plaintiff was retained by Pretec to represent Pretec in an

4 | action that was filed by Lexar Media, Inc. ("Lexar") for a patent infringement in the United States

5 | District Court, Northern District of California, Case Number 00-4770 MJJ, hereinafter referred to as the

6 | "Lexar Action". A copy of the retainer agreement between Plaintiff and Pretec is attached hereto as

7 | Exhibit A.

8 |      6.     On October 7, 2002, Plaintiff and Pretec entered into another attorney fee agreement

9 | wherein Plaintiff would represent Pretec in an action filed by SanDisk Corporation ("SanDisk") for

10 | patent infringement in the United States District Court, Northern District of California, Case Number 01-

11 | 4063 VRW, hereinafter referred to as the "SanDisk Action". A copy of the second fee agreement between

12 | Plaintiff and Pretec is attached hereto as Exhibit B. Exhibits A and B are hereinafter referred to as the

13 | "Pretec Fee Agreements."

14 |      7.     On or about May 8, 2003, C-One was served with a summons and amended complaint

15 | naming it as an additional defendant in the Lexar Action. Plaintiff agreed to defend C-One in the Lexar

16 | Action, but no separate retainer agreement was entered into by and between C-One and Plaintiff. On or

17 | about September 26, 2003, Memtec Products, Inc. ("Memorex") filed a complaint for declaratory relief,

18 | breach of contract and injunctive relief against C-One and Pretec in the Superior Court of California,

19 | County of Alameda, Action Number RG03118916, hereinafter referred to as the "Memorex Action".

20 | Plaintiff represented Defendant and Pretec in the Memorex Action, but did not enter into a separate fee

21 | agreement for such services.

22 |      8.     In May/June of 2006, Plaintiff ceased all representation of Defendants in the Lexar

23 | Action and in the Memorex Action. Even though the court denied Plaintiff's motion to withdraw as

24 | counsel of record in the SanDisk Action for Pretec, after May/June of 2006 Pretec refused to participate

25 | in the defense of the Sandisk Action. By May/June 2006 Pretec effectively terminated the attorney client

26 | relationship with Plaintiff in the SanDisk Action.

27 |      9.     On or about December 15, 2006, judgment was entered in the Memorex Action against

28 | C-One and Pretec.

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND

10.     On or about January 11, 2008, C-One initiated arbitration before the AAA in Santa Clara California against Plaintiff based on legal services rendered in the Lexar, SanDisk and Memorex Actions, hereinafter referred to as the "C-One Arbitration". The C-One Arbitration was assigned to the ICDR for administration out of New York City. On or about February 19, 2008, C-One filed an Amended Statement of Claim in the C-One Arbitration and identified Pretec as a claimant. A copy of the First Amended Statement of Claim ("Statement of Claim") is attached hereto as Exhibit C.

11.     The Statement of Claim consists of three claims: 1) legal malpractice by C-One and Pretec against Plaintiff with regard to services rendered in the Memorex Action; 2) questionable billing practices by C-One against Plaintiff in the Lexar and SanDisk Actions; and 3) "equitable indemnity due to breach of fiduciary duty" by C-One and Pretec against Plaintiff based on services rendered in the Memorex Action. C-One and Pretec assert that Plaintiff's negligence caused the judgment in the Memorex Action to be entered against it. In addition, C-One seek a reimbursement of fees paid to Plaintiff by Pretec prior to May of 2006. C-One also asserts that since there was no fee agreement between it and Plaintiff, Plaintiff is only allowed to recover fees based on Quantum Meruit.

12.     Defendants asserts that the contractual basis for the arbitration proceeding are the Pretec Fee Agreements which are attached hereto as Exhibits A and B. Defendants make this claim despite the fact the arbitration clause in the Pretec Fee Agreements were expressly excluded;  C-One is not a party to the Pretec Fee Agreements; in the Statement of Claim filed in the C-One Arbitration C-One denies that it is bound by the terms of the Pretec Fee Agreements and further asserts that there is no contract, for arbitration or otherwise, between it and Plaintiff; C-One claims that it is not the successor in interest to Pretec and Pretec is " a wholly separate and distinct legal entity from C-One and have separate business operations as well as separate personnel, separate business facilities and operations;" and legal services rendered in the Memorex Action were not pursuant to or within the scope of the Pretec Fee Agreements.

13.     Plaintiff is informed and believes that Defendants maintain that the C-One Arbitration is controlled by international rules for arbitration, that the arbitration is to be administered out of New York and said international rules permit either party to proceed with arbitration ex parte if the other party does not appoint an arbitrator and does not participate in the arbitration. Defendants have refused to stay the arbitration pending resolution of this action.

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND

1     14.    A bona fide dispute exists between Plaintiff and Defendants in that:

2     a.    Defendants, and each of them, contend that their disputes with Plaintiff with

3 regard to legal services Plaintiff provided to Defendants are subject to arbitration based on the Pretec Fee

4 Agreements, and that the arbitrator has exclusive jurisdiction to determine whether or not any issues are

5 to be excluded from arbitration.

6     b.    Plaintiff, however, contends that the disputes between it and C-One and Pretec are

7 not subject to arbitration in that C-One is a non-signatory to the Pretec Fee Agreements and that there is

8 no enforceable agreement between the parties containing an arbitration clause. Therefore, any

9 controversy between Plaintiff and C-One and Pretec are not subject to arbitration. Further, all claims by

10 C-One and Pretec are time barred.

11     15.    Unless Defendants are restrained by the court from proceeding with the C-One

12 Arbitration pending hearing on Plaintiff's Order To Show Cause/Preliminary Injunction and pending

13 trial of this action, and unless Defendants are permanently enjoined as herein prayed, Defendants

14 threaten to proceed with the arbitration as herein alleged and Plaintiff will, as a proximate result, suffer

15 great and irreparable injury and will be compelled to submit to arbitration when no such requirement to

16 do so exists.

17     Wherefore, Plaintiff prays judgment against Defendants as follows:

18     1.    The court determines that the existing controversy between Plaintiff and Defendants is

19 not subject to arbitration.

20     2.    For an order requiring Defendants to show cause, if any, why it should not be enjoined

21 during the pendency of this action from further proceedings with the arbitration.

22     3.    For a temporary restraining order, a preliminary injunction, and a permanent injunction

23 enjoining the Defendants from proceeding with the arbitration of the controversy alleged herein until the

24 issue of whether or not the disputes between the parties are subject to arbitration has been determined by

25 the court of competent jurisdiction.

26     4.    For costs of suit incurred herein including reasonable attorneys' fees against C-One and

27 Pretec only.

28     5.    For such other and further relief as the court may deem proper.

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND

| | |
|---|---|
| 1 | |
| 2 | DATE: February 22, 2008 |

PHILLIPS, GREENBERG & HAUSER, L.L.P.

By: _____
          JERRY R. HAUSER

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND

1

**VERIFICATION**

2      I, Daniel Mount, am a shareholder of Plaintiff in this action. I have read the foregoing First

3  Amended Complaint and know its contents. The same is true of my own knowledge, except to those

4  matters that are therein alleged on information and belief, and as to those matters, I believe them to

5  be true.

6      I declare under penalty of perjury and the laws of the State of California that the

7  foregoing is true and correct. Executed on this ___21___ day of February, 2008, at San Jose California.

8

9      _____

10                          DANIEL MOUNT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**007**

6

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND

EXHIBIT D-1

# MOUNT & STOELKER
ATTORNEYS

DANIEL S. MOUNT
JAMES L. STOELKER
RICHARD J. LA FLEUR
SCOTT A. ROSS*
KATHRYN M. EHRMAN
ALFREDO A. BISMONTE

WILLIAM D. SAUERS
OF COUNSEL

*CERTIFIED SPECIALIST IN
ESTATE PLANNING, TRUST & PROBATE LAW,
THE STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS
SAN JOSE, CALIFORNIA 95110-2711
(408) 279-7000
FAX (408) 998-1473

LESLIE J. HOEKSTRA
RON C. FINLEY
LARA J. HODGSON
NADER E. YASIN
MARK A. SCHMUCK
ASHLEY X. JIANG+
HANA S. CALLAGHAN
PEGGY H. CHEN

+LICENSED ONLY IN THE
PEOPLE'S REPUBLIC OF CHINA

October 7, 2002

Pretec Electronics Corp.
Attn: Charles Lin
40979 Encyclopedia Cr.
Fremont, CA 94538

Re:    Lexar Media v. Pretec Electronics, et al. – Our File No. Prete001

Dear Mr. Lin:

This letter sets forth the basis upon which this office will represent Pretec Electronics Corp. with regard to the above matter in terms of both the scope of our legal representation of Pretec Electronics, as well as Pretec Electronics' obligations to us as a client. This letter further sets out the agreement by which attorneys' fees and costs will be paid to this firm. For purposes of this agreement all parties are referred to collectively as "you."

1.    Legal Services to be Provided.

We will represent you regarding the above matters. We will provide those legal services reasonably necessary to represent you in this matter. We will take reasonable steps to keep you informed of the progress of this case and to respond to your inquiries.

We will represent you through a trial or arbitration of these matters, if any, and through any post-trial or arbitration motions or execution proceedings. After final judgment is entered, we will not represent you in any appellate court proceedings, unless a separate fee agreement is entered into between you and this firm. Unless we make a different agreement in writing, this agreement will govern all future services we may perform in these matters, or in any other matters in which we might represent you.

EXHIBIT A

EXHIBIT D-1

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 2

2.     Responsibilities of Attorney and Client.

    We will perform the legal services called for under this agreement, keep you and Pretec informed of progress and developments in the case, and respond promptly to your inquiries and communications. You agree to respond promptly to our inquiries, be truthful with the firm at all times, cooperate fully with us, keep us informed of any developments in this matter, abide by this agreement, and keep us advised of your current address(es) and telephone number(s).

3.     Attorneys Fees and Costs.

    3.a.     Rates and Charges

$440.00 C¾

    You hereby agree to pay the hourly rate at our prevailing rates for time spent on this matter by our legal personnel. Our current hourly rates range from $440.00 per hour for senior attorneys down to $190.00 per hour for youngest attorneys. The rate schedule may increase from time to time.

    We will charge you for time spent on telephone calls relating to this matter, including calls to you, opposing counsel, or court personnel. The legal personnel assigned to this matter will confer among themselves about the matter as required. When they do confer, each person will charge for time expended. Likewise, if more than one of our legal personnel attends a meeting, court hearing or other proceeding, each will charge for time spent. You will be charged for waiting time in court and elsewhere, and for travel time, both local and out-of-town.

    You agree to pay all "Costs" in connection with our representation of you under this agreement. We may request you to pay Costs directly or in advance to this office. In the event that we advance Costs on your account, we will then bill such Costs to you on a monthly basis.

    Costs include, but are not limited to, court filing fees, deposition costs, expert fees and expenses, investigation costs, long-distance telephone charges, messenger service fees, in-house photocopying charges, photocopying expenses, mileage and process server fees. Items that are not to be considered Costs, and that must be paid by you without being either advanced or contributed to by Mount & Stoelker, include, but are not limited to, other parties' costs, if any, that you are ultimately ordered or required to pay.

EXHIBIT D-1

Pretec Electronics Corp.
Attn: Charles Lin
October 7, 2002
Page 3

  3.b.  Statements and Payments.

  We will send you monthly statements indicating attorneys' fees and costs incurred, and their basis any amounts applied, and any current balance owed. You agree to pay the balance due, in full, within 20 days after the statement is mailed. All parties are jointly and severally liable for payment of attorneys' fees and costs. At the end of our representation of you, any unused portion of the retainer will be returned to the party(ies) who deposited the retainer.

  3.c.  Trial Deposit.

  You will be required, 45 days prior to any scheduled trial, to post a deposit on account of fees. The deposit will be held in a trust account and withdrawn by Mount & Stoelker upon presentation of invoices for services. Any unused portion of the trial deposit will be available for return to you or credit for other services. The amount of the required trial deposit will be fixed as an estimate of the expected fees and Costs to be earned through the conclusion of the trial. Absent unusual circumstances, the trial deposit will be $12,000.00 for each day the trial is estimated to last.

  3.d.  Replenishing Retainer.

  You agree to pay $50,000.00 as a deposit against legal fees and costs for the Lexar Media v. Pretec matter. This sum is fully earned in consideration for our promise to represent you. However, we will apply that deposit to our bill for legal services and costs and the application will be reflected in the bill for services that you receive. You agree to keep the balance of the retainer at $50,000.00.

4.  Settlement.

  Mount & Stoelker will not settle the claims against you without your approval. You have the right to accept or reject any proposed settlement. You agree to act reasonably in deciding whether to accept or reject any settlement proposal. If you refuse to accept any reasonable settlement proposal which this firm has recommended that you accept, this firm may then withdraw from further representation of you in this matter upon such ground. We will notify you promptly of the terms of any settlement offer received by Mount & Stoelker.

5.  Attorney's Lien.

  You hereby grant us a lien on any and all claims or causes of action that are the subject of our representation of you. Our lien will be for any amounts owing to us. The lien

EXHIBIT D-1

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 4

will attach to any recovery you may obtain, whether by settlement, arbitration award, court judgment or otherwise.

6.    Termination of Relationship.

You may discharge Mount & Stoelker at any time. If, at the time of discharge, Mount & Stoelker is your attorney of record in any proceeding, you will execute and return a substitution-of-attorney form immediately on its receipt from Mount & Stoelker. Notwithstanding any such discharge, the signators to this agreement agree to pay Mount & Stoelker its fees and Costs through the date of discharge.

Mount & Stoelker may withdraw at any time as permitted under the Rules of Professional Conduct of the State Bar of California.

7.    Release of Client's Papers and Property.

After our services have concluded, we will, upon your request, deliver your files to you, along with any of your funds or property then in our possession. If no written instructions are received from you regarding disposition of the file materials, they will be destroyed 24 months after our services conclude.

8.    Disclaimer of Warranty.

Nothing in this agreement and nothing in our statements to you will be construed as a promise or a guarantee of the outcome of this matter. We make no such promises or guarantees. Our comments about the outcome of this matter are expressions of opinion only.

9.    Entire Agreement.

This writing contains our entire agreement regarding this firm's representation of you and regarding payment of fees. No other agreement, statement, or promise, whether written or oral, that was made on or before the effective date of this agreement will be binding on the parties.

10.    Arbitration of Dispute.

If a dispute arises between Mount & Stoelker and you regarding any aspect of this agreement or its implementation, including but not limited to the following: (a) Mount & Stoelker's claim for attorney's fees or costs under this agreement; or (b) any claim you may make for unsatisfactory performance, including a claim of legal malpractice; you agree to

011

EXHIBIT D-1

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 5

submit the matter to binding arbitration before the American Arbitration Association in Santa Clara County.

BE ADVISED THAT, BY AGREEING TO THIS PROVISION, BOTH OF US ARE WAIVING ANY RIGHT ONE MAY HAVE TO A TRIAL BY JURY. IF YOU CONSENT TO SUBMIT YOUR CLAIMS TO BINDING ARBITRATION, PLEASE INDICATE BY PLACING YOUR INITIALS IN THE SPACE PROVIDED:

PRETEC ELECTRONICS CORP.

Its _____

Mount & Stoelker _____

This agreement will take effect immediately upon receipt of the total retainer of $50,000.00. Please do not hesitate to contact me if you have any questions regarding this letter.

Sincerely,

Daniel S. Mount

The foregoing accurately reflects our agreement.

Dated: _____

PRETEC ELECTRONICS CORP.

By _____ Its _____

z:/Pretec001; 002;003/Fee Agreement Letter

012

EXHIBIT D-2

# MOUNT & STOELKER

### ATTORNEYS

DANIEL S. MOUNT
JAMES L. STOELKER
RICHARD J. LA FLEUR
SCOTT A. ROSS*
KATHRYN M. EHRMAN
ALFREDO A. BISMONTE

WILLIAM D. SAUERS
OF COUNSEL

*CERTIFIED SPECIALIST IN
ESTATE PLANNING, TRUST & PROBATE LAW,
THE STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS
SAN JOSE, CALIFORNIA 95110-2711
(408) 279-7000
FAX (408) 998-1473

LESLIE J. HOEKSTRA
RON C. FINLEY
LARA J. HODGSON
NADER R. YASIN
MARK A. SCHMUCK
ASHLEY X. JIANG†
HANA S. CALLAGHAN
PEGGY H. CHEN

†LICENSED ONLY IN THE
PEOPLE'S REPUBLIC OF CHINA

October 7, 2002

Pretec Electronics Corp.
Attn: Charles Lin
40979 Encyclopedia Cr.
Fremont, CA 94538

Re:    Sandisk Media v. Pretec Electronics, et al. – Our File No. Prete002

Dear Mr. Lin:

This letter sets forth the basis upon which this office will represent Pretec Electronics Corp. with regard to the above matter in terms of both the scope of our legal representation of Pretec Electronics, as well as Pretec Electronics' obligations to us as a client. This letter further sets out the agreement by which attorneys' fees and costs will be paid to this firm. For purposes of this agreement all parties are referred to collectively as "you."

1.    Legal Services to be Provided.

We will represent you regarding the above matters. We will provide those legal services reasonably necessary to represent you in this matter. We will take reasonable steps to keep you informed of the progress of this case and to respond to your inquiries.

We will represent you through a trial or arbitration of these matters, if any, and through any post-trial or arbitration motions or execution proceedings. After final judgment is entered, we will not represent you in any appellate court proceedings, unless a separate fee agreement is entered into between you and this firm. Unless we make a different agreement in writing, this agreement will govern all future services we may perform in these matters, or in any other matters in which we might represent you.

EXHIBIT B

EXHIBIT D-2

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 2

2.    <u>Responsibilities of Attorney and Client.</u>

     We will perform the legal services called for under this agreement, keep you and Pretec informed of progress and developments in the case, and respond promptly to your inquiries and communications.  You agree to respond promptly to our inquiries, be truthful with the firm at all times, cooperate fully with us, keep us informed of any developments in this matter, abide by this agreement, and keep us advised of your current address(es) and telephone number(s).

3.    <u>Attorneys Fees and Costs.</u>

    3.a.    <u>Rates and Charges</u>

$ 400.00

     You hereby agree to pay the hourly rate at our prevailing rates for time spent on this matter by our legal personnel.  Our current hourly rates range from $450.00 per hour for senior attorneys down to $190.00 per hour for youngest attorneys.  The rate schedule may increase from time to time.

     We will charge you for time spent on telephone calls relating to this matter, including calls to you, opposing counsel, or court personnel.  The legal personnel assigned to this matter will confer among themselves about the matter as required.  When they do confer, each person will charge for time expended.  Likewise, if more than one of our legal personnel attends a meeting, court hearing or other proceeding, each will charge for time spent.  You will be charged for waiting time in court and elsewhere, and for travel time, both local and out-of-town.

     You agree to pay all "Costs" in connection with our representation of you under this agreement.  We may request you to pay Costs directly or in advance to this office.  In the event that we advance Costs on your account, we will then bill such Costs to you on a monthly basis.

     Costs include, but are not limited to, court filing fees, deposition costs, expert fees and expenses, investigation costs, long-distance telephone charges, messenger service fees, in-house photocopying charges, photocopying expenses, mileage and process server fees.  Items that are not to be considered Costs, and that must be paid by you without being either advanced or contributed to by Mount & Stoelker, include, but are not limited to, other parties' costs, if any, that you are ultimately ordered or required to pay.

EXHIBIT D-2

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 3

### 3.b.    Statements and Payments.

We will send you monthly statements indicating attorneys' fees and costs incurred, and their basis any amounts applied, and any current balance owed.  You agree to pay the balance due, in full, within 20 days after the statement is mailed.  All parties are jointly and severally liable for payment of attorneys' fees and costs.  At the end of our representation of you, any unused portion of the retainer will be returned to the party(ies) who deposited the retainer.

### 3.c.    Trial Deposit.

You will be required, 45 days prior to any scheduled trial, to post a deposit on account of fees.  The deposit will be held in a trust account and withdrawn by Mount & Stoelker upon presentation of invoices for services.  Any unused portion of the trial deposit will be available for return to you or credit for other services.  The amount of the required trial deposit will be fixed as an estimate of the expected fees and Costs to be earned through the conclusion of the trial.  Absent unusual circumstances, the trial deposit will be $12,000.00 for each day the trial is estimated to last.

### 3.d.    Replenishing Retainer.

You agree to pay $50,000.00 as a deposit against legal fees and costs for the Sandisk Corporation v. Pretec matter.  This sum is fully earned in consideration for our promise to represent you.  However, we will apply that deposit to our bill for legal services and costs and the application will be reflected in the bill for services that you receive.  You agree to keep the balance of the retainer at $50,000.00.

### 4.    Settlement.

Mount & Stoelker will not settle the claims against you without your approval.  You have the right to accept or reject any proposed settlement.  You agree to act reasonably in deciding whether to accept or reject any settlement proposal.  If you refuse to accept any reasonable settlement proposal which this firm has recommended that you accept, this firm may then withdraw from further representation of you in this matter upon such ground.  We will notify you promptly of the terms of any settlement offer received by Mount & Stoelker.

### 5.    Attorney's Lien.

You hereby grant us a lien on any and all claims or causes of action that are the subject of our representation of you.  Our lien will be for any amounts owing to us.  The lien

015

EXHIBIT D-2

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 4

will attach to any recovery you may obtain, whether by settlement, arbitration award, court judgment or otherwise.

6.    Termination of Relationship.

        You may discharge Mount & Stoelker at any time.  If, at the time of discharge, Mount & Stoelker is your attorney of record in any proceeding, you will execute and return a substitution-of-attorney form immediately on its receipt from Mount & Stoelker. Notwithstanding any such discharge, the signators to this agreement agree to pay Mount & Stoelker its fees and Costs through the date of discharge.

        Mount & Stoelker may withdraw at any time as permitted under the Rules of Professional Conduct of the State Bar of California.

7.    Release of Client's Papers and Property.

        After our services have concluded, we will, upon your request, deliver your files to you, along with any of your funds or property then in our possession.  If no written instructions are received from you regarding disposition of the file materials, they will be destroyed 24 months after our services conclude.

8.    Disclaimer of Warranty.

        Nothing in this agreement and nothing in our statements to you will be construed as a promise or a guarantee of the outcome of this matter.  We make no such promises or guarantees.  Our comments about the outcome of this matter are expressions of opinion only.

9.    Entire Agreement.

        This writing contains our entire agreement regarding this firm's representation of you and regarding payment of fees.  No other agreement, statement, or promise, whether written or oral, that was made on or before the effective date of this agreement will be binding on the parties.

10.    Arbitration of Dispute.

        If a dispute arises between Mount & Stoelker and you regarding any aspect of this agreement or its implementation, including but not limited to the following: (a) Mount & Stoelker's claim for attorney's fees or costs under this agreement; or (b) any claim you may make for unsatisfactory performance, including a claim of legal malpractice; you agree to

EXHIBIT D-2

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 5

submit the matter to binding arbitration before the American Arbitration Association in Santa Clara County.

BE ADVISED THAT, BY AGREEING TO THIS PROVISION, BOTH OF US ARE WAIVING ANY RIGHT ONE MAY HAVE TO A TRIAL BY JURY. IF YOU CONSENT TO SUBMIT YOUR CLAIMS TO BINDING ARBITRATION, PLEASE INDICATE BY PLACING YOUR INITIALS IN THE SPACE PROVIDED:

PRETEC ELECTRONICS CORP.

Its _____

Mount & Stoelker

This agreement will take effect immediately upon receipt of the total retainer of $50,000.00. Please do not hesitate to contact me if you have any questions regarding this letter.

Sincerely,

Daniel S. Mount

The foregoing accurately reflects our agreement.

Dated: Oct 10, 2002

PRETEC ELECTRONICS CORP.

By _____

Its _____

z:/Pretec002; 002;003/Fee Agreement Letter

Leodis C. Matthews [SBN 109064]
MATTHEWS & PARTNERS
4322 WILSHIRE BOULEVARD, STE. 200
LOS ANGELES, CALIFORNIA 90010-3792
TELEPHONE: 323.930.5690
FACSIMILE: 323.930.5693

Attorneys For Claimant:
C-One Technology & Pretec Electronics

# BEFORE THE AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| In The Arbitral Matter Between ) | **AAA File No. 50 194 T 0000608** |
| ) | **AAA Confirmation No. 002-IV3-Z75** |
| **C-ONE TECHNOLOGY**, a Taiwanese ) | |
| Corporation; **Pretec Electronics** ) | FIRST AMENDED |
| **Corporation**, ) | STATEMENT OF CLAIM |
| ) | OF |
| Claimants, ) | C-ONE TECHNOLOGIES |
| And ) | FOR |
| ) | BREACH OF CONTRACT |
| ) | BREACH OF FIDUCIARY DUTY |
| **MOUNT & STOELKER**, a Professional ) | MISREPRESENTATION |
| Corporation, ) | AND |
| ) | INDEMNIFICATION |
| Respondent ) | |
| . ) | |

**Comes Now**, C-ONE TECHNOLOGY ["C-One"] and PRETEC ELECTRONICS CORPORATION

["Pretec"] by and through its attorneys of record, Leodis C. Matthews, Matthews and Partners,

hereby files this Statement of Claim against MOUNT & STOELKER, P.C. ["M&S"], a San Jose,

018

EXHIBIT C

California law firm which holds itself out as having an international client base and which "specializes in intellectual property litigation". M&S further represent that it has "successfully represented clients in lawsuits involving (among other things) Patent(s)" and employs attorneys who "are knowledgeable about technologies", including but not strictly limited to "Electronic Circuitry" and "Memory Devices"[1].

While the gravamen of this claim revolves around the reasonableness and unconscionableness of the legal fees and costs paid, as well as those which are allegedly still due and owing, its genesis lay on the well founded legal principals of contract, indemnification, professional responsibility, and the fiduciary duties which attorneys owe to their respective clients throughout the course of the attorney-client relationship and beyond.

## I.
### THE PARTIES

1       At all times herein relevant, C-One is and was a Taiwanese Corporation which has its principal place of business in Hsin-Chu, Taiwan.

2       At all times herein relevant, M&S is and was a Professional Corporation engaged in the practice of law with its principal office located in the City of San Jose, County of Santa Clara, State of California.

---

[1] Ref.: http://www.mount.com/index.cfm (Areas of Practice: Intellectual Property Litigation)

3.      Pretec was at all times herein relevant a California Corporation[2] which had its principal place of business in the City of Fremont, California and distributed by C-One's technological products in the United States, which included certain and specific flash memory devices. Pretec is a wholly separate and distinct legal entity from C-One and have separate business operations as well as separate personnel, separate business facilities and operations.

## II.
## The Facts Leading To The Filing of This Claim

A.    The Various Litigation Matters

4.      On or about April 21, 2001 Lexar Media, Inc.["Lexar"][3], filed a patent infringement case in federal district court (Northern District of California Case No 00-4770 MJJ) against several defendants, including Pretec, C-One[4] and Memtec Products, Inc. ["Memorex"][5], alleging that the flash memory controller units manufactured by C-One, distributed by Pretec, and sold by Memorex infringed upon five of Lexar's patents.

5.      On or about July 30, 2001 C-One and Pretec entered into a written indemnification

---

[2] Pretec's corporate structure has since been dissolved.

[3] Referred to in M&S invoices as "File No. Prete.001".

[4] C-One was substituted in later in time in the stead of a fictitiously named Doe Defendant (See Below).

[5] PNY Technologies, Inc., a Delaware Corporation, was also a named defendant in this action and Pretec and C-One also provided a defense for PNY for certain claims pursuant to its distributor agreement.

---

AMENDED STATEMENT OF CLAIM
C-One & Pretec Electronic Corp. v. Mount & Stoelker - AAA Claim No 002-IV3-Z75        -3-

agreement with Memorex whereby C-One and Pretec agreed to fully defend, indemnify, and hold

Memorex harmless from and against all claims or causes of action that have been raised, could

have been raised by Lexar or any third party in connection with any Products sold by Memorex

that may infringe or violate the patent, copyright, trade secret, or other intellectual property right

of a third party.  More specifically, the scope of this indemnity included, without limitation, the

following:

> 1. . . . .(I) the obligation of C-One and Pretec to pay on behalf of Memtek any and all losses, costs, damages (compensatory and punitive), expenses, judgments, settlements, awards of costs or attorney fees, royalties, or any other amounts arising out of any claim that Memtek paid or is required to pay to opposing parties in connection with such claims; and (ii) the obligation for C-One and Pretec to assign counsel of its choice acceptable to Memtec to undertake the professional responsibility of representing Memtek in Lexar's claim and to assert any counterclaims, cross-claims, and/or third party claims arising out of the same transaction or series of transactions, and to pay all fees and expenses of such counsel and other professionals rendering assistance to such counsel. . . . . .

> 2. C-One and Pretec agree to instruct its counsel to communicate with Memtec . . . and to keep Memtec regularly informed of the progress of the Action, settlement discussion, and any related third party claims or allegations of infringement.  Memtec retains the right to have its counsel participate in any proceedings relating to Lexar's and/or any third party claims at Memtec's sole cost and expense; provided, however, that if Memtec claims that C-One or Pretec has breached this Agreement or is not satisfied with the legal representation being provided by C-One or Pretec on its behalf, then Memtec also reserves the right to serve written notice in C-One or Pretec and to have its own counsel resume representation of Memtec, and in that event Memtec reserves the right to seek recovery of all damages, attorney fees, and costs, and C-One and Pretec reserve the right to raise all claims and defenses thereto.

---

6.    Thereafter, on or about October 20, 2001, SanDisk Corporation ["SanDisk][6] filed a separate complaint in federal district court (Northern District of California Case No 01-4063 VRW) against, amongst others, Memorex and Pretec in which it alleged that the flash memory technologies products distributed by Pretec and Memorex infringed on a SanDisk patent. C-One was never a named party in the SanDisk case.

7.    Pursuant to the express terms of the Indemnity Agreement set forth above C-One and Pretec were obliged to indemnify and hold Memorex harmless in the SanDisk case as well.

8.    On September 26, 2003 Memorex filed a Complaint for Declaratory Relief, Breach of Contract, and Injunctive Relief against both C-One and Pretec (Alameda Superior Court Case No RG03118916) alleging specific breaches of the Indemnification Agreement[7].

B.    M & S's Representation In Connection With Lexar And SanDisk

9.    Initially, attorney Thomas C. Jeing was retained to represent Pretec and Memorex in both the Lexar and SanDisk federal court actions in or around October 2001.  However, in or around October 2002, it became apparent that Mr. Jeing had abandoned any meaningful

---

[6]  Referred to in M&S invoices as "File No. Prete.002".

[7]  These allegations and their implication on this instant claim will be discussed more fulsomely below.

AMENDED STATEMENT OF CLAIM
C-One & Pretec Electronic Corp. v. Mount & Stoelker - AAA Claim No 002-IV3-Z75          -5-

representation of either Pretec or Memorex in both of these pending patent infringement cases[8].

10.    On or about October 7, 2002 M&S was retained to represent Pretec, and the two American distributors, Memorex and PNY, in the Lexar litigation but Memorex declined to accept M&S's representation and instead retained the firm Keker & VanNest, LLP, to represent its interests. (A copy of the Pretec/M&S attorney fee agreement is attached as Exhibit D-1).

11.    M&S was also retained on that October 7, 2002 date to represent both Pretec and Memorex in the SanDisk case.  M&S continued to represent Memorex in SanDisk through on or about November 14, 2002[9].  (A copy of the Pretec/M&S attorney fee agreement is attached as Exhibit D- 2).

12.    On May 8, 2003 C-One was served in Taiwan with a summons and an amended complaint naming it as an additional defendant in the Lexar litigation at which time M&S appeared on behalf of C-One as its attorneys of record.  Although M&S actively represented both C-One and Pretec in Lexar until May 30, 2006, at which time its motion to withdraw as attorneys of record was granted[10], no retainer agreement was ever entered into by and between C-One and

---

[8] Mr. Jeing also abandoned several other clients' cases during this same time and was ultimately disciplined by the California State Bar [Case Nos. 03-O-02715, 03-O-03913, and 04-O-13946].

[9] More fulsomely discussed in subsections "C" below.

[10] The court gave C-One and Pretec thirty days to find substitute counsel.

M&S regarding this representation.

13.   On July 11, 2003, Memorex sent a letter to C-One and Pretec requesting that they approve and finance a proposed settlement agreement by and between Memorex and SanDisk. Acting on the advice of M&S, C-One and Pretec informed Memorex that it would neither approve nor finance the settlement agreement and further went on to assert that they were not obligated under the indemnification agreement to pay for the fees and costs of Memorex's separate representation in both Lexar and SanDisk.

14   M&S ceased to actively participate and represent Pretec in SanDisk after filing its first motion to withdraw in May 2006. M&S's second motion to withdraw as counsel for Pretec was also denied on June 6, 2007 "for the same reasons and with the same conditions as its prior (May 2006) motion to withdraw"; to wit: M&S "fails to show that Pretec has obtained substitute counsel or that Pretec refuses to engage new counsel. To the contrary, the current motion requests that the court allow counsel to withdraw and "provide Pretec with appropriate time to engage new counsel"".

15.   On June 14, 2005, Memorex was dismissed from Lexar with prejudice based on its approval of the settlement agreement and mutual release reached by and between its attorneys (not M&S) and those representing the Plaintiff.

16.   On November 8, 2006 a stipulated order was entered in Lexar which substituted

the firm Beck, Ross, Bismonte & Finley, LLP, as attorneys of record for PNY in the stead of M&S.

17.    Thereafter, on April 18, 2007, PNY entered into a settlement agreement with the Plaintiff in Lexar which resulted in its dismissal from the case with prejudice on May 8, 2007.

18.    It is noted with acute particularity that in the Lexar litigation, all named defendants have already settled and have been dismissed except for C-One and Pretec and, with respect thereto, since retaining new counsel on June 30, 2007, C-One and Pretec has reached a settlement with the Plaintiff in the Lexar matter.

19.    Similarly, Pretec, with the same new counsel, has also reached a tentative settlement in the SanDisk litigation (all other Defendants having long since either settled or dismissed on other grounds).  Until new counsel became attorney of record for SanDisk, on or about July/August 2007, M & S remained counsel of record in those proceedings.

C.    The Interplay, Relevance, and Significance of the Superior Court Action

20.    In its Statement of Decision of April 26, 2006 (Phase One), the State Superior Court found that Memorex was "justified, using an objectively reasonable standard of acceptability, in finding that (M&S) and their actions unacceptable under the terms of the Indemnification Agreement".  In making this finding, the Court cited, *inter alia*, the following established facts:

a.    That M&S failed to communicate with Memorex's designated in-house counsel;

b.    That M&S did not communicate regularly to Memorex the status of important events in the SanDisk case;

c.    That M&S failed to provide Memorex with copies of the pleadings in the SanDisk case and did not clearly state the position it was taking in the SanDisk sanctions regarding Memorex and Pretec's respective conduct and culpability; and

d.    That M&S failed to inform Memorex that SanDisk was attempting to obtain sanctions against Memorex because of M&S's failure to present evidence that Memorex had no knowledge of Mr. Jeing's actions[11].

21.    In making its ruling that Memorex had objectively reasonable grounds for rejecting M&S, the Court made further and peculiar reference to a letter to Memorex from an M&S attorney (Ron C. Finley), dated November 15, 2002, which it found illustrative of "Memorex's concerns about the potential conflicts with" M&S's duel representation; noting that the "letter begins by stating that it sets forth Pretec's position. The letter then refers to Pretec as "our client". The letter takes positions adverse to Memorex in outlining why Pretec did not believe

---

[11] In SanDisk, the court imposed sanctions against both Mr. Jeing and Memorex while in Lexar, where Memorex was represented by Keker and VanNest, sanctions were only imposed against Mr. Jeing alone.

AMENDED STATEMENT OF CLAIM
C-One & Pretec Electronic Corp. v. Mount & Stoelker - AAA Claim No 002-IV3-Z75        -9-

it was responsible for Memorex's legal fees. . . . The tone of the letter, failure to specifically state that Mr. Finley was neutral in any disputes between the parties, and advocacy on behalf of Defendants' (C-One and Pretec) position against Memorex, would give the recipient Memorex reasonable doubt about the loyalties of Mr. Finley."

22.    The State Superior Court further found that (1) C-One and Pretec breached the terms of the Indemnification Agreement and (2) that Memorex may recover damages as provided in Section 2 of the Agreement subject to any remaining defenses C-One and Pretec may have.

23    Two months later, on June 26, 2006, M&S's motion to be relieved as counsel for C-One and Pretec was granted.

24.    On December 15, 2006, a default judgment, which became final on January 14, 2007, was entered against C-One and Pretec and in favor of Memorex in the amount of $1,046,895.02 down as follows:

    a.    $374,956.52 for attorney fees and costs incurred in the Lexar and SanDisk cases;

    b.    $486.939.50 for attorney fees and costs incurred in litigating the Superior Court action; and

    c.    $185,000.00 for the amount Memorex paid in settlement of the Lexar case.

D.    <u>M&S Billings For Legal Services Rendered</u>

25.    M&S's invoices for fees ($3,759,224.42) and costs together totaled $3,915,251.73 were all billed to its Pretec accounts and were paid in full. Both Pretec and C-One believe that M&S are also seeking additional fees and costs over and above the amounts previously paid.

26.    For the reasons set forth below, Pretec and C-One challenge both the reasonableness and propriety of these fees and costs.

### III.
### C-One and Pretec Base This First Claim Against M&S
### Relating to the Alameda County Superior Court Case
### On The Relevant Facts As Set Forth Above And
### The Following Arguments

27.    Of the total amount of fees and costs paid to M&S to date, $727,156.00 in fees and $10,635.38 in costs were billed as legal services and costs rendered and expended in connection with M&S' representation of C-One and Pretec in the Lexar and Pretec federal cases when in fact they were actually performed and directly related to M&S's defense of C-One and Pretec in the Superior Court Action filed by Memorex.

28.    In addition to these fees, C-One and Pretec were also ordered to pay Memorex $486.939.50 for its attorney fees and the costs it incurred in litigating the Superior Court action.

A.    <u>No Written Fee Agreement Between The Parties Covered This Matter</u>

29.    The written fee agreements between Pretec and M&S dealt solely with the two federal court actions (Lexar and SanDisk) which involved federal issues and questions of law

relating to intellectual property and patent infringement.

30.    While the fee agreement does refer to "any other matters in which we might represent you", it is C-one's position that it was not a party to this agreement and it is Pretec's position that at the time that this written agreement was executed it was not contemplated by the parties that it would become embroiled in a state court civil action which, for the reasons set forth below, was the direct and proximate result of M&S' legal advice and its failure to communicate with Memorex as required by the express terms of the Indemnification Agreement.

B.    Misrepresentation of the Law

31.    Both C-One and Pretec contend that its officers and directors were all Taiwanese nationals who had no education in United States law, that English was not their native tongue, and that did not have any prior experience dealing with either American contract law let alone the intricacies of U.S. Patent Law.  Accordingly, when M&S advised both C-One and Pretec that, in its legal opinion, neither C-One nor Pretec was under any obligation to pay for either Memorex's separate legal fees or to approve the settlement offer Memorex had tentatively made with SanDisk, they had no reason to doubt these misrepresentations of the law at either the time that they were made or at the time it agreed to follow the advice of M&S as it related to its refusal of Memorex's demands for payment of its separate attorney fees and the approval and funding of the proposed settlement agreement.

32.     If either C-One or Pretec had been aware of both the true facts and the true nature

of the law at the time it would have not taken the advice of M&S as it related to their obligations

under the Indemnity Agreement and would have performed all of their obligations under the

Indemnification Agreement with Memorex.  Instead, on the advice of M&S they litigated the

matter and ultimately lost because there was no factual or legal justification to deny to their

obligations.

33.     As a direct and proximate result of M&S's misrepresentations of law and fact they

incurred legal fees and costs billed by and paid to M&S in the total amount of $737,791.38 by

reason of which both Pretec and C-One were damaged.

34.     As a further direct and proximate result of M&S's misrepresentations of law and

fact, C-One and Pretec were ordered by the Court to additionally pay Memorex's attorney fees

and costs in the State Court action, in the total amount of $486,939.50, which caused C-One and

Pretec to suffer even further damage and detriment.

C.     Implied Equitable Indemnity

35.     As part of C-One and Pretec's Indemnity Agreement with Memorex they were

required to assign, provide  and pay for "acceptable" counsel to Memorex to undertake "the

professional responsibility" of representing Memorex in the above-referenced Lexar and SanDisk

federal patent infringement cases.

36.    In its Statement of Decision of April 26, 2006 (Phase One), the Court [Memorex v C-One (ACSC Case No RG02-118916] found that Memorex was "justified, using an objectively reasonable standard of acceptability, in finding that (M&S) and their actions unacceptable under the terms of the Indemnification Agreement". Thereafter, in the "Phase Two" trial, the Court entered its Judgment and Order on December 15, 2006 wherein C-One and Pretec were ordered to pay Memorex $486.939.50 for attorney fees and costs it had incurred in litigating the Superior Court action. This judgment was based on M&S's wrongful acts as set forth above.

37.    By reason of the foregoing, including the fiduciary duty M&S owed to C-One and Pretec as an integral of their attorney-client relationship, C-One and Pretec are entitled to indemnity from M&S for all of the attorney fees and costs awarded to Memorex in connection with its litigation of the Superior Court Action. This breach of duty is all the more egregious given the fact that M&S withdrew from the case prior to the Phase Two damage portion of the trial which resulted in a default judgment and damages against C-One and Pretec. .

## IV.
## C-One Bases Its Second Claim Relating To M&S's Questionable Billing Practices In The Federal Lexar and SanDisk Cases On The Relevant Facts Set Forth Above, The More Particularized Facts Set Forth Immediately Below, And Their Attendant Arguments

38.    According to a review of the invoices submitted by M&S in connection with the

professional services it rendered on behalf of C-One and Pretec in the Lexar and SanDisk federal

cases (which also included services rendered in the Memorex State Court action), the following

problems with M&S's billing practices exist:

A.    Time Increments & Blocked Billing[12]

39.    M&S billed time in 0.10 hour (six minute) increments. Eighty-four (84%) percent

(9,221 of 10,922) were billed in a block billing (multitask) format and only 32 of these total tasks

were charged at the 0.10 hour increment.

40.    This method of billing prevented them from not only evaluating the reasonableness

of time and fees charged for individual tasks but also prevented it from determining whether or

not the total daily time and fees charged by any particular timekeeper was overstated, inflated,

or duplicative of work performed by others.

41.    M&S charged $2,774,193.75 using blocked billing entries

B.    Lack Of Meaningful Review

42.    The exercise of meaningful billing judgment is a crucial element of an attorneys'

legal fees and the appropriate exercise of this billing judgment requires a good-faith effort to

exclude time charges for tasks that are excessive, redundant, or otherwise unnecessary.

43.    While occasional misspelling or typographical error is unavoidable by even the

---

[12] Blocked billing is the practice of grouping multiple tasks in a single entry with only a single time amount associated with all the tasks in the entry.

AMENDED STATEMENT OF CLAIM
C-One & Pretec Electronic Corp. v. Mount & Stoelker - AAA Claim No 002-IV3-Z75        -15-

most conscientious law firm, on the other hand, a number of obvious errors in billing entries indicate a lack of attention by the law firm's billing partner as well as suggests the absence of a meaningful billing review.

44.    As is applicable here, there are 63 instances of obvious M&S task description errors were identified on all 87 invoices reviewed, including the misspelling of party names ("Lexar" for "Lexar", "Ritec" for "Ritek") and the misspelling of the *City By the Bay* ("San Fracisco" instead of "San Francisco").

45.    Viewed in a vacuum this apparent lack of attention to detail may lose its significance.    However, the failure of M&S billing attorneys to identify and correct task description errors in the firms invoices is especially noteworthy in the context of the frequency of charges at premium rates by M&S partner-level attorneys for such things as "review", "attention to", and "consider" Lexar and SanDisk files and documents.

C.    Double Billing[13]

46.    The invoices prepared and submitted by M&S to Pretec and paid by C-One contain at least 5.65 hours, for a combined fee total of $2,091.00 which appear to be for identical task descriptions.

////

---

[13] Double Billing is defined as tasks billed on the same day and performed by the same timekeeper where the task descriptions and time billed are identical or nearly so.

D.    Hourly Billing Increases

47.    The fee agreements by and between M&S and Pretec provided for a maximum hourly rate of $400 per hour for senior attorneys to a low of $190 per hour for less experienced attorneys. While the agreement further provided that this "rate schedule may increase from time to time" at no time did M&S give Pretec any advance notice of an anticipated, future rate increase prior to it being implemented.

48.    Claimants are informed and believe that, during the course of M&S's representation, M&S implemented rate increases for 13 timekeepers one or more times, ranging from a low of 10% to a high of 89%, without prior notice. The rates for named partner Daniel Mount increased by 19%.

49.    Claimants are further informed and believe that the total amount of fees billed based solely upon these increased rates is at least $377,560.50.

E.    Potentially Rounded-Up Time Entries

50.    Claimants further contend that timekeepers who demonstrate an obvious pattern (increments of 0.25, 0.50, or 1.00 hour) may be systematically overcharging the actual time required to perform the task or tasks described.

51.    For example, attorney Mount submitted 588 total billing entries related to the Lexar and SanDisk cases of which 554 (or 94%) suggest a significant pattern of potentially round-up

entries (63 entries were even-hour amounts, 158 entries were half-hour amounts, and 333 were quarter-hour amounts). The total time charged by attorney Mount in these increments totaled $481,862.50.

F.    Non-Defense Related Activities

52.    Claimants contend that a law firm's activities to prepare and obtain court approval for a motion to withdraw are not considered defense-related tasks chargeable to the client. Likewise, tasks related to winding up the relationship after withdrawal motion has been filed are also considered noncompensable.

53.    The invoices submitted by M&S display combined hours of 51.48 and combined fees of $14,655.32 which identify tasks related solely to M&S's withdrawal from the Lexar and SanDisk litigation.

G.    Vaguely Described Tasks

54.    Claimants contend that, at a minimum, task descriptions should identify each service separately and in a manner sufficient to permit the client to determine the nature of the professional services performed and its benefit to the client. Here, M&S, a law firm which claims a level of expertise regarding patent litigation matters should be skilled in drafting accurate task descriptions that are both highly descriptive and yet still preserve both privileged and otherwise confidential client information.

AMENDED STATEMENT OF CLAIM
C-One & Pretec Electronic Corp. v. Mount & Stoelker - AAA Claim No 002-IV3-Z75          -18-

55.    M&S firm task descriptions for the most part do not meet the objective standards

of specificity and for the most part are so unacceptably vague that they preclude any insight into

the nature of the task performed.  For instance:

a.    2,920 task descriptions referencing documents, issues and litigation activities

prefaced only with the phrase "attention to";

b.    924 task descriptions were charged to "consider" or "consider issues re

specific documents:

c.    598 task descriptions relating to meetings, internal conferences and

telephone calls were so vaguely described that they shed absolutely no light on the subject matter

being discussed;

d.    250 task descriptions relating to correspondence and correspondence review

which neither identified an intended recipient or detail nor identified the source or its subject

matter; and

e.    222 task descriptions for miscellaneous tasks, such as "review", which were

too generally described to be meaningful.

56.    Taken together, a combined total of 4,934.44 hours and $1,570,038.94 in fees were

charged by M&S for the types of vaguely described tasks set forth above.

H.    Duplication of Effort

57.    Claimants contend that since M&S identifies itself as a patent litigation specialist, attorneys with that level of skill and experience should, in most instances, be able to handle important client matters without the involvement of multiple attorneys.  However, since the retainer agreement does provide that "legal personnel assigned to this matter will confer among themselves as required, the following summary defines "Duplication of Effort" when time is charged by more than two attorneys and when preparation for activities are charged by attorneys who did not attend or participate in the activity for which such preparation time was billed.  Using this yardstick, the following billing errors are identified:

a.    M&S billed 25.36 hours and $5,407.75 in combined fees for multiple involvement in outside meetings and conferences.

b.    M&S billed 69.57 hours and $16,835.58 in combined fees for multiple involvement at court appearances and depositions.

c.    M&S charges for internal firm conferences are approximately 7% of the total fees billed by the firm.  Although productive conversations on relevant legal and factual issues between firm attorneys was contemplated by the retainer agreement, C-One contends that since meetings between three or more attorneys (particularly those which include associates and junior associates) have a significant downstream administrative component, it should not be charged for

the time M&S used to train its associates and, with respect thereto, C-One has identified at least 11.19 hours and combined fees of $2,570.64 associated with unnecessary participation in intra-office conferences.

I.    Duplicative or Redundant Activities

58.    Claimants concede that there are legitimate reasons for law firms to sometime charge for more than one timekeeper to research the same topic, prepare the same letter, pleading, or memorandum, or review the same document.  However, Claimants nevertheless contend that these duplicative and/or redundant activities should not be billed to the client if their underlying purpose was to benefit the law firm rather than directly aided M&S in the presentation of their clients' defense, particularly where the utility to the client of these redundancies cannot be demonstrated.

59.    With respect to litigation project activities, by allowing the time and tasks charged by the most senior attorneys on these projects, and questioning only the duplicative involvement of lower level attorneys, C-One and Pretec are informed and believe that  a combined total of $1,434.75 hours and a total of $258,488.10 in combined fees show duplicative efforts.

60.    Both C-One and Pretec submit that more experienced attorneys frequently review and edit drafts of major pleadings prepared by less experienced attorneys.  By the same token, they are informed and believe that multiple review of the same documents by multiple attorneys is also

at times duplicative. Likewise, charges by both junior and senior attorneys to review the same incoming documents also reflects a similar redundancy. By questioning only the time charged by the more junior attorneys, C-One and Pretec are informed and believe that at least 54.09 cumulative hours and $11,727.50 in combined fees are either duplicative or redundant.

61.    Claimants are further informed and believe that at least five sporadic timekeepers, each of whom billed less than 15.00 hours, are lacking in utility, nonproductive, or duplicative of the activities of the other and more regular timekeepers. Likewise, none of the transient billing by attorney LaFleur for all three entries charged to the "Polaroid" matter, none of which appeared to reflect substantive legal services on an identifiable project.[14] Within this category, the efficacy of the 30.80 hours and combined fees of $6,881.00 billed by M&S and paid is improperly reflected in the Pretec invoices.

J.    Legal Research and Drafting Projects

62.    As advertised M&S attorneys are specialists in patent litigation and should therefore be well-versed with basic procedural rules of the jurisdictions where they routinely practice as well as the substantive area of law for which the law firm represents itself to have a superior level of competence. Notwithstanding the vagueness of its billings, at least $6,783.33 in combined legal fees for legal research activities is invoiced for which the subject matter as described is such

---

[14]/ M &S billed Pretec for work on a "Polaroid" matter not apparent from its fee agreement and not involved in either the SanDisk or Lexar nor Memorex matters.

that an experienced patent litigation attorney should already be most familiar with.

K.    <u>Clerical Tasks</u>

63.    Clerical tasks are those types of tasks that do not require legal acumen and that secretaries, file clerks, messengers, and other nonprofessional staff (as opposed to attorneys, paralegals, and legal assistants) can effectively perform. M&S timekeepers charged for such tasks as new matter set-up and organization, scheduling meetings and events, electronic document retrieval, scanning, copying, e-filing, and simple document organization; all of which fall within the ambit of the definition of a "clerical task".. With peculiar reference thereto, not less than 408.35 total hours and $55,664.15 in combined costs and fees was inappropriately charged to Pretec for the performance of such "clerical" tasks by its professional legal staff.

L.    <u>Administrative Tasks</u>

64.    While Claimants recognize that administrative tasks such as preparing invoices, managing and supervising support staff, processing invoices, in-house training and continuing education for attorneys, preparing budgets and forecasts, scheduling, software and systems training, and other similar tasks of an administrative nature are necessary for the effective and efficient administration of a law practice, they contend that these types of tasks are not typically considered "legal services" passed on and chargeable to a client. At least 98.23 total hours and $29,975.75 in combined fees were billed to Pretec as "legal fees" when in fact that they were

actually administrative "costs".

M.     Expenses

65.     M&S should have provided supporting documentation for external expenses to allow for the reconciliation of the expense charges to underlying receipts to determine if the expenses are billed to the appropriate client matter and at actual cost.  The external expenses totaling $155,580.31 for which no supporting documentation was provided and on this basis alone considers these external expenses questionable.

66.     M&S also billed Pretec for computer-assisted legal research charges totaling $16,868.38[15].  Traditionally, a "brick and mortar law library" was treated and considered as an overhead expense.  C-One and Pretec contend that computer-assisted legal research is but an alternative means of conducting legal research and accordingly should be treated the same - as part of the law firm's overhead and the cost included in the determination of M&S' hourly rates.  This is all the more true if the legal research engine is provided to the law firm as a fixed, monthly cost.

N     Based On The Foregoing Billing and Collection Practices As Alleged M&S Breached Its Fiduciary Duties to C-One and Pretec

67.     California Rules of Professional Conduct, Rule 3-500 states that an attorney has an affirmative duty to communicate promptly with a client regarding any significant changes in its

---

[15] This amount is included in the $155,580.31 set forth in Paragraph 65 but is set forth separately in this paragraph for the purpose of advancing an additional basis for this particular line-item's exclusion from the invoice

representation and included in the definition of "significant changes" is the requirement that attorneys provide their clients with advance notice of any changes in the amount of the fees being charged for the services being rendered. M&S failed to provided C-One with advance notice of the numerous increases in fees prior to the time when these increases were implemented.

68.     Under California Rules of Professional Conduct [Rule 4-200(A)] it a breach of an attorneys fiduciary duty to either charge or collect an unconscionable fee. Rule 4-200(B) sets forth a series of factors to be considered in determining whether or not a fee is unconscionable; not the least of which include: [a] the amount of the fee in proportion to the value of the services performed; [b] the relative sophistication of the lawyer and the client; [c] the informed consent of the client to the fee; and [d] the amount involved and the results obtained.

69.     As is wholly applicable here, M&S collected $3,759,224.72 in fees and $156,027.31 in costs  before making its motion to withdraw without any result to its client favorable or otherwise. Corollary, Memorex was able to settle its case with Lexar for $185,000 and incurred total attorney fees and costs for both the Lexar and SanDisk cases of only $374,956.52.

70.     Furthermore, of the $3,759,224.42 in fees billed and collected by M&S, C-One and Pretec is informed and believes that based on the result of a review of its invoices at least $2,395,022.40 (64%) of the attorney fees charged are questionable.

71.     Claimants contend that if the amount of the attorney fees must be in proportion to

the value of the services rendered [California Rules of Professional Conduct, Rule 4-200(B)], then

the value of M&S services, per force, be worth less than the $374,956.52 awarded to Memorex's

attorneys in the Superior Court action given that they at least obtained a "favorable result" for their

client in the underlying Lexar and SanDisk patent infringement cases.

72.    Separately, Pretec contends that it should not have been billed under its retainer

agreement with M&S for the legal services M&S performed on behalf of C-One.

73.    Separately, C-One contends that, absent a signed retainer agreement with M&S, it

is not bound by the billing arrangements set forth in the retainer agreement by and between M&S

and Pretec but rather should only be charge a reasonable fee based on quantum meruit.

**V.**
**Claimants Bases the Third Claim Against M&S**
**In Relation To The Federal Lexar and SanDisk Cases**
**On The Relevant Facts Set Forth Above**
**And The Following Attendant Arguments**

A.    Equitable Indemnity Due To Breach Of Fiduciary Duty

74.    At the time that M&S was retained to represent Pretec in the Lexar and SanDisk

patent infringement cases it was informed that, pursuant to the express terms of an Indemnity

Agreement, both C-One and Pretec were required to assign, provide and pay for "acceptable"

counsel to Memorex to undertake "the professional responsibility" of representing Memorex in

the above-referenced Lexar and SanDisk federal patent infringement cases.

75.    In its Statement of Decision of April 26, 2006 (Phase One), the Court [Memorex v

C-One (ACSC Case No RG02-118916] found that Memorex was "justified, using an objectively

reasonable standard of acceptability, in finding that (M&S) and their actions unacceptable under

the terms of the Indemnification Agreement".

76.    After receiving this unfavorable ruling, M&S was granted leave to withdraw from

the case without first assuring that the corporations (C-One and Pretec) had been able to secure

substitute counsel.

77.    Thereafter, in the "Phase Two" trial, the Court entered its Judgment and Order on

December 15, 2006 wherein C-One and Pretec were ordered to pay Memorex's attorney fees and

costs in the Lexar and SanDisk federal cases in the total amount of $374,956.52. This judgment

was based in large measure on the court's factual findings regarding M&S's wrongful acts, as set

forth above, including but not strictly limited to its failure to communicate with Memorex and the

statements attributed to M&S attorney Finley which the court concluded afforded reasonable

grounds to doubt M&S's loyalty.

78.    By reason of the foregoing, including the professional responsibility and fiduciary

duty M&S owed to both C-One and Pretec as an integral part of their attorney-client relationships,

C-One and Pretec are entitled to indemnity from M&S for all of the attorney fees and costs,

including any and all pre and postjudgment interest, awarded to Memorex in Alameda Superior

Court civil action filed in connection with C-One and Pretec's obligations under the agreement to indemnify Memorex.

## V.
## Requested Relief

**Wherefore**, and in light of all of the above, C-One requests an arbitral award of its claims as follows:

1.     With respect to C-One, given the lack of a signed retainer agreement, that M&S's attorney fees and costs be calculated and based on a Quantum Meruit basis only.

2.     With respect to Pretec, that its invoices be recalculated so as to exclude any and all legal services and costs associated with its representation of C-One in both the Lexar federal matter and the Memorex civil action.

3.     That the fees and costs invoiced to Pretec and paid in connection with the "Polaroid" matter be removed and reimbursed as being both unauthorized and outside the scope of the signed retainer agreement.

4.     That the fees and costs associated with M&S's representation of C-One in the Lexar case but invoiced to Pretec be reimbursed to Pretec and charged separately and directly to C-One.

5.     That, given the lack of a signed retainer agreement between M&S and C-One, all legal services provided to C-One in both the federal and state court actions be recalculated on the basis of quantum meruit.

6.     That the total, combined aggregate amount of those fees and costs associated with M&S's representation of C-One and Pretec in the two federal patent infringement cases (Lexar and SanDisk) be no greater than the $374,956.52 awarded to Memorex in the Alameda Superior Court case on the ground that based on the services performed and the results obtained the fees and costs collected by M&S from C-One are both excessive and unreasonable.

7.     That M&S be ordered to reimburse Claimants for the difference between the fees and costs found to be reasonable and proper under the circumstances set forth herein and the $3,759,224.42 in fees and $156,027.31 in expenses (for a total of $3,915.251.73) invoiced to Pretec which have already been paid and which M&S has already received

8.     That M&S hold harmless and indemnify both C-One and Pretec by reimbursing them for the $486,939.50 they were ordered to pay Memorex for the attorney fees and costs it incurred in litigating the Alameda County Superior Court civil action.

9.     That M&S hold harmless and indemnify both C-One and Pretec by reimbursing them for the $374,956.52 in separate attorney fees and costs awarded to Memorex in the Alameda Superior Court case which were incurred by Memorex a direct result of the judgment holding that Memorex was "justified" in its refusal to accept M&S as its appointed counsel.

10.    For interest on the amounts awarded as a result of this claim.

11.    For attorneys and costs pursuant to AAA Rules.

12..    For such other and further relief as is deemed proper.

Respectfully Submitted

Leodis C. Matthews
Attorneys for Claimants

Date: February 15, 2008

EXHIBIT B

ENDORSED

2008 FEB 27  A 10: 55

KIRI TORRE, CLERK OF THE SUPERIOR COURT
COUNTY OF SANTA CLARA, CALIFORNIA
BY A. Ilas

COURT SERVICES

1  PHILLIPS, GREENBERG & HAUSER, L.L.P.
   JERRY R. HAUSER, SBN. 111568
2  ERIK C. VAN HESPEN, SBN. 214774
   Four Embarcadero Center, 39th Floor
3  San Francisco, California 94111
   Telephone:   (415) 981-7777
4  Facsimile:   (415) 398-5786

5  Attorneys for Plaintiff,
   MOUNT & STOELKER, A PROFESSIONAL CORPORATION
6

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                IN AND FOR THE COUNTY OF SANTA CLARA

10

11  MOUNT & STOELKER, A PROFESSIONAL        CASE NO.: 108 CV 105975
    CORPORATION,
12
                Plaintiffs,               NOTICE OF MOTION AND MOTION
13                                        FOR PRELIMINARY INJUNCTION
         -v-
14                                        Date:    March 25, 2008
    C-ONE TECHNOLOGY, A TAIWANESE         Time:    9:00 am
15  CORPORATION; PRETEC ELECTRONICS       Dept.:   5
    CORPORATION, A CALIFORNIA
16  CORPORATION; INTERNATIONAL
    CENTER FOR DISPUTE RESOLUTION, A                 BY FAX
17  DIVISION OF THE AMERICAN
    ARBITRATION ASSOCIATION; AND
18  DOES 1 through 50 inclusive,

19              Defendants.
                                    /
20

21       To all parties and their attorneys of record:

22       PLEASE TAKE NOTICE that on March 25, 2008 at 9 a.m., or as soon thereafter as the matter

23  can be heard in Department 5 of this court, located at 191 North First Street, San Jose, California,

24  Plaintiff Mount & Stoelker, A Professional Corporation ("Mount & Stoelker") will and does move

25  the Court for an order enjoining defendants C-One Technology ("C-One"), Pretec Electronics

26  Corporation ("Pretec") and the International Center for Dispute Resolution, a division of the

27  American Arbitration Association ("ICDR") and their agents and employees and any other person or

28  entity acting on their behalf from pursuing or taking any action in an arbitration proceeding initiated

1

1  by C-One against M&S before the ICDR, Number 50 194 T 00006 08 (the "C-One Arbitration") and

2  that said arbitration be stayed during the pendency of this action.

3  This motion is made on the grounds that: (1) there is not contractual agreement between

4  Mount & Stoelker, on the one hand,  and C-One and Pretec, on the other hand, requiring that the

5  claims set forth in the C-One arbitration proceeding be subject to arbitration; (2) C-One is seeking to

6  enforce an arbitration agreement in which it is not a signatory; (3) C-One and Pretec refused to

7  dismiss the arbitration; (4) C-One, Pretec and the ICDR assert that the C-One Arbitration will go

8  forward even if Mount & Stoelker refuses to participate on the contention that they have the right to

9  proceed with the arbitration even if Mount & Stoelker does not participate in said arbitration; (5) C-

10  One, Pretec and the ICDR assert that the ICDR has right to determine its jurisdiction under

11  international law governing arbitrations; (6) there is a likelihood of success on the merits since there

12  is no dispute that C-One is not signatory to the fee agreement between Mount & Stoelker and Pretec

13  which allegedly contains arbitration agreement; (7) in the fee agreement between Mount & Stoelker

14  and Pretec, Pretec elected to exclude the arbitration; and (8) unless C-One, Pretec and the ICDR are

15  restrained by court order from proceeding with the C-One Arbitration pending this action, Mount &

16  Stoelker will suffer great and irreparable injury and will be compelled to submit to arbitration despite

17  the fact that no contract exists for said arbitration.

18  This application is based upon the Declaration of Daniel Mount, the Declaration of Jerry R.

19  Hauser, the attached Memorandum of Points and Authorities, the Complaint and First Amended

20  Complaint filed in this action, and on such oral and documented evidence as may be presented at the

21  hearing on this motion.

22  DATE:   February 26, 2008                    PHILLIPS, GREENBERG & HAUSER, L.L.P.

23

24                                              By: _____

25                                                   JERRY R. HAUSER

26

27

28

**PROOF OF SERVICE**

*C-One v. Mount & Stoelker*

The undersigned declares:  I am a resident of the United States and am employed in the City and County of San Francisco, State of California; I am over the age of eighteen years and not a party to the within action; my business address is Phillips, Greenberg & Hauser, LLP, Four Embarcadero Center, 39th Floor, San Francisco, California 94111.  On the date indicated below, I served the following documents:

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION;**

**DECLARATION OF DANIEL S. MOUNT IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION; and**

**DECLARATION OF JERRY R. HAUSER IN SUPPORT IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

by placing a true copy thereof enclosed in a sealed envelope and served in the manner described below to the interested parties herein and addressed to:

Leodis Matthews
Matthews & Partners
4322 Wilshire Blvd., Suite 200
Los Angeles, CA 95110
Leesq@aol.com

Andrea H. Bugbee
ICDR Senior Case Manager
International Centre for Dispute Resolution
1633 Broadway
New York NY 10019-6708

X    **FEDERAL EXPRESS – OVERNIGHT DELIVERY:**  I caused such envelope to be deposited with the Federal Express Office prior to the cut-off time for next day delivery with a shipping label properly filled out with delivery to be made to the addressee designated.

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.  Executed on February 27, 2008 at San Francisco, California.

_Valerie Vitullo_
Valerie Vitullo

# EXHIBIT C

ENDORSED

2008 FEB 27  A 10: 55

KIRI TORRE, CLERK OF THE SUPERIOR COURT
SANTA CLARA, CALIFORNIA
BY: _____

COURT SERVICES

1   PHILLIPS, GREENBERG & HAUSER, L.L.P.
    JERRY R. HAUSER, SBN. 111568
2   ERIK C. VAN HESPEN, SBN. 214774
    Four Embarcadero Center, 39th Floor
3   San Francisco, California 94111
    Telephone:    (415) 981-7777
4   Facsimile:    (415) 398-5786

5   Attorneys for Plaintiff,
    MOUNT & STOELKER, A PROFESSIONAL CORPORATION
6

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  IN AND FOR THE COUNTY OF SANTA CLARA

10

11  MOUNT & STOELKER, A PROFESSIONAL        CASE NO.: 108 CV 105975
    CORPORATION,
12
                   Plaintiffs,             MEMORANDUM OF POINTS AND
13                                         AUTHORITIES IN SUPPORT OF
         -v-                               MOTION FOR PRELIMINARY
14                                         INJUNCTION
    C-ONE TECHNOLOGY, A TAIWANESE
15  CORPORATION; PRETEC ELECTRONICS        Date:    March 25, 2008
    CORPORATION, A CALIFORNIA              Time:    9:00 am
16  CORPORATION; INTERNATIONAL             Dept.:   5
    CENTER FOR DISPUTE RESOLUTION, A
17  DIVISION OF THE AMERICAN                        BY FAX
    ARBITRATION ASSOCIATION; AND
18  DOES 1 through 50 inclusive,

19                 Defendants.

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Plaintiff Mount & Stoelker, A Professional Corporation ("Mount & Stoelker") is a law firm that provided legal services to Defendant C-One Technology, A Taiwanese Corporation, ("C-One") in a federal patent case and a state law declaratory relief and breach of contract action. In addition to representing C-One in the above litigation, Mount & Stoelker also represented Defendant Pretec Electronics Corporation ("Pretec"), a California Corporation that dissolved in December of 2006, in the same litigation and a second federal patent case. Pretec was a subsidiary of C-One and handled the distribution of C-One's products in the United States. There is no dispute that Mount & Stoelker ceased representing C-One and Pretec in May/June of 2006 in the state court action and one of the federal actions. There is a dispute with regard to whether Mount & Stoelker continued to represent Pretec in the other federal action after May/June of 2006.

A dispute has arisen between Mount & Stoelker, C-One and Pretec with regard to the legal services that Mount & Stoelker performed. This dispute involves billing practices and claims that Mount & Stoelker was negligent in performing legal services. On January 11, 2008, C-One initiated an arbitration proceeding with the American Arbitration Association ("AAA") with regard to the above-referenced disputes, despite the fact that C-One asserts that there is no contract or retainer agreement between Mount & Stoelker and C-One for the performance of legal services. Initially, Pretec was not a party to the C-One Arbitration. Despite asserting no contract exists, C-One claimed that it had the right to arbitrate these disputes because the fee agreements between Mount & Stoelker and Pretec do contain arbitration clauses. After Mount & Stoelker objected to the C-One Arbitration on the ground that no arbitration agreement exists, C-One filed and amended arbitration claim which named Pretec, a dissolved corporation, as a claimant.[1]

C-One and Pretec do not have a right to arbitrate the existing dispute with Mount & Stoelker because there is no contractual agreement between the parties for arbitration. In the Mount & Stoelker/Pretec fee agreements, Pretec declined to include the arbitration clause in the contract, which reads as follows:

---

[1] Mount & Stoelker, C-One and Pretec have agreed to stay the C-One Arbitration until April 1, 2008. If this court does not issue a preliminary injunction the C-One Arbitration will move forward.

1

1        If a dispute arises between Mount & Stoelker and you [Pretec]
     regarding any aspect of this agreement or its implementation, including
2    but not limited to the following: (a) Mount & Stoelker's claim for
     attorney's fees or costs under this agreement; or (b) any claim you may
3    make for unsatisfactory performance including the claim of legal
     malpractice; you agree to submit the matter to binding arbitration
4    before the American Arbitration Association in Santa Clara County.

5        BE ADVISED THAT, BY AGREEING TO THIS PROVISION,
     BOTH OF US ARE WAIVING ANY RIGHT ONE MAY HAVE TO
6    A TRIAL BY JURY. IF YOU CONSENT TO SUBMIT YOUR
     CLAIMS TO BINDING ARBITRATION, PLEASE INDICATE BY
7    PLACING YOUR INITIALS IN THE SPACE PROVIDED
     (Exhibits A & B to the First Amended Verified Complaint, hereinafter
8    "VC")

9        There is no dispute or question that Pretec did not place its initials in the space provided for

10   arbitration. Therefore, the arbitration clause by its term has been excluded from the Mount &

11   Stoelker/Pretec fee agreements. Simply put, there is no contractual agreement between Mount &

12   Stoelker, on the one hand, and C-One and Pretec to arbitrate these claims and therefore C-One and

13   Pretec have no right to initiate the arbitration.

14       In addition, AAA has designated the arbitration as an international arbitration to be governed

15   by international law and has assigned the matter to the International Center for Dispute Resolution

16   ("ICDR") in New York. This has taken place despite the fact that the arbitration clause in the Pretec

17   fee agreements, assuming it is included, states that the arbitration is to take place in Santa Clara

18   County. Further, the ICDR asserts that under international law, the arbitrator will decide its own

19   jurisdiction:

20       With respect to the jurisdiction of the matter, the Parties are hereby
     reminded that pursuant to International Article 15 Sec. 1, the Tribunal
21   shall shave the power to rule on its own jurisdiction, including any
     objections with respect to the existence, scope or validity of the
22   arbitration agreement. Additionally, pursuant to Article 15 Sec. 2, the
     Tribunal shall have the power to determine the existence or validity of a
23   contract of which an arbitration clause forms a part.

24       Lastly, unless the ICDR has the agreement of the Parties, or receives a
     Court Order issuing a Stay of the Arbitration, we must proceed with the
25   administration of the matter. (Letter from ICDR. Hauser Dec., Exhibit D)

26       California law is clear, only the court can determine whether a non-signatory to an arbitration

27   agreement can enforce the arbitration provisions even if the parties to the agreement give the arbitrator

28   the power to determine jurisdiction. California law is also clear that the court must enjoin the arbitration

2

1    from going forward until it determines whether an arbitration clause exists and whether a non-signatory

2    can enforce it.

3                     **II.**      **FACTUAL BACKGROUND**

4        On or about April 21, 2001, Lexar Media, Inc. ("Lexar") filed a patent infringement complaint

5    in the United States District Court, Northern District of California, Case Number 00-4770 (MJJ)

6    naming Pretec and Memtec Products, Inc. ("Memorex") as defendants. (VC, Exhibit C, ¶ 4) Lexar

7    alleged that Pretec distributed and Memorex sold flash memory controller units manufactured by C-

8    One that infringed upon five of Lexar's patents. C-One was not named as a defendant in the original

9    complaint. *Id.* On or about July 30, 2001, C-One and Pretec entered into a written indemnification

10    agreement with Memorex whereby C-One and Pretec agreed to fully defend, indemnify and hold

11    Memorex harmless from all claims raised by Lexar as well as any other third party claims in

12    connection with products sold by Memorex that it received from C-One and/or Pretec. (VC, Exhibit

13    C, ¶ 5)

14        On or about October 20, 2001, SanDisk Corporation ("SanDisk") filed a patent infringement

15    complaint in the United States District Court, Northern District of California, Case Number 01-4063

16    (VRW) against Pretec and Memorex alleging that the flash memory technology products distributed

17    by Pretec and Memorex infringed on SanDisk patents (the "SanDisk action"). (VC, Exhibit C, ¶ 6)

18    On or about October 7, 2002, Mount & Stoelker and Pretec entered into attorney-client fee agreement

19    wherein Mount & Stoelker agreed to represent Pretec in the Lexar action. Pretec did not initial the

20    arbitration clause electing to have all disputes submitted to arbitration in the fee agreement. (VC,

21    Exhibit A; Mount Dec., ¶ 2 & 4) On the same date, Mount & Stoelker and Pretec also entered into an

22    attorney-client fee agreement with regard to the SanDisk action. (VC, Exhibit B, Mount Dec. ¶ 2 &

23    4) Again, Pretec did not initial the arbitration clause thereby excluding the right to arbitration from

24    the fee agreement. Id. C-One was not a party in the SanDisk action. (Mount Dec., ¶ 2)

25        On or about May 8, 2003, C-One was served with a summons and amended complaint in the

26    Lexar action in which C-One was named as a defendant. (VC, Exhibit C, ¶ 12) Mount & Stoelker

27    agreed to appear as C-One's counsel in the Lexar action. (Mount Dec., ¶ 5) Mount & Stoelker did not

28    execute a written fee agreement with C-One. *Id.*

1   On or about September 26, 2003, Memorex filed a complaint for declaratory relief, breach of

2 contract, and injunctive relief against C-One and Pretec in the Superior Court of California, County

3 of Alameda, Action No. RG03118916 (the "Memorex Action"). (VC, Exhibit C, ¶ 8) Mount &

4 Stoelker agreed to represent both C-One and Pretec in the Memorex action, but did not enter into a

5 separate fee agreement for such services. (Mount Dec., ¶ 6) Mount & Stoelker continued to represent

6 C-One and Pretec in the Lexar and Memorex actions until May/June of 2006 when Mount &

7 Stoelker's motion to withdraw as counsel was granted in both proceedings. (Mount Dec., ¶ 7) Even

8 though the court denied Mount & Stoelker's motion to withdraw as counsel for Pretec in the SanDisk

9 Action, Pretec, by its actions Pretec terminated the attorney-client relationship with Mount &

10 Stoelker in May/June of 2006. (VC, ¶ 8) All invoices for legal services by Mount & Stoelker,

11 including services rendered to C-One, were sent to Pretec. (Mount Dec., ¶ 6)  The payments for all

12 such services were made by Pretec. (Mount Dec., ¶ 6)

13   **III.  THE C-ONE ARBITRATION**

14   On or about January 11, 2008, C-One initiated the C-One Arbitration with the American

15 Arbitration Association. (Hauser Dec., Exhibit A) The exhibits containing the alleged arbitration

16 clause were not provided to Mount & Stoelker until January 31, 2008. (Hauser Dec., ¶ 2)  The

17 contracts that allegedly contained the arbitration clause were the fee agreements that Mount &

18 Stoelker entered into with Pretec with regard to the Lexar and SanDisk actions. *Id.*

19   In the original Statement of Claim, C-One identified itself as the parent of Pretec and asserts

20 that Pretec has dissolved. (VC, Exhibit C to the original complaint, ¶ 3) Yet, there were no

21 allegations that C-One is the successor in interest to Pretec, that the assets of Pretec were distributed

22 to the shareholders or that the corporate structure of Pretec should be disregarded. For that matter

23 Pretec is barred from transferring any of its assets to C-One. (Mount Dec., Exhibit B) C-One alleges

24 that "no retainer agreement was ever entered into by and between C-One and Mount & Stoelker

25 regarding this [Lexar] representation." (VC, Exhhibit C, ¶ 12) In the First Amended Statement of

26 Claim, C-One also made the following allegations:

27     29.  The written fee agreements between Pretec and Mount &
      Stoelker dealt solely with the two federal actions (Lexar and SanDisk)
28      which involved federal issues and questions of law relating to

intellectual property and patent infringement.

30.    While the fee agreement does refer to any other matters in which we might represent you", it is C-One's position that (1) **it was not a party to this agreement and (2) at the time this written agreement was executed it was not contemplated by the parties that it would become embroiled in this civil action which, for reasons set forth below, was a direct and proximate result of Mount & Stoelker's legal advice and its failure to communicate with Memorex."** (VC, Exhibit C, ¶ 29 & 30)

Mount & Stoelker objected to the C-One Arbitration from going forward, but C-One initially refused to stay said proceeding to allow this court determine jurisdiction. (Hauser Dec., Exhibits B & C) Further, ICDR maintained that: the arbitrator will determine its own jurisdiction; the arbitration will go forward even if Mount & Stoelker does not participate; and the arbitration will be governed by international law. ICDR also gave the parties until February 28, 2008, to select an arbitrator from a list that includes arbitrators throughout California. (Hauser Dec., Exhibits B, C, & D)

After receipt of Mount & Stoelker's objections, C-One filed a First Amended Statement of Claim in the C-One Arbitration and in the Amended Statement of Claim, named Pretec as a complainant. (Hauser Dec., ¶ 9) The same attorney, Leodis Matthews, who is representing C-One in the arbitration is also representing Pretec. (VC, Exhibit C) In the Amended Statement of Claim, C-One still maintains that it is not a party to the Pretec fee agreements and is not bound by said agreements. In addition, C-One asserts that Pretec is a complete, separate and distinct legal entity from C-One:

3.    Pretec was at all times herein relevant a Calfornia Corporation which had its principal place of businesss in the City of Fremont, California and distributed by C-One's technological products in the United States, which included certain and specific flash memory devices. Pretec is a wholly separate and distinct legal entity from C-One and have separate business operations as well as separate personnel, separate business facilities and operations. (VC, Exhibit C, ¶ 3)

In the First Amended Statement of Claim in the C-One Arbitration, Pretec is only named as a party to the first and third claims, which relate to the Memorex Action. (VC, Exhibit C) C-One is the only party to the second claim with regard to billing practices in the Lexar and SanDisk litigation. (VC, Exhibit C)

After the filing of the First Amended Claim, Mount & Stoelker, C-One and Pretec agreed to stay the arbitration proceedings up and through April 1, 2008, in order to allow Mount & Stoelker to

1  file this motion for a preliminary injunction. (Hauser Dec., ¶ 11) If the court does not issue a

2  preliminary injunction, then this stay will be lifted and the C-One Arbitration will go forward.

3  (Hauser Dec., ¶ 11) In entering into the above stipulation, C-One reserved all defenses, inliding the

4  claim that this court does not have jurisdiction over it and has no right and power or authority to

5  enjoin it from moving forward with the C-One arbitration. (Hauser Dec., ¶ 11)

## IV.     LEGAL ARGUMENT

### A.     The Arbitration Proceeding Must Be Enjoined Pending This Court's Determination of Jurisdiction

9  Under *Code of Civil Procedure* § 527(a), the court has the power to grant a preliminary

10  injunction before judgment upon a verified complaint or affidavits that satisfactorily show sufficient

11  grounds exist. The grounds for an injunction are set forth in *Code of Civil Procedure* § 526(a). The

12  primary grounds are: (1) the plaintiff has shown a likelihood of success and it is entitled to relief

13  demanded; and (2) in balancing the equities the plaintiff would be irreparably harmed if the conduct

14  is not enjoined while on the other hand the prejudice of the defendant would be minimal. In applying

15  this criteria, the California courts have consistently held that an injunction is an appropriate procedure

16  to prevent an arbitration from going forward in order to allow the court to make a determination on

17  whether or not the controversy is subject to arbitration.

18  In *Pacific Indemnity Company v. Superior Court*, 246 Cal. App. 2d 63 (1966), the plaintiff

19  insurance company sought an injunction against the parties who initiated the arbitration and the

20  arbitrator, The American Arbitration Association ("AAA"), to prevent an arbitration from going

21  forward on the ground that the arbitration was not timely. The trial court denied the injunction but the

22  Court of Appeal overturned the trial court's order and remanded the matter requiring the issuance of a

23  preliminary injunction enjoining arbitration proceedings. In making such ruling the court held:

24  Under the undisputed facts of this case and the legal authorities discussed above, it appears that the real party's right to demand
25  arbitration was barred by Section 11580.2(h) in that it became the clear legal duty of the court to enjoin the arbitration proceedings. Since
26  under the circumstances the discretion of the trial court cannot be legally exercised in only one way, it was an abuse of discretion for the
27  court to deny a preliminary injunction and make the court order which it did. *Id*. at 72.

28

1    In this case, C-One, Pretec and AAA/ICDR are treating arbitration as self-executing, i.e. the

2  arbitration can go forward without a court order even if Mount & Stoelker refuses to appear.

3  Therefore, in order to prevent a default from being entered, Mount & Stoelker would have to

4  participate in the arbitration. Yet, if Mount & Stoelker participates in the arbitration it would waive

5  its right to have a court determine whether or not a contract exists for arbitration since such matters

6  challenging the arbitration itself must be raised in court before the arbitration. "(A) party who

7  questions the validity of the arbitration agreement may not proceed with the arbitration and preserve

8  the issue for later consideration by the court after being unsuccessful in the arbitration." *Bayscene*

9  *Residence Negotiators v. Bayscene Mobile Home Park*, 15 Cal. App. 4th 119, 129 (1993). See also

10  *Alternative Systems, Inc. v. Carey*, 67 Cal. App. 4th 1034, 1040-1041 (1998). If the arbitration is not

11  enjoined pending the court's resolution of C-One and Pretec's right to arbitrate, Mount & Stoelker

12  would be irreparably injured by being forced to arbitrate the claim and waiver of its right to have

13  these issues determined by the court.

14    It is settled law that who decides arbitrability, the court or the arbitrator, depends on what the

15  parties agreed in their contract. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 94 (1995);

16  *Freeman v. State Farm Mut. Auto. Ins. Co.*, 14 Cal.3d 473, 480 (1975). Yet, whether a non-signatory

17  to an arbitration agreement may enforce the arbitration provisions is one that must be decided by the

18  court on the basis of the facts found prior to any arbitration going forward regardless of what the

19  parties to the contract agreed to. *American Builders v. William Au-Yang*, 226 Cal.App. 3d 170, 178

20  (1990); *Valley Casework, Inc. v. Comfort Construction*, 76 Cal. App. 4th 1013, 1019 (1999). It is

21  possible that under certain circumstances a non-signatory to the contract can enforce an arbitration

22  clause based on the relationship of the parties, but only the court and not the arbitrator can make such

23  determination. *American Builder, supra*, 226 Cal. App. 3d at 179-180.

24    Therefore, notwithstanding an arbitrator's broad authority to resolve
25  questions presented by a controversy [including jurisdiction], an
    arbitrator has no power to determine the rights and obligations of one
    who is not a party to the arbitration agreement. ( *Unimart, supra, 1*
26  *Cal.App.3d at p. 1045*.) **The question of whether a nonsignatory is a**
    **party to an arbitration agreement is one for the trial court in the**
27  **first instance.** *Id at 179.* Emphases added.

28

1    In *Valley Casework, Inc., supra,* 76 Cal. App. 4th 1013, the defendant contractor and its insurer

2  jointly sought arbitration with the plaintiff subcontractor under the arbitration clause contained in the

3  subcontract before the American Arbitration Association. The subcontractor then brought an action

4  against the contractor and its insurer for declaratory and injunctive relief seeking to enjoin defendants

5  from conducting the arbitration. The trial court denied the subcontractor's request for an injunction

6  and the arbitration proceeded uncontested, resulting in an award against the subcontractor. The Court

7  of Appeal reversed the judgment and held that the trial court erred in denying the subcontractor's

8  request to enjoin the general contractor and its insurer from jointly seeking arbitration with the

9  subcontractor under the arbitration clause because the insurer, as a nonparty to the arbitration

10  agreement, should not have been allowed to enforce it. *Id.* at 1016-1017.

11    **B.    No Arbitration Agreement Exists Between Mount & Stoelker and C-One and**
     **Pretec**
12

13    The existence of an agreement to arbitrate is a condition precedent to arbitration. Therefore,

14  the lack of agreement for arbitration is grounds to refuse to arbitrate. "(An) arbitration is a matter of

15  contract and a party cannot be required to submit to arbitration any dispute which he has not agreed

16  so to submit." *The United States Steelworkers of America v. Warrior and Gulf Navigation Company,*

17  363 US 574, 582 (1960); *Victoria v. Superior Court,* 40 Cal. 3d 734, 738-739 (1985)

18    In this case, C-One is seeking arbitration pursuant to the arbitration clause in the Mount &

19  Stoelker/Pretec fee agreements. Yet, as discussed previously, C-One is not a party to these fee

20  agreements. Incredibly, C-One claims that it is not bound by this fee agreement and that no contract

21  exists between Mount & Stoelker and C-One for the legal services at issue. C-One expressly states in

22  its Statement of Claim that the Pretec fee agreements are not applicable to it.

23    More importantly, there is no arbitration agreement between Mount & Stoelker and Pretec,

24  because Pretec specifically excluded the arbitration clause from the fee agreement. The fee agreement

25  was set up to provide client, in this case Pretec, with the right to chose to include an arbitration clause

26  in the fee agreement. The language of the document can not be clearer, plus it was in bold and a

27  larger font size as follows: "**IF YOU CONSENT TO SUBMIT YOUR CLAIMS TO BINDING**

28  **ARBITRATION, PLEASE INDICATE BY PLACING YOUR INITIALS IN THE SPACE**

1  **PROVIDED.**" Mount & Stoelker initialed this arbitration clause, but Pretec did not do so in both fee

2  agreements. Therefore, as a matter of law, no arbitration clause exists in the Pretec Fee Agreements.

3      **C.**    **Mount & Stoelker Will Be Irreparably Injured If The Arbitration Is Not Enjoined And Have No Legal Remedy**

4

5      In *American Builders* and *Valley Casework* the court found that the plaintiff had no legal

6  remedy and would be irreparably injured if the arbitrator makes the factual findings with regard to

7  whether a non-signatory to the arbitration agreement can enforce it because the courts ability to

8  review these factual findings are limited. "Thus, if Builder's were to bring a motion to vacate the

9  award asserting the arbitrator had exceeded his powers in ordering joinder due to insufficient

10  evidence to support a finding that Bonita was the Au-Yangs' principal, the trial court, constrained by

11  the limited grounds set forth in *section 1286.2*, would decline to review the arbitrator's factual

12  finding". *American Builders*, *supra*, 226 Cal. App. 3d 179-180. This same rationale should apply to

13  the determination of whether arbitration exists between Mount & Stoelker and Pretec.

14      In addition, the arbitration clause in the Pretec fee agreements, assuming it was included in the

15  contract, state that the Arbitration is to take place in Santa Clara County before the American

16  Arbitration Association. Yet, the matter has been assigned to the ICDR in New York, who is treating

17  this as an international arbitration governed by international law. The ICDR has also demanded that

18  the parties select arbitrators outside of Santa Clara County.

19      **D.**    **Mount & Stoelker Has Established A Reasonable Possibility It Will Prevail**

20      "In deciding whether to issue a preliminary injunction, a [trial] court must weigh two

21  'interrelated' factors: (1) the likelihood that the moving party will ultimately prevail on the merits and

22  (2) the relative interim harm to the parties from the issuance or nonissuance of the injunction.

23  [Citation.]" *Butt v. State of California*, 4 Cal.4th 668, 677-678 (1992). "A trial court may not grant a

24  preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that

25  the plaintiff would ultimately prevail on the merits of the claim. [Citation.]" *Id* at 678.

26      Only the court and not the arbitrator has jurisdiction to determine if a non-signatory to the

27  contract can enforce the arbitration clause or if an agreement to arbitrate even exists. Therefore, a

28  trial on this issue must take place. There is no dispute that C-One is not a party to the Pretec Fee

1   Agreements and C-One asserts that the Pretec Fee Agreements do not control its relationship with

2   Mount & Stoelker. These facts are sufficient in and of themselves to establish a reasonable possibility

3   that Mount & Stoelker will prevail. But there is more: Pretec excluded the arbitration clause from the

4   fee agreements so no arbitration agreement exists; all invoices for legal services were sent to Pretec

5   and it was Pretec and not C-One that paid said invoices, yet only C-One is seeking relief or damages

6   based on these invoices; and all claims of C-One and Pretec that they have asserted in the C-One

7   Arbitration are barred by the one year limitations period of *Code of Civil Procedure* § 340.6 since

8   Mount & Stoelker ceased representing C-One and Pretec in May/June of 2006. The harm to C-One

9   and Pretec is negligible, while the harm to Mount & Stoelker is substantial if the court does not issue

10  the injunction.

### V.    CONCLUSION

11

12          For the reasons set forth above, Mount & Stoelker respectfully requests that the court issue a

13  Preliminary injunction enjoining C-One, Pretec and the ICDR from going forward with the C-One

14  Arbitration until this action has been concluded.

15  DATE:   February 26, 2008                     PHILLIPS, GREENBERG & HAUSER, L.L.P.

16

17                                               By:

18                                                     JERRY R. HAUSER

19

20

21

22

23

24

25

26

27

28

# EXHIBIT D

From: Matthews & Partners          323 930 5693          03/11/...6 12:04    #/20 P.002/077

1    Leodis C. Matthews [SBN 109064]
     MATTHEWS & PARTNERS
2    SUITE 200
     4322 WILSHIRE BOULEVARD
3    LOS ANGELES, CALIFORNIA 90010-3792
     TELEPHONE: 323.930.5690
4    FACSIMILE: 323.930.5693

5    Attorneys For:  Defendant
              PRETEC ELECTRICS CORP.

6

7

8         IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9         IN AND FOR THE COUNTY OF SANTA CLARA

10             DOWNTOWN (SAN JOSE) DIVISION

11

12   MOUNT & STOELKER, a Professional       CASE NUMBER: 108 CV 105975
     Corporation,
13                                          Pretec Electronics Corp.'s
                                            Opposition To
14                         Plaintiff        Mount & Stoelker's
                                            Motion For
15            - Vs -                        Preliminary Injunction
                                            ********
16                                          Supporting Declaration
17                                          *******
18   C-ONE TECHNOLOGY, a Taiwanese          Request For Judicial Notice
     Corporation, PRETEC ELECTRONICS        [Filed Concurrently Herewith]
19   CORPORATION; a California
     Corporation; INTERNATIONAL CENTRE      ***********
20   FOR DISPUTE RESOLUTION, a Division
     of the American Arbitration
21   Association (erroneously sued as
     "International Center for Dispute      Date: March 25, 2000
22   Resolution"); and DOES 1 through 50,   Time:        9:00 AM
     inclusive.                             Dept: 5
23
                        Defendants
24

25

26

27

28   PRETEC ELECTRONIC'S OPPOSITION TO M&S'S MOTION FOR PRELIMINARY INJUNCTION
     MOUNT & STOELKER -V- C-ONE TECHNOLOGIES
     Case No 108 CV 105975

                                                      BY FAX

                                                                            065

1    Leodis C. Matthews [SBN 109064]
       MATTHEWS & PARTNERS
2          SUITE 200
      4322 WILSHIRE BOULEVARD
3    LOS ANGELES, CALIFORNIA 90010-3792
       TELEPHONE: 323.930.5690
4       FACSIMILE: 323.930.5693

5   Attorneys For:  Defendant
       PRETEC ELECTRICS CORP.

6

7

8      IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9        IN AND FOR THE COUNTY OF SANTA CLARA

10         DOWNTOWN (SAN JOSE) DIVISION

11

12  MOUNT & STOELKER, a Professional    CASE NUMBER: 108 CV 105975
    Corporation,
13                    Pretec Electronics Corp.'s
                        Opposition To
14             Plaintiff      Mount & Stoelker's
                        Motion For
15                    Preliminary Injunction
       - Vs -
16                    ********
                 Supporting Declaration
17
                    *******
18  C-ONE TECHNOLOGY, a Taiwanese   Request For Judicial Notice
    Corporation, PRETEC ELECTRONICS    [Filed Concurrently Herewith]
19  CORPORATION; a California
    Corporation; INTERNATIONAL CENTRE     *************
20  FOR DISPUTE RESOLUTION, a Division
    of the American Arbitration
21  Association (erroneously sued as
    "International Center for Dispute
22  Resolution"); and DOES 1 through 50,   Date: March 25, 2008
    inclusive.                    Time:     9:00 AM
23                      Dept: 5
              Defendants
24

25

26

27

28  PRETEC ELECTRONIC'S OPPOSITION TO M&S'S MOTION FOR PRELIMINARY INJUNCTION
    MOUNT & STOELKER -V- C-ONE TECHNOLOGIES
    Case No 108 CV 105975              066

1    Comes Now, PRETEC ELECTRONICS CORP.["PRETEC"], in its own name and solely

2    on its own behalf, and submits the following Opposition To The Motion For Preliminary

3    Injunction.

4                           INTRODUCTORY FACTS

5         On October 7, 2002 MOUNT & STOELKER, a Professional Law Corporation ["M&S"],

6    prepared two (2) retention letters setting forth the terms and conditions under which it would

7    agree to undertake the defense of PRETEC in two separate patent infringement cases in

8    federal district court  [Lexar Media (N. D. of California Case No 00-4770 MJJ)] and

9    SanDisk Media [(N. D. of California Case No 01-4063 VRW)]. Both of these offers

10   contained the following express terms relating to the "Arbitration of Disputes":

11        "If a dispute arises between Mount and Stoelker and you regarding any aspect of
         this agreement or its implementation, including but not limited to the following: (a)
12        Mount and Stoelker's claim for attorney fees and costs under this agreement; or (b)
         any claim you may make for unsatisfactory performance, including a claim for legal
13        malpractice; you agree to submit the matter to binding arbitration before the
         Ameican Arbitration Association [Ref Exhibits D-1 & D-2 (Para. 10:4-5)]"
14

15   Daniel S. Mount, by affixing his initials to this document, agreed to Arbitration and by this

16   act also agreed on behalf of M&S to arbitrate the dispute.  On October  10, 2002, after

17   changing the hourly rate for senior attorneys from the requested "$450 per hour" to $400",

18   Gordon Yu dated and signed this document on behalf of PRETEC. Directly below the

19   sentence which reads: "The foregoing accurately reflects our agreement [Pg. 5]". Mr. Yu did

20   not place his initials either on the line provided there for under the line provided for his

21   signature [Ref. Page 5] or on the line provided for his initials above the line containing Mr.

22   Mount's initials [Ref. Pg. 4].

23        In is undisputed that M&S provided legal services to PRETEC in both the Lexar

24   Media and ScanDisk Media federal patent infringement cases.  It is equally  true that M&S

25   also provided legal services to Memorex pursuant to the express terms of an indemnification

26   agreement, by and between, *inter alia*,  PRETEC and Memorex, in the ScanDisk Media

27

28

1  litigation (Memorex declined M&S's services in the Lexar Media case electing instead to
2  retain the firm of Keker & VanNest, LLP).

3  　　　And, while it is also undisputed that M&S represented PRETEC in the action filed in
4  Alameda Superior Court by Memorex (for breach of the indemnification agreement) without
5  entering into a separate fee arrangement for such services, what M&S did not mention in its
6  moving papers is the fact that the Phase 1 judgment in this case was entered against, *inter*
7  *alia*, PRETEC based on the actions and inactions of M&S during the course of its
8  representation of Memorex pursuant to the aforementioned indemnification agreement [Ref.
9  Exhibit D-3].

10  　　　THE FACTUAL BASIS OF M&S MOTION AS IT RELATES TO PRETEC

11  　　　It appears that M&S's contention with respect to PRETEC is that PRETEC does "not
12  have the right to arbitrate the existing dispute with Mount & Stoelker because there is no
13  contractual agreement between the parties for arbitration". It predicates this argument on the
14  basis that although PRETEC executed the agreement with the understanding that "The
15  foregoing accurately reflects our agreement" it did not also initial the agreement on the
16  appropriate line.

17  　　　THE FACTUAL BASIS OF PRETEC'S OPPOSITION THEREO

18  　　　In its moving papers, M&S makes reference **only to** the underlying arbitration demand
19  filed with the AAA on January 11, 2008 (and for which a filing fee of $4,250.00 was
20  tendered in good faith) [M&S Exhibit A to JRH Dec.; LCM Dec.]. What M&S conveniently
21  fails to mention its moving papers is that, prior to this January 11, 2008 filing, a prior demand
22  had been previously filed with the AAA on June 28, 2007 [Case No. 50-194-T-00227] styled
23  "*C-One Technology Corp. vs. Mount & Stoelker*" [Ref. Exhibit D-4] to which M&S did not
24  lodge any objection thereto on any ground whatsoever[1].

25

26  　　　[1] The filing fee for this first claim was $8,000 - $4,000 of which was refunded due to the stipulated
27  withdrawal [Ref. Exhibit D-4]. Accordingly, a total of $8,250 has been paid to the AAA by Claimant based on
   M&S's agreement to arbitrate any disputes arising out of its retainer agreements with PRETEC [Ref. Exhibits

28  　　　PRETEC ELECTRONIC'S OPPOSITION TO M&S'S MOTION FOR PRELIMINARY INJUNCTION
   MOUNT & STOELKER -V- C-ONE TECHNOLOGIES
   Case No 108 CV 105975

1    In point of fact, Mr. Mount personally participated in an administrative conference

2    call directly relating to this first AAA claim on behalf of M&S on July 6, 2007 during which

3    the parties, in private caucus, agreed to withdraw the matter [Ref. Exhibit D- 5] without

4    prejudice for the purpose of pursing potential settlement of all issues. Moreover, in

5    connection with this withdrawal of the AAA claim, Mr. Mount executed a stipulation on

6    behalf of M&S, which was also "binding upon their agents and assigns", whereby it waived

7    "any defenses or bar to this action based upon the period within which this matter is

8    dismissed without prejudice [Ref. Exhibit D-6].

9    The bottom line of PRETEC's factual opposition to this motion is that M&S drafted

10   the retainer agreements and agreed to arbitrate any and all disputes arising thereunder before

11   the AAA. PRETEC accepted the terms of this agreement upon its execution of it on October

12   10, 2002 and further evidenced its assent to the arbitration clause by dutifully filing its claims

13   against M&S under said agreement with the AAA.

14                              ARGUMENT

15   **A.    The Retainer Agreements**

16   "Arbitration is a matter of contract law" [*A.T.& T Tech. v. Comm. Workers of*

17   *America* (1986) 475 US 643, 648] and it is well-settled in contract law that particular clauses

18   of a contract are subordinate to its general intent [Civil Code § 1650], that the contract must

19   be interpreted as will make it lawful, operative, definite, reasonable, and capable of being

20   carried into effect, if it can be done so without violating the intention of the parties [Civil

21   Code § 1643], and if there are any uncertainties that cannot otherwise be resolved the

22   language of the contract should be interpreted most strongly against the party who caused the

23   uncertainty to exist [Civil Code § 1654].

24   Here, M&S drafted a retainer agreement which set forth the terms and conditions

25   under which it was willing to accept and represent PRETEC as a client in two patent

26   _____

27   D-1 & D-2].

28   **PRETEC ELECTRONIC'S OPPOSITION TO M&S'S MOTION FOR PRELIMINARY INJUNCTION**
     **MOUNT & STOELKER -V- C-ONE TECHNOLOGIES**
     **Case No 108 CV 105975**
                                                             Page -4-

1  infringement cases pending in the Northern District of California [Federal Court].  Pursuant

2  to the express terms of these two retainer agreements, it was M&S intent that any and all

3  claims that arose as a result of its performance under this agreement, including those of

4  "malpractice", "unsatisfactory performance", and fee disputes be presented for binding

5  arbitration before the American Arbitration Association.  M&S also expressly consented to

6  the arbitration of these claims prior to submitting the agreements to PRETEC for its

7  acceptance.

8        M&S contends that PRETEC did not agree to arbitrate its claims because it did not

9  initial the proper line even though it executed the agreement, signifying its acceptance of its

10  terms, and  and subsequently submitted its claims to arbitration before the AAA as provided

11  for by the express terms of the agreement.

12        M&S cites several pages of authorities for this court's consideration in support of its

13  argument that it, rather than the AAA, should resolve this issue of whether or not a contract

14  exists for arbitration between itself and PRETEC.  As to PRETEC, none of the cited

15  authorities in M&S's moving papers are dispositive of this ultimate issue.

16  **B.    This Ultimate Issue of The Validity And/Or Existence Of The Arbitration**

17  **Agreement By and Between M&S and PRETEC Is Already Properly**

18  **Before The AAA[2]**

19        As noted above on more than one occasion M&S's retainer agreement expressly

20  provides for arbitration of all disputes arising thereunder with the AAA.  AAA Rule R-1(a)

21  provides that the "parties shall have deemed to have made these rules a part of the arbitration

22  agreement whenever they have provided for arbitration by the . . AAA . . . . without

23

24

25

26        [2] Ref. Exhibit B (Objections to Jurisdiction of the Arbitration) & Exhibit C (acknowledgment of receipt

27  of objections by AAA) to Declaration of Jerry R, Hausser

28  **PRETEC ELECTRONIC'S OPPOSITION TO M&S'S MOTION FOR PRELIMINARY INJUNCTION**
**MOUNT & STOELKER -V- C-ONE TECHNOLOGIES**
**Case No 108 CV 105975**                                              Page -5-

1   specifying particular rules"[3].

2          AAA-Rule R-7(a) further provides that the "Arbitrator shall have the power to rule

3   on his or her own jurisdiction including objections with respect to the existence, scope, and

4          validity of the arbitration agreement" and Rule R-7(b) further provides that the

5   arbitrator "shall (also) have the power to determine the existence or validity of the contract

6   of which the arbitration clause forms a part".

7          With peculiar reference to these AAA rules it is noted with acute particularity that

8   M&S's retainer agreement, although the arbitration clause identifies Santa Clara County as

9   the site of any AAA arbitration, DOES NOT contain provision relating to the choice-of-law

10  which is to be applied.  This being the case, the AAA Rules, in particular Rules R-1(a), R-

11  7(a) and R-7(b) apply here.

12          In the recent (February 20, 2008) decision of the United States Supreme Court in the

13  case *Preston v. Ferrer* [128 S. Ct. 978; 2008 U.S. LEXIS 2011, 1*, 30*[4]] held (followings

14  its earlier decision in *Mastrobuono v. Shearson Lehman, Hutton, Inc.* (1995) 514 U.S. 52,

15  63-64) that "Following the guide *Mastrobuono* provides, the "best way to harmonize" the

16  parties' adoption of the AAA rules and their selection of California law is to read the latter

17  to encompass prescriptions governing the substantive rights and obligations of the parties,

18  but not the State's "special rules limiting the authority of arbitrators". Here, since M&S's

19  retainer agreement with PRETEC contained no choice-of-law provision the Court's holding

20  in *Preston* is all the more compelling.

21          Succinctly stated, the ultimate issue as to whether or not the arbitration clause is either

22  extant and/or valid and enforceable between the parties is an issue which is already properly

23  before the AAA arbitral forum.

24  _____

25          [3] All references to AAA Rules were retrieved online at http://www.adr.org/sp.asp?id=22440 (as visited
26  March 6, 2008)

27          [4] The pagination of this case is subject to change pending release of the final published version

1

## Conclusion

2      As pointed out in M&S's moving papers, it is entitled to the requested injunctive relief

3  if and only if it is shown that M&S a "likelihood of success and is entitled to the relief

4  demanded' [Code of Civil Procedure §526(a)]. As for this answering Defendant, particularly

5  given the above-referenced holding of the Supreme Court in *Preston*, the likelihood of M&S

6  prevailing against PRETEC on the issues presented is remote and therefore M&S's request

7  that a Preliminary Injunction should issue should be denied.

8  / / / /

9  / / / /

10

11                                      Respectfully Submitted,

12

13  Date:  March _//_, 2008

14

15                                  **Matthews & Partners**

16

17

18            By:  _____

19                 Leodis C. Matthews
                 Attorney For Defendant
                 PRETEC

20

21

22

23

24

25

26

27

28

## Supporting Declaration

I, Leodic C. Matthews, declare as follows:

1.    I am an attorney at law duly licensed to practice before all courts within the State of California and my firm, Matthews and Partners, is the attorneys of record for named defendant Pretec Electronics Corporation.

2.    On January 11, 2008 I filed a claim with the AAA "C-One Technology (Pretec Electronics) 002-IV3-275" on behalf of our client. A filing fee of $4,250.00 was tendered in good faith [M&S Exhibit A to JRH Dec]. This was not the first AAA claim that was filed in this matter.

3.    Prior thereto, I had filed an earlier claim with the AAA on June 28, 2007 [Case No. 50-194-T-00227] styled "*C-One Technology Corp. vs. Mount & Stoelker*" [Ref. Exhibit D-4]. The filing Fee for this claim was $8,000.00. However, $4,000.00 of this sum was refunded as a result of its dismissal on the grounds set forth below.

4.    With respect to the first claim of June 28, 2007, Daniel S. Mount, Esq. personally appeared and participated in an administrative conference call directly relating to this first AAA claim on behalf of M&S on July 6, 2007. During this conference Mr. Mount and I met in private caucus and mutually agreed to withdraw the claim [Ref. Exhibit D- 5] without prejudice for the purpose of pursing potential settlement of all issues.

5.    Moreover, in connection with this withdrawal of the AAA claim, Mr. Mount executed a stipulation on behalf of M&S, which was also "binding upon their agents and assigns", whereby it waived "any defenses or bar to this action based upon the period within which this matter is dismissed without prejudice [Ref. Exhibit D-6].

6.    I was not put on official notice that M&S was objecting to the arbitration of this claim until I received its written "Objection To Jurisdiction Of The Arbitrator" dated February 12, 2008; a date approximately six months after the date that the first claim had been filed.

---

1    7.    In both of the retainer agreements [Ref. Exhibit D-1 & D-2] dated October 7,

2    2002, attorney Mount expressly agreed to the submission of all claims arising out of these

3    agreements to the AAA for binding arbitration.

4    8.    In direct reliance on the agreement to arbitrate all claims arising out of its

5    retainer agreement with M&S, Defendant has clearly been prejudiced by the fact that it has

6    already paid a total of $8,250.00 to the AAA as well as incurred in addition thereto attorneys

7    fees and costs expended in connection with the prosecution of this arbitral matter.

8    / / / /

9    I have read the foregoing declaration and know of its contents. I declare under penalty

10   of perjury that the foregoing is true and correct.

11   Executed this _11_ day of March 2008 at Los Angeles, California.

12

13

14

15   _____
     Leodis C. Matthews

16

17

18

19

20

21

22

23

24

25

26

27

# Exhibit D-1

EXHIBIT D-1

# MOUNT & STOELKER
### ATTORNEYS

DANIEL S. MOUNT
JAMES L. STOELKER
RICHARD J. LA PLECH
SCOTT A. ROSS*
KATHRYN M. EIDMAN
ALFREDO A. BISMONTE

WILLIAM G. SACHERS
OF COUNSEL

*CERTIFIED SPECIALIST IN
ESTATE PLANNING, TRUST & PROBATE LAW,
THE STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS
SAN JOSE, CALIFORNIA 95110-2711
(408) 298-7000
FAX (408) 998-1473

LESLIE J. HOEKSTRA
RON C. FINLEY
LARA J. HODGSON
NADER R. YASIN
MARIE A. SCHMICK
ASHLEY N. JIANG•
HANA F. CALLAGHAN
PEGGY H. CHEN

•LICENSED ONLY IN THE
PEOPLE'S REPUBLIC OF CHINA

October 7, 2002

Pretec Electronics Corp.
Attn: Charles Lin
40979 Encyclopedia Cr.
Fremont, CA 94538

Re:    Lexar Media v. Pretec Electronics, et al. -- Our File No. Pretc001

Dear Mr. Lin:

    This letter sets forth the basis upon which this office will represent Pretec Electronics Corp. with regard to the above matter in terms of both the scope of our legal representation of Pretec Electronics, as well as Pretec Electronics' obligations to us as a client. This letter further sets out the agreement by which attorneys' fees and costs will be paid to this firm. For purposes of this agreement all parties are referred to collectively as "you."

I.    <u>Legal Services to be Provided.</u>

    We will represent you regarding the above matters. We will provide those legal services reasonably necessary to represent you in this matter. We will take reasonable steps to keep you informed of the progress of this case and to respond to your inquiries.

    We will represent you through a trial or arbitration of these matters, if any, and through any post-trial or arbitration motions or execution proceedings. After final judgment is entered, we will not represent you in any appellate court proceedings, unless a separate fee agreement is entered into between you and this firm. Unless we make a different agreement in writing, this agreement will govern all future services we may perform in these matters, or in any other matters in which we might represent you.

EXHIBIT D-1

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 2

2.    Responsibilities of Attorney and Client.

    We will perform the legal services called for under this agreement, keep you and Pretec informed of progress and developments in the case, and respond promptly to your inquiries and communications. You agree to respond promptly to our inquiries, be truthful with the firm at all times, cooperate fully with us, keep us informed of any developments in this matter, abide by this agreement, and keep us advised of your current address(es) and telephone number(s).

3.    Attorneys Fees and Costs.

    3.a.    Rates and Charges

    You hereby agree to pay the hourly rate at our prevailing rates for time spent on this matter by our legal personnel. Our current hourly rates range from $435.00 per hour for senior attorneys down to $190.00 per hour for youngest attorneys. The rate schedule may increase from time to time.

    We will charge you for time spent on telephone calls relating to this matter, including calls to you, opposing counsel, or court personnel. The legal personnel assigned to this matter will confer among themselves about the matter as required. When they do confer, each person will charge for time expended. Likewise, if more than one of our legal personnel attends a meeting, court hearing or other proceeding, each will charge for time spent. You will be charged for waiting time in court and elsewhere, and for travel time, both local and out-of-town.

    You agree to pay all "Costs" in connection with our representation of you under this agreement. We may request you to pay Costs directly or in advance to this office. In the event that we advance Costs on your account, we will then bill such Costs to you on a monthly basis.

    Costs include, but are not limited to, court filing fees, deposition costs, expert fees and expenses, investigation costs, long-distance telephone charges, messenger service fees, in-house photocopying charges, photocopying expenses, mileage and process server fees. Items that are not to be considered Costs, and that must be paid by you without being either advanced or contributed to by Mount & Stoelker, include, but are not limited to, other parties' costs, if any, that you are ultimately ordered or required to pay.

EXHIBIT D-1

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 3

3.b.    Statements and Payments.

We will send you monthly statements indicating attorneys' fees and costs incurred, and their basis any amounts applied, and any current balance owed. You agree to pay the balance due, in full, within 20 days after the statement is mailed. All parties are jointly and severally liable for payment of attorneys' fees and costs. At the end of our representation of you, any unused portion of the retainer will be returned to the party(ies) who deposited the retainer.

3.c.    Trial Deposit.

You will be required, 45 days prior to any scheduled trial, to post a deposit on account of fees. The deposit will be held in a trust account and withdrawn by Mount & Stoelker upon presentation of invoices for services. Any unused portion of the trial deposit will be available for return to you or credit for other services. The amount of the required trial deposit will be fixed as an estimate of the expected fees and Costs to be earned through the conclusion of the trial. Absent unusual circumstances, the trial deposit will be $12,000.00 for each day the trial is estimated to last.

3.d.    Replenishing Retainer.

You agree to pay $50,000.00 as a deposit against legal fees and costs for the Lexar Media v. Pretec matter. This sum is fully earned in consideration for our promise to represent you. However, we will apply that deposit to our bill for legal services and costs and the application will be reflected in the bill for services that you receive. You agree to keep the balance of the retainer at $50,000.00.

4.    Settlement.

Mount & Stoelker will not settle the claims against you without your approval. You have the right to accept or reject any proposed settlement. You agree to act reasonably in deciding whether to accept or reject any settlement proposal. If you refuse to accept any reasonable settlement proposal which this firm has recommended that you accept, this firm may then withdraw from further representation of you in this matter upon such ground. We will notify you promptly of the terms of any settlement offer received by Mount & Stoelker.

5.    Attorney's Lien.

You hereby grant us a lien on any and all claims or causes of action that are the subject of our representation of you. Our lien will be for any amounts owing to us. The lien

EXHIBIT D-1

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 4

will attach to any recovery you may obtain, whether by settlement, arbitration award, court judgment or otherwise.

6.    Termination of Relationship.

You may discharge Mount & Stoelker at any time.  If, at the time of discharge, Mount & Stoelker is your attorney of record in any proceeding, you will execute and return a substitution-of-attorney form immediately on its receipt from Mount & Stoelker. Notwithstanding any such discharge, the signators to this agreement agree to pay Mount & Stoelker its fees and Costs through the date of discharge.

Mount & Stoelker may withdraw at any time as permitted under the Rules of Professional Conduct of the State Bar of California.

7.    Release of Client's Papers and Property.

After our services have concluded, we will, upon your request, deliver your files to you, along with any of your funds or property then in our possession.  If no written instructions are received from you regarding disposition of the file materials, they will be destroyed 24 months after our services conclude.

8.    Disclaimer of Warranty.

Nothing in this agreement and nothing in our statements to you will be construed as a promise or a guarantee of the outcome of this matter.  We make no such promises or guarantees.  Our comments about the outcome of this matter are expressions of opinion only.

9.    Entire Agreement.

This writing contains our entire agreement regarding this firm's representation of you and regarding payment of fees.  No other agreement, statement, or promise, whether written or oral, that was made on or before the effective date of this agreement will be binding on the parties.

10.    Arbitration of Dispute.

If a dispute arises between Mount & Stoelker and you regarding any aspect of this agreement or its implementation, including but not limited to the following: (a) Mount & Stoelker's claim for attorney's fees or costs under this agreement: or (b) any claim you may make for unsatisfactory performance, including a claim of legal malpractice; you agree to

079

EXHIBIT D-1

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 5

submit the matter to binding arbitration before the American Arbitration Association in Santa Clara County.

   BE ADVISED THAT, BY AGREEING TO THIS PROVISION, BOTH OF US ARE WAIVING ANY RIGHT ONE MAY HAVE TO A TRIAL BY JURY. IF YOU CONSENT TO SUBMIT YOUR CLAIMS TO BINDING ARBITRATION, PLEASE INDICATE BY PLACING YOUR INITIALS IN THE SPACE PROVIDED:

                                        PRETEC ELECTRONICS CORP.

                                        Its _____

                                        Mount & Stoelker      _____

   This agreement will take effect immediately upon receipt of the total retainer of $50,000.00. Please do not hesitate to contact me if you have any questions regarding this letter.

                                        Sincerely.

                                        Daniel S. Mount

The foregoing accurately reflects our agreement.

Dated: _____

                                        PRETEC ELECTRONICS CORP.

                                        By _____ Its _____

# Exhibit D-2

EXHIBIT D-2

# MOUNT & STOELKER

## ATTORNEYS

DANIEL S. MOUNT
JAMES L. STOELKER
RICHARD J. LA FLEUR
SCOTT A. HOSS*
KATHRYN M. KIRHAN
ALFREDO A. BISMONTE

WILLIAM D. SAUERS
OF COUNSEL

*CERTIFIED SPECIALIST IN
ESTATE PLANNING, TRUST & PROBATE LAW;
THE STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS
SAN JOSE, CALIFORNIA 95110-2711
(408) 279-7000
FAX (408) 998-1473

LESLIE J. HOEKSTRA
RON C. FINLEY
LARA J. HODGSON
NADER R. YAGIN
MARK A. SCHRUCK
ASHLEY X. JIANG†
HANA S. CALLAGHAN
PEGGY H. CHEN

†LICENSED ONLY IN THE
PEOPLE'S REPUBLIC OF CHINA

October 7, 2002

Pretec Electronics Corp.
Attn: Charles Lin
40979 Encyclopedia Cr.
Fremont, CA 94538

Re:    Sandisk Media v. Pretec Electronics, et al. – Our File No. Pretec002

Dear Mr. Lin:

This letter sets forth the basis upon which this office will represent Pretec Electronics Corp. with regard to the above matter in terms of both the scope of our legal representation of Pretec Electronics, as well as Pretec Electronics' obligations to us as a client. This letter further sets out the agreement by which attorneys' fees and costs will be paid to this firm. For purposes of this agreement all parties are referred to collectively as "you."

1.    Legal Services to be Provided.

We will represent you regarding the above matters. We will provide those legal services reasonably necessary to represent you in this matter. We will take reasonable steps to keep you informed of the progress of this case and to respond to your inquiries.

We will represent you through a trial or arbitration of these matters, if any, and through any post-trial or arbitration motions or execution proceedings. After final judgment is entered, we will not represent you in any appellate court proceedings, unless a separate fee agreement is entered into between you and this firm. Unless we make a different agreement in writing, this agreement will govern all future services we may perform in these matters, or in any other matters in which we might represent you.

EXHIBIT D-2

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 2

2.      Responsibilities of Attorney and Client.

We will perform the legal services called for under this agreement, keep you and Pretec informed of progress and developments in the case, and respond promptly to your inquiries and communications.  You agree to respond promptly to our inquiries, be truthful with the firm at all times, cooperate fully with us, keep us informed of any developments in this matter, abide by this agreement, and keep us advised of your current address(es) and telephone number(s).

3.      Attorneys Fees and Costs.

3.a.    Rates and Charges

You hereby agree to pay the hourly rate at our prevailing rates for time spent on this matter by our legal personnel.  Our current hourly rates range from $450.00 per hour for senior attorneys down to $190.00 per hour for youngest attorneys.  The rate schedule may increase from time to time.

We will charge you for time spent on telephone calls relating to this matter, including calls to you, opposing counsel, or court personnel. The legal personnel assigned to this matter will confer among themselves about the matter as required.  When they do confer, each person will charge for time expended.  Likewise, if more than one of our legal personnel attends a meeting, court hearing or other proceeding, each will charge for time spent.  You will be charged for waiting time in court and elsewhere, and for travel time, both local and out-of-town.

You agree to pay all "Costs" in connection with our representation of you under this agreement.  We may request you to pay Costs directly or in advance to this office.  In the event that we advance Costs on your account, we will then bill such Costs to you on a monthly basis.

Costs include, but are not limited to, court filing fees, deposition costs, expert fees and expenses, investigation costs, long-distance telephone charges, messenger service fees, in-house photocopying charges, photocopying expenses, mileage and process server fees.  Items that are not to be considered Costs, and that must be paid by you without being either advanced or contributed to by Mount & Stoelker, include, but are not limited to, other parties' costs, if any, that you are ultimately ordered or required to pay.

EXHIBIT D-2

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 3

> 3.b.    Statements and Payments.

We will send you monthly statements indicating attorneys' fees and costs incurred, and their basis any amounts applied, and any current balance owed. You agree to pay the balance due, in full, within 20 days after the statement is mailed. All parties are jointly and severally liable for payment of attorneys' fees and costs. At the end of our representation of you, any unused portion of the retainer will be returned to the party(ies) who deposited the retainer.

> 3.c.    Trial Deposit.

You will be required, 45 days prior to any scheduled trial, to post a deposit on account of fees. The deposit will be held in a trust account and withdrawn by Mount & Stoelker upon presentation of invoices for services. Any unused portion of the trial deposit will be available for return to you or credit for other services. The amount of the required trial deposit will be fixed as an estimate of the expected fees and Costs to be earned through the conclusion of the trial. Absent unusual circumstances, the trial deposit will be $12,000.00 for each day the trial is estimated to last.

> 3.d.    Replenishing Retainer.

You agree to pay $50,000.00 as a deposit against legal fees and costs for the Sandisk Corporation v. Pretec matter. This sum is fully earned in consideration for our promise to represent you. However, we will apply that deposit to our bill for legal services and costs and the application will be reflected in the bill for services that you receive. You agree to keep the balance of the retainer at $50,000.00.

4.    Settlement.

Mount & Stoelker will not settle the claims against you without your approval. You have the right to accept or reject any proposed settlement. You agree to act reasonably in deciding whether to accept or reject any settlement proposal. If you refuse to accept any reasonable settlement proposal which this firm has recommended that you accept, this firm may then withdraw from further representation of you in this matter upon such ground. We will notify you promptly of the terms of any settlement offer received by Mount & Stoelker.

5.    Attorney's Lien.

You hereby grant us a lien on any and all claims or causes of action that are the subject of our representation of you. Our lien will be for any amounts owing to us. The lien

EXHIBIT D-2

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 4

will attach to any recovery you may obtain, whether by settlement, arbitration award, court judgment or otherwise.

6.    Termination of Relationship.

You may discharge Mount & Stoelker at any time.  If, at the time of discharge, Mount & Stoelker is your attorney of record in any proceeding, you will execute and return a substitution-of-attorney form immediately on its receipt from Mount & Stoelker. Notwithstanding any such discharge, the signators to this agreement agree to pay Mount & Stoelker its fees and Costs through the date of discharge.

Mount & Stoelker may withdraw at any time as permitted under the Rules of Professional Conduct of the State Bar of California.

7.    Release of Client's Papers and Property.

After our services have concluded, we will, upon your request, deliver your files to you, along with any of your funds or property then in our possession.  If no written instructions are received from you regarding disposition of the file materials, they will be destroyed 24 months after our services conclude.

8.    Disclaimer of Warranty.

Nothing in this agreement and nothing in our statements to you will be construed as a promise or a guarantee of the outcome of this matter.  We make no such promises or guarantees.  Our comments about the outcome of this matter are expressions of opinion only.

9.    Entire Agreement.

This writing contains our entire agreement regarding this firm's representation of you and regarding payment of fees.  No other agreement, statement, or promise, whether written or oral, that was made on or before the effective date of this agreement will be binding on the parties.

10.    Arbitration of Dispute.

If a dispute arises between Mount & Stoelker and you regarding any aspect of this agreement or its implementation, including but not limited to the following: (a) Mount & Stoelker's claim for attorney's fees or costs under this agreement; or (b) any claim you may make for unsatisfactory performance, including a claim of legal malpractice; you agree to

EXHIBIT D-2

Pretec Electronics Corp.
Attn: Charles Lin.
October 7, 2002
Page 5

submit the matter to binding arbitration before the American Arbitration Association in Santa Clara County.

BE ADVISED THAT, BY AGREEING TO THIS PROVISION, BOTH OF US ARE WAIVING ANY RIGHT ONE MAY HAVE TO A TRIAL BY JURY. IF YOU CONSENT TO SUBMIT YOUR CLAIMS TO BINDING ARBITRATION, PLEASE INDICATE BY PLACING YOUR INITIALS IN THE SPACE PROVIDED:

PRETEC ELECTRONICS CORP.

Its _____

Mount & Stoelker

This agreement will take effect immediately upon receipt of the total retainer of $50,000.00. Please do not hesitate to contact me if you have any questions regarding this letter.

Sincerely,

Daniel S. Mount

The foregoing accurately reflects our agreement.

Dated: Oct 10, 2002

PRETEC ELECTRONICS CORP.

By _____  Its _____

z:/Pretec002; 002;003/Fee Agreement Letter

# Exhibit D-3

Additional Addressees:

G. Whitney Leigh
Gonzalez & Leigh LLP
332 Pine St., Suite 200
San Francisco, Ca. 94104

Ron Finley
Mount & Stoelker
333 West San Carlos Street
Suite 1650
San Jose, Ca. 95110

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

FILED
ALAMEDA COUNTY

APR 1 0 2006

CLERK OF THE SUPERIOR COURT
By _____
                        Deguir

| | |
|---|---|
| MEMOREX PRODUCTS, INC., fka MEMTEK PRODUCTS, INC., | Case No. RG03-118916 |
| Plaintiff, | **PROPOSED** |
| v. | **PHASE ONE TRIAL** |
| C-ONE TECHNOLOGY CORPORATION, PRETEC ELECTRONICS, INC; and DOES 1 through 10, inclusive, | **STATEMENT OF DECISION** |
| Defendants. | |

This matter came on for the first phase of a bifurcated bench trial on October 31, 2005. Plaintiff Memorex Products, Inc., formerly known as Memtek Products ("Memorex") appeared through its counsel, Jon B. Streeter and G. Whitney Leigh. Defendants C-One Technology Corporation ("C-One") and Pretec Electronics, Inc. ("Pretec") appeared through their counsel, Daniel Mount and Ron Finley. The Court heard testimony from witnesses and accepted documentary exhibits into evidence over the course of the first three weeks of November, concluding on the afternoon of November 17, 2005. The parties then submitted Post-Trial Memoranda, and, on December 12, 2005, the Court heard Phase One closing arguments and announced its tentative decision. The Court assigned Plaintiff's counsel the task of preparing a proposed memorandum of decision based on the Court's tentative decision. Plaintiff's counsel submitted a proposed statement of decision on January 9, 2006. Having carefully reviewed the trial record, observed the credibility and demeanor of the witnesses, and considered the arguments presented by the parties, the Court now issues the following Findings of Fact and Conclusions of Law, resolving all matters in dispute in the Phase One trial.

## I.  Findings of Fact

### The Parties and the Applicable Contract Language

1

1    2, 2002. *See* Trial Exhibit 46. The scheduling order established a series of discovery, pleading,

2    and appearance deadlines for the parties beginning on May 24, 2002 and culminating in a patent

3    claim construction hearing scheduled for October 4, 2002. *Id.* Mr. Jeing, representing Memorex

4    and Defendants, failed to meet any of the discovery and pleading deadlines. *Id.* He also failed to

5    appear at a patent tutorial hearing scheduled for September 20, 2002. *Id.* After Mr. Jeing failed

6    to appear at the tutorial hearing, Judge Jenkins issued an order to show cause why sanctions

7    should not be imposed against Memorex and Defendants. *Id.* Judge Jenkins observed that mail

8    sent to Mr. Jeing's address of record had been returned undelivered and that Mr. Jeing apparently

9    had changed addresses without notifying the court as required by the local rules. *Id.* Judge

10   Jenkins scheduled the hearing on the order to show cause for October 4, 2002. *Id.*

11          7.    On April 12, 2002, District Judge Vaughn Walker issued a case management

12   order in the *SanDisk* case that, like the *Lexar* case scheduling order, established a series of

13   discovery and pleading deadlines for the parties. *See* Trial Exhibit 102, p.2. As in the *Lexar*

14   case, Mr. Jeing failed to meet any of these deadlines. *Id.*, pp. 2-4. Mr. Jeing also defaulted on

15   the statutory disclosure obligations in that case and failed to provide required written responses

16   to SanDisk's requests interrogatories and document requests. *Id.* Mr. Jeing produced documents

17   to SanDisk on behalf of Pretec, but did not produce any documents on behalf of Memorex. *See*

18   Trial Exhibits 41, at 5:1-3 and 102, at 3:8-16. On August 26, 2002, SanDisk filed a motion

19   seeking preclusion of evidence, an order striking Memorex and Pretec's affirmative defenses,

20   and recovery of reasonable attorney's fees and costs. Trial Exhibit 41. In its sanctions motion,

21   SanDisk singled out Memorex in particular for having "not produced a single document to date."

22   *Id.*, at 2:6-9. On September 30, 2002, SanDisk filed an amended notice of motion for sanctions

23   against Memorex, scheduling the hearing for the motion on October 17, 2002. *See* Trial Exhibit

24   50.

25          8.    Memorex was not aware of Mr. Jeing's failure to perform or appear during the

26   times those failures occurred. Mr. Golacinski repeatedly complained to Gordon Yu, defendants'

27   president, about Mr. Jeing's failure adequately to communicate or to provide Memorex with

28

4

1    updates regarding the patent proceedings. 11/8/05 AM TX at 24:24-25:16; 26:10-27:17; 28:22-

2    29:27. In response, Yu assured Mr. Golacinski not to worry and that Mr. Jeing had all matters

3    under control. *Id.* at 29:28-30:14. By early August 2002, however, Mr. Yu determined he

4    needed to find an alternative to Mr. Jeing, but did not notify Memorex of his decision to do so.

5    11/8/05 AM TX at 36:17-37:14, 11/15/05 AM TX at 41:2-14.

6                    **The *Lexar* and *SanDisk* Sanctions Proceedings**

7            9.    During the fourth quarter of 2002, the *Lexar* and *SanDisk* courts held proceedings

8    addressing whether sanctions -- at least monetary sanctions, and potentially issue sanctions or

9    even terminating sanctions -- should be imposed against Memorex and Defendants for failing to

10   comply with statutory and court-ordered discovery, pleading and other pretrial requirements.

11           10.   Memorex first learned of sanctions proceedings in the *Lexar* case in late

12   September 2002, when it was notified by its former counsel, Coudert Brothers, of an Order to

13   Show Cause Re Sanctions issued by Judge Martin Jenkins on September 23, 2002. *See* Trial

14   Exhibit 46, 11/9/05 AM TX at 59:9-60:14. After learning of the *Lexar* sanctions proceedings,

15   Memorex retained the law firm of Keker & Van Nest, LLP ("Keker & Van Nest"), to replace Mr.

16   Jeing as its counsel in the *Lexar* case. *See* Trial Exhibit 51, 11/9/05 AM TX at 60:15-26. By

17   letter dated October 2, 2002, Memorex formally notified Defendants of its decision to replace

18   Mr. Jeing with Keker & Van Nest as its counsel in the *Lexar* Action. *See* Trial Exhibit 51.

19   Defendants also retained a new law firm, Mount & Stoelker, LLP ("Mount & Stoelker"), to

20   assume their defense in the *Lexar* case in Mr. Jeing's stead. *See* Trial Exhibit 52.

21           11.   Memorex first learned of the October 17, 2002, sanctions proceeding in the

22   *SanDisk* case on October 15, 2002, two days before the hearing was scheduled to occur. *See*

23   Trial Exhibit 61, 11/15/05 PM TX at 65:10-66:4. Defendants learned of SanDisk's sanctions

24   motion on October 2, 2002. *See* Trial Exhibits 82, ¶13, p.3 and 83, ¶8, p.2. Defendants and

25   their counsel failed to inform Memorex of the sanctions hearing in the *SanDisk* case for almost

26   two weeks. Defendants' declarations in the *SanDisk* matter executed by Ron Finley, a Mount &

27   Stoelker attorney, and by Charles Lin, a Pretec employee, show that the Defendants and Mount

28

                                                   5

1   & Stoelker knew about the specific allegations of Mr. Jeing's failures in the *SanDisk* case as of

2   October 2, 2002. *See* Exhibits 82 and 83. On October 15, 2002, Mr. Finley informed Memorex

3   that SanDisk had opposed Defendants' request to continue the sanctions hearing because no one

4   representing Memorex had not joined in Defendants' request, urged Memorex to immediately

5   join in Defendants' request, and said Mount & Stoelker could specially appear at the sanctions

6   hearing for Memorex. *See* Trial Exhibits 59 and 61. Faced with exigent circumstances,

7   Memorex agreed to allow Mount & Stoelker to appear for Memorex at the October 17, 2002

8   hearing. *See* Trial Exhibits 62.

9       12.    Over the next three weeks, Defendants, through Mr. Finley, made multiple

10  requests that Memorex agree to allow Mount & Stoelker to represent Memorex in both the

11  *SanDisk* and *Lexar* cases. *See* Trial Exhibits 62 and 87. Memorex decided to allow Mount &

12  Stoelker to represent Memorex in the *SanDisk* case on a trial basis and defer its decision whether

13  to accept Mount & Stoelker in the *Lexar* case until after the trial period. 11/9/05 AM TX at

14  80:24-81:24; 86:22-87:17. Mount & Stoelker represented Memorex in the *SanDisk* case through

15  the hearing on SanDisk's sanctions motion on November 14, 2002. *See* Trial Exhibit 89. During

16  this period of time, Keker & Van Nest continued to represent Memorex in the *Lexar* case.

17      13.    Between October 15 and November 14, 2002, Mount & Stoelker communicated

18  with Memorex on two or three occasions. 11/9/05 AM TX at 77:5-11. In these communications,

19  Mount & Stoelker failed to inform Memorex of several procedural and substantive matters

20  relating to the *SanDisk* case sanctions proceedings. 11/9/05 AM TX at 77:13-20.

21      14.    It is undisputed that Mount & Stoelker did not inform Memorex that SanDisk had

22  singled out Memorex for its failure to produce any documents in discovery in its motion for

23  sanctions and its opposition to Pretec's request to continue the sanctions hearing. *See* Trial

24  Exhibits 41, at 2:8-9, 5:1-3 and 68, at 2:21-22. 11/9/05 AM TX at 76:22-77:2; 11/17/05 AM TX

25  at 51:10-52:11.

26      15.    On October 28, 2005, Mr. Finley sent an e-mail to Defendants reporting the status

27  of the *Lexar* and *SanDisk* proceedings. *See* Trial Exhibit 79. In this report, Mr. Finley informed

28

6

1    Defendants that, among other things, Mount & Stoelker would file an opposition to SanDisk's

2    motion for sanctions on October 31, 2002. *Id.* Mr. Finley did not send this status report, or the

3    information contained in it pertaining to the *SanDisk* case, to Memorex. *Id.* On October 31,

4    2002, Mount & Stoelker filed an opposition to SanDisk's sanctions motion, on behalf of Pretec

5    and Memorex, supported by declarations by Mr. Finley and Charles Lin, a Pretec employee. *See*

6    Trial Exhibits 81-83. Mount & Stoelker did not provide copies of these pleadings to Memorex

7    or seek its input or approval for the arguments made therein. 11/9/05 AM TX at 84:12-14,

8    11/10/05 PM TX at 32:14-17.

9        16.    On November 7, 2002, SanDisk filed a reply brief in support of its sanctions

10   motion. *See* Trial Exhibit 85. In its reply, SanDisk noted that although Mount & Stoelker had

11   presented evidence, through the Lin declaration, of Pretec's unawareness of Mr. Jeing's failure

12   to perform and appear, it "offered no support for their contention that Memorex was unaware of

13   Mr. Jeing's actions" and that Mr. Lin was not competent to submit a declaration on behalf of

14   Memorex. *See* Trial Exhibit 85 at p.2, note 1, 11/9/05 AM TX at 82:18-83:11. It is undisputed

15   that Mount & Stoelker did not notify Memorex of SanDisk's reply arguments pertaining to

16   Memorex. *Id.* at 82:18-85:28.

17       17.    Memorex learned of San Disk's allegations against Memorex, and of Mount &

18   Stoelker's failure to respond to or notify Memorex of SanDisk's allegations, only after the

19   sanctions hearing was held, on November 14, 2002. Memorex then decided to terminate Mount

20   & Stoelker as its counsel in the *SanDisk* case and not allow Mount & Stoelker to represent

21   Memorex in the *Lexar* case. *See* 11/9/05 AM TX at 84:11-88:14, Trial Exhibits 91 and 99.

22       18.    On November 27, 2002, Judge Walker issued an order in the *SanDisk* case

23   imposing monetary sanctions against Mr. Jeing, Memorex and Pretec. Trial Exhibit 102 at

24   15:19-28. Judge Walker further warned that any future failure by Memorex or Pretec to comply

25   with discovery rules or deadlines could result in severe sanctions, and required Memorex and

26   Pretec's CEOs to file declarations attesting to their awareness of the order's contents. *Id.*, at

27   14:20-4. On February 13, 2003, Judge Jenkins entered an order in the *Lexar* case awarding

28

Proposed Phase One Trial Statement of Decision

*Memorex v. C-One, et al.*
Case No. RG03-118916

1   monetary sanctions against Mr. Jeing, but declining to sanction Memorex or C-One.  Trial

2   Exhibit 107.

3

4

## II.  Conclusions of Law

5   ### Contractual Duties Owed by Defendants to Memorex

6         1.     The Court finds that under the Indemnity Agreement, Defendants assumed three

7   related but separable duties relevant to the instant dispute:  (1) a duty to indemnify, (2) a duty to

8   defend and (3) a duty to communicate.  Only the duty to defend and the duty to communicate are

9   at issue in this Phase One trial.

10         2.     The scope of Defendants' duty to indemnify Memorex is set forth in Section 1 of

11   the Indemnification Agreement.  *See* Trial Exhibit 20.  Section 1 requires Defendants, without

12   limitation, to pay on behalf of Memorex all "losses, costs, damages (compensatory and punitive),

13   expenses, judgments, settlements, awards of costs or attorneys' fees, royalties or any other

14   amounts" that [Memorex] paid or is required to pay arising out of any claims brought against

15   Memorex based on products Memorex purchased from Defendants. *Id.*, Section 1(i), p.2.  The

16   Court finds that under a narrow, but reasonable, reading of Section 1 of the Indemnification

17   Agreement, Defendants' duty to indemnify Memorex for any losses "arising out of" claims based

18   on Memorex's sale of Defendants' products would not necessarily include a duty to pay

19   monetary sanctions imposed individually on Memorex for litigation misconduct in the

20   underlying patent actions.  Thus, if ordered to pay monetary sanctions for litigation misconduct

21   caused by Defendants' assigned counsel, Memorex could reasonably be concerned whether

22   Memorex would be reimbursed by the Defendants for sanctions individually imposed on

23   Memorex for what the Court determined was assigned counsel's failure to perform, respond, or

24   comply with an order or rule.

25         3.     The Indemnification Agreement also obligated Defendants to fully defend

26   Memorex in the *Lexar* case and in any other lawsuits brought against Memorex by third parties

27   based on Memorex's sale of Defendants' products.  *See* Trial Exhibit 20, Section 1, pp.2-3.

28

8

1    Thus, the Indemnification Agreement obligated Defendants to defend Memorex in the *SanDisk*

2    case. *See* Trial Exhibit 31.

3        4.    The Indemnification Agreement authorized Defendants to assign counsel of their

4    choice to undertake the professional responsibility of defending Memorex, but also provided that

5    such counsel had to be acceptable to Memtek. *See* Trial Exhibit 20, Section 1, p.2. The Court

6    finds that this acceptability provision is one that must be measured by a standard of objective

7    reasonableness. *See Storek & Storek Inc. v. Citicorp Real Estate Inc.*, 100 Cal. App. 4th 44, 55-

8    65, 122 Cal. Rptr. 2d 267, 275-285 (2002). The Indemnification Agreement further provided

9    that in the event that Defendants either (1) breached their obligation to defend or (2) failed to

10   provide counsel acceptable to Memorex, then Memorex was entitled to hire separate counsel to

11   defend it. *See* Trial Exhibit 20, Section 2, p.2.

12       5.    The other duty that Defendants assumed under the Indemnification Agreement

13   was the duty to communicate. Although this obligation might be characterized as a subpart of

14   the duty to defend, for purposes of clarity of analysis the Court treats it distinctly. Under Section

15   2, page 3, of the Indemnification Agreement, Defendants expressly agreed to instruct counsel to

16   communicate with individuals designated by Memorex and to keep them regularly informed of

17   the progress of the action. Memorex designated two individuals for this purpose: Michael

18   Golacinski, Memorex's president and CEO, and Dorothy Law, an attorney who performed

19   services for Memorex akin to that of an inside or general counsel. 11/17/05 AM TX at 46:18-

20   48:25.

21                          **Breach of Duty To Defend**

22       6.    The Court finds Defendants breached their duty to defend Memorex by the

23   actions and inactions of their first assigned counsel, Mr.Jeing. As set forth in the sanction order

24   of Judge Jenkins, Mr. Jeing failed to follow local court rules regarding disclosures, exchanges,

25   statements, briefs, and evidence. *See* Trial Exhibit 46. Similar allegations were made in the

26   *SanDisk* case. *See* Trial Exhibit 102. I find that Mr. Jeing abandoned over a long period of time

27   the defense of Memorex in both cases. During the trial, Defendants did not meaningfully contest

28

9

1    the charge that Mr. Jeing failed to carry out his duty to defend Plaintiff. Because Mr. Jeing

2    failed to represent Memorex adequately in both the *Lexar* and *SanDisk* cases, his behavior

3    caused Defendants to breach the Indemnification Agreement.

4         7.    The court finds the services of the second assigned counsel, Mount & Stoelker,

5    did not breach the basic duty to defend, but were properly rejected by Memorex, using an

6    objectively reasonable standard of acceptability, under the terms of the contract. Keker & Van

7    Nest directly succeeded Mr. Jeing as defense counsel for Memorex in the *Lexar* case. Since

8    Mount & Stoelker never represented Memorex in that case, they could not breach any basic duty

9    to defend in that case. In the *SanDisk* case, Memorex contended Mount & Stoelker failed to fully

10    defend Memorex's interests in opposing the motion for sanctions. Memorex presented evidence

11    that showed Mount & Stoelker (1) failed to submit declarations on Memorex behalf similar to

12    those that the firm submitted on behalf of Defendants, (2) made representations to the Court that

13    did not state Memorex's position with regard to the facts presented, (3) failed to state Memorex's

14    individual efforts and diligence in attempting to ensure Mr. Jeing's compliance with the court

15    orders, litigation rules, and discovery schedule, and (4) omitted any reference to Memorex's

16    reliance on Mr. Yu that everything was okay and proceeding properly. Memorex also contends

17    that Mount & Stoelker failed to argue against an interpretation of the Supreme Court's decision

18    in *Link v. Wabash* that would not impose strictly liable on a party for the conduct of their

19    counsel. The Court concludes these actions do not constitute a breach of the basic duty to

20    defend. The Court does find, however, that Memorex was justified, using an objectively

21    reasonable standard of acceptability, in finding the second assigned counsel and their actions

22    unacceptable under the terms of the Indemnification Agreement.

23                      **Breach of Duty to Communicate**

24         8.    The Indemnification Agreement requires that Defendants instruct any counsel

25    appointed to defend Memorex to communicate regularly about the status of the case with

26    individuals designated by Memorex. Memorex designated Michael Golacinski and inside

27    counsel Dorothy Law. Neither Mr. Jeing nor Mount & Stoelker communicated with these

28

10

1   representatives in a meaningful or regular way.

2       9.   Defendants do not dispute that Mr. Jeing failed to communicate with Memorex

3   about the status of both cases.  Furthermore, the facts show that Defendants failed to meet their

4   own duty to communicate, separate and apart from Mr. Jeing's obligation, by providing updates

5   to Memorex and reasonably responding to inquiries from the designated representatives of

6   plaintiff.

7       10.   Mr. Golacinski repeatedly complained to Gordon Yu, the president of Defendants,

8   about Mr. Jeing's failure to communicate.  He was assured by Mr.Yu, without any apparent basis

9   in fact, that things were proceeding acceptably in the cases until the end of August 2002, at

10  which point Mr. Yu himself became sufficiently concerned about the failure of communication

11  with Mr. Jeing that he began looking for alternative counsel.

12      11.   The Court finds that Mount & Stoelker did not communicate regularly to

13  Memorex the status or important events of the *SanDisk* case during the time Mount & Stoelker

14  represented Memorex in that proceeding.  The communication failures include:

15          a.)   Memorex was not made aware of the failures involving Mr. Jeing in a timely

16      fashion.  The Court concludes that Mount & Stoelker and Pretec both had knowledge by

17      October 2, 2002, of Mr. Jeing's failures and the pending sanctions motions in both the

18      *Lexar* and *SanDisk* matters.  *See* Trial Exhibits 82 and 83.   However, they did not notify

19      Memorex about these problems until October 15, 2002, in an email sent to Ms. Grace Lu

20      that was forwarded to Ms. Law.  Trial Exhibit 61.  Given the significance of this

21      information, the failure to communicate this information to Memorex is a breach of the

22      Indemnification Agreement's communication requirement.

23          b.)   Mount & Stoelker failed to provide Memorex with copies of pleadings in the

24      *SanDisk* case.  Standing alone, this is insufficient to find a breach of the communication

25      requirement of the Indemnification Agreement.  In reviewing Mr. Finley's two or three

26      communications with Memorex in the critical time period of October 15 through

27      November 15, 2002, the Court finds that Mount & Stoelker did not clearly state the

28

11

positions it was taking in the *SanDisk* sanctions regarding Memorex and Pretec's respective conduct and culpability.

c.) Mount & Stoelker failed to provide Memorex with a copy of the October 28th, 2002, status report sent to Defendants. *See* Trial Exhibit 79. Standing alone, this failure would be sufficient to find a breach of the Indemnification Agreement's communication requirement. This document was intended to convey the progress of the *SanDisk* case. At trial, Mr. Finley failed to explain why it was not forwarded to Ms. Law at Memorex and provided no justification for his failure to do so.

d.) Mount & Stoelker failed to forward information contained in Mr. Lin's declarations opposing sanctions. These declarations purported to make representations concerning Memorex's knowledge of the underlying events leading up to the motion for sanctions. *See* Trial Exhibits 60 and 82. They are relevant to understand the overall lack of communication, but, standing alone, are not sufficient to constitute a breach of the duty to communicate.

e.) Mount & Stoelker failed to inform Memorex that SanDisk was attempting to obtain sanctions individually against Memorex because of counsel's failure to present evidence that Memorex had no knowledge of Mr. Jeing's actions. The Court finds the failure to communicate that information sufficient to constitute a breach of the duty to communicate.

12.    Mount & Stoelker's failures to communicate, especially following the failures of Mr. Jeing, gave Memorex a proper basis, using an objectively reasonable standard of acceptability, to reject Mount & Stoelker as its defense counsel.

13.    Breach of the duty to communicate provides a separate and independent basis for the Court's finding of breach of contract.

### Prerequisites to Invoking Section 2 of The Agreement Satisfied

14.    Under Section 2 of the Indemnification Agreement, Memorex was entitled to serve written notice and "resume" working with its own designated counsel in the event of

12

1 | Defendants' breach.[2]

2      15.   Memorex provided written notice of breach to Defendants in the *Lexar* matter on

3 October 2, 2002, in a letter from Mr. Golacinski to Mr. Yu. Trial Exhibit 51. That letter notified

4 Pretec that Memorex had retained the law firm of Keker & Van Nest to represent it in that

5 matter, based on Mr. Jeing's failure to meet numerous court deadlines and Memorex's doubts as

6 to Mr. Jeing's professional ability.

7      16.   For the *SanDisk* matter, Mount & Stoelker admitted at trial that their

8 representation of Memorex in that case was on a trial basis, or, as Mr. Law stated, a "wait and

9 see" basis. When Memorex concluded that Mount & Stoelker had not performed to its

10 satisfaction in the *SanDisk* matter, it decided to replace Mount & Stoelker with Keker & Van

11 Nest on November 15, 2002. Written notification was sent on November 19, 2002, citing Mount

12 & Stoelker's failure to keep Memorex informed about material events in the case, failure to

13 obtain Memorex's consent and approval of pleadings before filing, failure to inquire about the

14 extent of Memorex's knowledge concerning Mr. Jeing, and failure to consult with Memorex

15 about the litigation. *See* Trial Exhibit. 91.

16      17.   The Court finds that it was objectively reasonable for Memorex to be dissatisfied

17 with the defense counsel Defendants offered and that Memorex was within its rights to replace

18 assigned defense counsel in both the *Lexar* and *SanDisk* cases as set forth in Section 2 of the

19 Indemnification Agreement.

20 **Cure And Waiver Defenses**

21      18.   Defendants argue that any breach they committed was cured and any right that

22 Memorex may have had to replace defense counsel was waived by Memorex's refusal of

23 Defendants' multiple offers to cure the breach between October 15 and November 15, 2002, by

24 tendering Mount & Stoelker as counsel to replace Mr. Jeing. Defendants contend that, once

25 Memorex hired Keker & Van Nest in early October 2002, it categorically refused to consider any

26 attorney suggested by Defendants. Defendants argue that their first attempt to cure was made on

27
28 [2] The Court reads this to mean that Memorex has the right to "resume" being separately represented, not that it necessarily had to resume being represented by its previous counsel, Coudert Brothers.

Proposed Phase One Trial Statement of Decision      *Memorex v. C-One, et al.*
Case No. RG03-118916

1   October 15, 2002, when Mount & Stoelker informed Ms. Law that it would represent Memorex

2   in the *SanDisk* matter on a special appearance basis. Defendants claim a second offer of cure in

3   the October 28, 2002, status report and separate communications made between Mr. Finley and

4   Ms. Law. Defendants claim a final offer of cure in Gordon Yu's letter of November 20, 2002,

5   responding to Memorex's oral and written notices of breach and its announced intention to retain

6   Keker & Van Nest as counsel in both the *Lexar* and *SanDisk* matters. *See* Trial Exhibit 95.

7         19.    The Court finds that Memorex acted reasonably in October, 2002, by allowing

8   Mount & Stoelker to represent it on a trial basis in *SanDisk* while also continuing to have Keker

9   & Van Nest represent it in the *Lexar* matter. Mount & Stoelker only made its offer to represent

10   Memorex in the *Lexar* case after Memorex retained Keker & Van Nest. Memorex's decision to

11   defer acceptance of Mount & Stoelker in the *Lexar* case during the period it was evaluating the

12   law firm's representation of Memorex in the *SanDisk* case was reasonable given the history and

13   existing circumstances. The Court believes that Memorex acted reasonably in accepting Mount

14   & Stoelker's representation in *SanDisk* only on a tentative basis, while retaining the option to

15   review the arrangement later.

16         20.    Memorex fairly considered allowing Mount & Stoelker to represent it, but

17   ultimately had objectively reasonable grounds for rejecting Defendants' tenders of joint

18   representation by that firm. Mr. Finley's November 15, 2002, letter illustrates Memorex's

19   concerns about potential conflicts with Mount & Stoelker's representation. *See* Trial Exhibit 90.

20   The letter begins by stating that it sets forth Pretec's position. The letter then refers to Pretec as

21   "our [Mount & Stoelker's] client." The letter takes positions adverse to Memorex in outlining

22   why Pretec did not believe it was responsible for Memorex's legal fees. The letter then states

23   that the failures of previous counsel have been cured. The tone of the letter, failure to

24   specifically state that Mr. Finley was neutral in any disputes between the parties, and advocacy

25   on behalf of Defendants' position against Memorex, would give the recipient Memorex

26   reasonable doubt about the loyalties of Mr. Finley. Since that letter, Defendants have not offered

27   any counsel other than Mount & Stoelker to represent Memorex.

28

14

1    21. The Court finds there has been no cure by Defendants or waiver by Plaintiff.

2                              **III. CONCLUSION**

3

4    Based on the Findings of Fact and Conclusions of Law set forth above, the Court finds

5    and declares (1) that Defendants breached the terms of the Indemnification Agreement, (2) that

6    Memorex was entitled as a result of the breach to retain separate counsel in both the *Lexar* and

7    *SanDisk* cases, and (3) that Memorex may recover damages as provided for in Section 2 of the

8    Agreement, subject to any remaining defenses Defendants may have. The Court further finds

9    and declares that Memorex did not waive its rights under Section 2 of the Agreement, or in any

10   other respect, nor did Defendants cure their breach.

11   This Proposed Phase One Trial Statement of Decision will become the Phase One Trial

12   Statement of Decision unless a party serves and files objections to this statement of decision

13   within 15 days from the notice of entry of this statement of decision. Rule 232(d), California

14   Rules of Court. Any party filing objections to this statement must also serve a courtesy copy of

15   all such objections on the Court Clerk of Department 135. Plaintiff must prepare and submit

16   within 15 days from the notice of entry of this statement a proposed judgment in conformance

17   with this statement. Rule 232 (c), California Rules of Court.

18   This case has been bifurcated into two phases. The Phase Two trial, to determine all

19   remaining issues, shall occur on a date to be determined at a case management conference to be

20   scheduled and noticed by the Court. The Court does not reach the issue of whether Memorex

21   failed to mitigate its damages or whether the $135,000 settlement amount alleged to have been

22   paid by Memorex in the *Lexar* matter is properly recoverable as damages.

23   **IT IS SO ORDERED.**

24

25   DATED: _April 8, 2006_

26

27   _____
     JUDGE OF THE SUPERIOR COURT

28

Proposed Phase One Trial Statement of Decision

*Memorex v. C-One, et al.*
Case No. RG03-118916

# Exhibit D-4

# I C
# D R

## International Centre for Dispute Resolution

# FAX

*Thomas M. Ventrone, Esq.*
*Vice President*
*International Centre for Dispute Resolution*
1633 Broadway, New York, NY 10019-6708
telephone 212 484 3299, facsimile 212 246 7274

DATE    July 12, 2007

TO    Leodis Clyde Matthews, Esq.          FAX NUMBER    1-323-930-5693
      Daniel S. Mount, Esq.                              1-408-998-1473

      Andrea H. Bugbee
      ICDR Senior Case Manager

NUMBER OF PAGES    4    Mr. Matthews w/Respective Financial History
                   3    Mr. Mount w/Respective Financial History

RE    *50 194 T 00227 07*
      *C-One Technology Corp.*
      *vs*
      *Mount & Stoelker*

CC

MESSAGE    Dear Counsel:

           Please see the attached. Thank you.

           Kind Regards,

           Andrea

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE (COLLECT) AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

103



**I C**
**D R**

International Centre
for Dispute Resolution

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

July 12, 2007

<u>**VIA FACSIMILE ONLY**</u>

Leodis C. Matthews, Esq.
Matthews & Partners
4322 Wilshire Blvd Suite 200
Los Angeles, CA 90010

Daniel S. Mount, Esq.
Mount & Stoelker
Riverpark Tower, Suite 1650
333 West San Carlos
San Jose, CA 95110

Re: 50 194 T 00227 07
     C-One Technology, Corp.
     vs
     Mount & Stoelker

Dear Counsel:

This will serve to acknowledge receipt of a letter dated July 11, 2007 from Claimant wherein it has been stipulated by both Parties that the matter is to be withdrawn. Therefore, we are closing our file as of July 6, 2007. Copies of your respective Financial Histories have been attached.

Please contact the undersigned, should you have any questions.

Very truly yours,

Andrea H. Bugbee
Senior International Case Manager
(212) 484-3299
BugbeeA@adr.org

Encl.

50-194-T-00227-07
C-One Technology, Corp.

**Administrative Fees and Expenses:**

| | | |
|---|---|---|
| Filing Fees | $8,000.00 | |
| Case Services Fee | $0.00 | |
| Hearing Fees | $0.00 | |
| AAA Room Rental Fee | $0.00 | |
| Abeyance/Misc. AAA Fees | $0.00 | |
| Non-AAA Conference Room Expenses | $0.00 | |
| Misc Expenses | $0.00 | |
| Your Share of Administrative Fees and Expenses: | | $8,000.00 |
| Amount Paid for Administrative Fees and Expenses: | | $8,000.00 |
| Balance Administrative Fees and Expenses: | | $0.00 |

**Neutral Compensation and Expenses:**

| | |
|---|---|
| Your Share of Neutral Compensation and Expenses: | $0.00 |
| Amount Paid for Neutral Compensation and Expenses: | $0.00 |
| Balance Neutral Compensation and Expenses: | $0.00 |

| | |
|---|---|
| **Party Balance:** | $0.00 |

105

**C-One Technology, Corp. vs Mount & Stoelker**

|  |  |
|---|---|
| Case Manager: | Andrea Bugbee |
| Case Number: | 50-194-T-00227-07 |
| Case Status: | Withdrawn |
| Received Date: | 06/28/2007 |
| Notification Date: | 07/06/2007 |
| Days Elapsed: | 8 |
| Refund %: | 50% |

| Party# | Name | Filing Fees (a) | Reduction Per Refund Schedule (b) | Paid ( |
|---|---|---|---|---|
| 1 | C-One Technology, Corp. | $8,000.00 | $4,000.00 | $8,000.0 |
| 2 | Mount & Stoelker | $0.00 | $0.00 | $0.0 |
|  | Total | $8,000.00 | $4,000.00 | $8,000.0 |

# Exhibit D-5



# International Centre for Dispute Resolution

## FAX

*Thomas M. Ventrone, Esq.*
*Vice President*
*International Centre for Dispute Resolution*
1633 Broadway, New York, NY 10019-6708
telephone 212 484 3299, facsimile 212 246 7274

DATE     July 9, 2007

TO       Leodis Clyde Matthews, Esq.        FAX NUMBER    1-323-930-5693
         Daniel S. Mount, Esq.                            1-408-998-1473

         Andrea H. Bugbee
         ICDR Senior Case Manager

NUMBER OF PAGES    2    (Including Fax Cover Sheet)

RE       *50 194 T 00227 07*
         *C-One Technology Corp.*
         *vs*
         *Mount & Stoelker*

CC

MESSAGE     Dear Counsel:

            Please see the attached. Thank you.

            Kind Regards,

            Andrea

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO
WHOM IT IS ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL,
PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE
INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS FAX TO THE
INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF
THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE
NOTIFY US IMMEDIATELY BY TELEPHONE (COLLECT) AND RETURN THE ORIGINAL
FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.



**International Centre
for Dispute Resolution**

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

July 9, 2007

**VIA FACSIMILE ONLY**

Leodis C. Matthews, Esq.
Matthews & Partners
4322 Wilshire Blvd Suite 200
Los Angeles, CA 90010

Daniel S. Mount, Esq.
Mount & Stoelker
Riverpark Tower, Suite 1650
333 West San Carlos
San Jose, CA 95110

Re: 50 194 T 00227 07
    C-One Technology, Corp.
    vs
    Mount & Stoelker

Dear Counsel:

This will serve to confirm that an administrative conference call took place on July 6, 2007. We note that during the call, the Parties reached an agreement to withdraw the matter.

We hereby kindly request the Parties to please confirm their agreement to withdraw the case in writing. Upon receipt of said notice, we will close the file as of July 6, 2007.

Please contact the undersigned, should you have any questions.

Very truly yours,

Andrea H. Bugbee
Senior International Case Manager
(212) 484-3299
BugbeeA@adr.org

A Division of the American Arbitration Association

109

# Exhibit D-6

# MOUNT & STOELKER, P.C.
## ATTORNEYS

### FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: **Leodis Matthews** | FROM: **Dan Mount** |
| COMPANY: **Matthews & Partners** | DATE: **JULY 10, 2007** |
| FAX NUMBER: **(323) 930-5693** | TOTAL NO. OF PAGES INCLUDING COVER: **2** |
| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: **MOUNT011** |
| RE: **International Centre of Dispute Resolution C-One Tech. V. M&S** | YOUR REFERENCE NUMBER: **ADR Case No. 50-194T00227-07** |

☐ URGENT    ☐ FOR REVIEW    ☐ ORIGINAL TO FOLLOW    ☐ PLEASE REPLY

THE INFORMATION CONTAINED IN THIS FAX IS CONFIDENTIAL AND/OR PRIVILEGED. THIS FAX IS INTENDED TO BE REVIEWED INITIALLY BY ONLY THE NAMED ADDRESSEE. REVIEW, DISSEMINATION OR COPYING OF THIS FAX BY ANYONE OTHER THAN THE INTENDED RECIPIENT OR HIS OR HER REPRESENTATIVE IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE AND RETURN THIS FAX TO THE SENDER AT THE ADDRESS LISTED BELOW.

NOTES/COMMENTS:

Jul 09 07 04:42p       Leo's C. Matthews

# MATTHEWS & PARTNERS

### COUNSELORS & ATTORNEYS AT LAW

4362 WILSHIRE BOULEVARD, SUITE 200
LOS ANGELES, CA 90010

TELEPHONE (323) 930-5690
FACSIMILE (323) 930-5693
E-MAIL LMatthews@lmadys.com

LYONER STRASSE 19
60528 FRANKFURT AM MAIN, GERMANY

TELEPHONE (49 69) 66 55 44 25
FACSIMILE (49 69) 66 55 44 50
www.federaldoctorlaw.com

July 9, 2007

```
DATE REC'D/ORIG. 7-9-07
FILE #  MOUNT011
CALN'D       APPRV'D
BY  MM   BY  RS
DATE  60-90 dys
DATE _____
DATE _____
COPY
TO CLIENT  DSM
```

Dan Mount, Esq.
Mount & Stoelker
Riverpark Tower, Suite 1650
333 West San Carlos
San Jose, CA 95110

Fax: (408) 998-1473

Re: INTERNATIONAL CENTRE OF DISPUTE RESOLUTION
    C-ONE TECHNOLOGY V. MOUNT & STOELKER
    ADR Case No. 50-194T00227-07

Dear Mr. Mount:

This letter will serve as a confirmation of our agreement that with respect to those issues asserted in the above matter, we have agreed that the Arbitration will be withdrawal without prejudice for a period of 60 days but not to exceed 90 days.

Mount & Stoelker agrees to waive any running of any statute of limitations or other time limitation that might expire or be affected by this agreed upon time period. Before or at the conclusion of the 60 – 90 day period described above, C-One Technology may elect to refile the request for arbitration without objections by Mount & Stoelker as to any defenses or bar to this action based upon the period within which this matter is dismissed without prejudice.

The parties agree that they the authority to sign on behalf of the named parties in this case and that this agreement is binding upon their agents and assigns.

If this summary is correct, please countersign this letter to indicate your consent to the above agreement reached between us on July 6, 2007.

Sincerely yours,

Leodis C. Matthews

LCM/wla

The parties have agreed as stated above:

Dan Mount

Date: July 9, 2007

1

**Certificate of Service**
*[California Code of Civil Procedure §§ 1013a & 2015.5]*

2

3       I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party within the action. My address is 4322 Wilshire Boulevard, Suite 200, Los Angeles, CA 90010.  On **March 11, 2008** served the foregoing document(s), described as follows, on all interested parties in this action by placing a true copy thereof

4

5       Title of Document:    **PRETEC ELECTRONICS CORP.'S OPPOSITION TO MOUNT &**

6                             **STOELKER'S MOTION FOR PRELIMINARY INJUNCTION**

7       Case Number:    BC359710

8       **SEE ATTACHED SERVICE LIST**

9    ☐    PERSONAL DELIVERY: On the above date I caused the above described document(s) to be personally hand delivered to the addressee(s)

10

11   ☐    FACSIMILE: On the above date, I caused the above-described document(s) to be sent to the addressee(s) via the facsimile number on the attached service list.

12   ☐    FEDERAL EXPRESS: On the above date I caused the above-described document(s) to be sent  to the addressee(s) via Federal Express with the shipping charges fully prepaid, for ☐ Overnight ☐ Priority Overnight Delivery

13

14   ☒    REGULAR MAIL:

15       ☐    I deposited such envelope(s) in the United States Mail at Los Angeles, California with the postage thereon fully prepaid.

16

17       ☒    I caused such envelope(s) to be deposited in the mail at Los Angeles, California with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on the same day in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid of postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this affidavit.

18

19

20

21       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on **March 11, 2008** at Los Angeles, California.

22

23       Melanie Ocubillo

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Service List**

Jerry Hauser
Phillips, Greenberg & Hauser, L.L.P.
Four Embarcadero Center, 39th Floor
San Francisco, CA 94111
Facsimile: (415) 398-5786

Counsel for Plaintiffs

EXHIBIT E

From:Matthews & Partners          323 930 5693          03/11/2008 12:25          #720 P.071/077

1    D. P. Sindicich [SBN 78162]
        OF COUNSEL
2    MATTHEWS & PARTNERS
           SUITE 200
3      4322 WILSHIRE BOULEVARD
    LOS ANGELES, CALIFORNIA 90010-3792
4       TELEPHONE: 323.930.5690
        FACSIMILE: 323.930.5693
5
    Attorneys For:  Named Defendant
6                   C-ONE TECHNOLOGY CORP.

7

8            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF SANTA CLARA

10                DOWNTOWN (SAN JOSE) DIVISION

11

12   MOUNT & STOELKER, a Professional         CASE NUMBER: 108 CV 105975
     Corporation,
13                                                 Special Appearance By
                                              Defendant C-One Technologies
14                            Plaintiff        For The Limited Purpose Of
                                                       Challenging
15                                              The Court's Jurisdiction To
                - Vs -                        Hear Plaintiff Mount & Stoelker's
16                                                     Motion For
                                                 Preliminary Injunction
17                                                   Due To Lack Of
     C-ONE TECHNOLOGY, a Taiwanese             In Personam Jurisdiction
18   Corporation, PRETEC ELECTRONICS          Over Named Defendant
     CORPORATION;     a    California            C-One Technology
19   Corporation; INTERNATIONAL CENTRE
     FOR DISPUTE RESOLUTION, a Division             * * * *
20   of the American Arbitration
     Association (erroneously sued as          Supporting Declaration
21   "International Center for Dispute
     Resolution"); and DOES 1 through 50,
22   inclusive.                               Date:  March 25, 2008
                                              Time:  9:00 AM
23                            Defendants      Dept:  5

24

25

26

27

28   SPECIAL, LIMITED APPEARANCE CHALLENGING COURT'S JURISDICTION OVER DEFENDANT C-ONE
     MOUNT & STOELKER -V- C-ONE TECHNOLOGIES
     Case No. 108 CV 105975



116

1        D. P. Sindicich [SBN 78162]
                   OF COUNSEL
2        MATTHEWS & PARTNERS
                   SUITE 200
3         4322 WILSHIRE BOULEVARD
      LOS ANGELES, CALIFORNIA 90010-3792
4        TELEPHONE: 323.930.5690
          FACSIMILE: 323.930.5693
5

6   Attorneys For:  Named Defendant
          C-ONE TECHNOLOGY CORP.
7

8      IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9        IN AND FOR THE COUNTY OF SANTA CLARA

10          DOWNTOWN (SAN JOSE) DIVISION

11

| | |
|---|---|
| MOUNT & STOELKER, a Professional Corporation, | CASE NUMBER: 108 CV 105975 |
| **Plaintiff** | **Special Appearance By Defendant C-One Technologies For The Limited Purpose Of Challenging The Court's Jurisdiction To Hear Plaintiff Mount & Stoelker's Motion For Preliminary Injunction Due To Lack Of In Personam Jurisdiction Over Named Defendant C-One Technology** |
| - Vs - | |
| C-ONE TECHNOLOGY, a Taiwanese Corporation, PRETEC ELECTRONICS CORPORATION; a California Corporation; INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION, a Division of the American Arbitration Association (*erroneously sued as "International Center for Dispute Resolution"*); and DOES 1 through 50, inclusive. | * * * * |
| | **Supporting Declaration** |
| | Date:  March 25, 2008 |
| | Time: 9:00 AM |
| **Defendants** | Dept:  5 |

SPECIAL, LIMITED  APPEARANCE CHALLENGING COURT'S JURISDICTION OVER DEFENDANT C-ONE
MOUNT & STOELKER -V- C-ONE TECHNOLOGIES
Case No. 108 CV 105975

117

1   Comes Now, C-ONE TECHNOLOGY ["C-ONE"], in its own name and solely on its

2   own behalf, and, Specially Appears For the Limited Purpose of Challenging The Court's

3   Jurisdiction To Hear and Rule on MOUNT & STOELKER's ["M&S"] motion for a Preliminary

4   Injunction against C-ONE due to the lack of In Personam Jurisdiction.

**Introductory Facts**

5

6   In its moving papers, M&S is seeking a Preliminary Injunction against C-ONE. In

7   these papers M&S freely admits that C-ONE is a Taiwanese Corporation. M&S also avers

8   in its supporting papers that there neither is now, nor has there ever been, a written

9   contractual relationship by and between itself and C-ONE.

**Facts Supporting Lack Of In Personam Jurisdiction Over C-ONE**

10

11   As evidenced by the attached declaration, C-ONE it has never maintained a place of

12   business within the State of California, owns no property within this State and never has,

13   and, aside from having been named as a defendant in a federal patent infringement case in

14   the Northern District of California, and a superior court action in Alameda County wherein

15   personal jurisdiction was conferred as the sole result and limited purpose of an

16   indemnification agreement entered into with Memorex, the only other "contact" C-ONE has

17   had with this State was limited solely to the shipment of technological products,

18   manufactured in Taiwan, to Pretec Electronics Corporation (a California Corporation) for

19   their distribution in the United States.

**Argument**

20

21   It is well-settled in law that although service of a summons may be made on a foreign

22   corporation, the action cannot be maintained absent :minimum contacts with California [*Grey*

23   *Line Tours of Southern Nevada v. Reynolds Electric & Engineering Co., Inc.* (1987) 193

24   Cal.App.3d 190, 193]. Here, no such "minimal contacts" exist.

25   Even if it were argued that C-ONE held an interest in Pretec Electronics [*Calder v.*

26   *Jones* (1984) 465 U.S. 783, 790] since its own "contacts" with California do not in any way

27

1   constitute the level required to support local jurisdiction and, to hold otherwise, would be

2   contrary to the implicit requirement of "fair play and substantial justice" [*Fisher Governor*

3   *Co. v. Superior Court* (Prestwich) (1959) 53 Cal.2d. 222, 224].

4       C-ONE has not yet been served with a summons and complaint in this action.

5   Accordingly, its limited remedy of filing a motion to quash service of summons as a means

6   for attacking the court's in personam jurisdiction over it [C.C.P. §418.10(a)(1)] has not yet

7   matured.

8       This being the case, C-ONE has not viable alternative other than to specially appear

9   at this hearing for the limited and express purpose of challenging this court's jurisdiction

10  over it. If C-ONE were to do otherwise then, perforce, a Preliminary Injunction would issue

11  against it by way of default and thereafter would remain in place pending service of the

12  underlying compliant and an *in futuro* hearing on its motion to quash for lack of personal

13  jurisdiction. In the alternative, once properly served with the summons and complaint, C-

14  ONE would also have the option of filing a Notice of Removal on the basis of diversity of

15  citizenship in the local federal court pursuant to 28 U.S.C. 1441(b).

16                                          **Conclusion**

17      For the reasons and arguments set forth above this Court should refuse to grant M&S

18  request for the issuance of a Preliminary Injunction against C-ONE on the ground that it

19  lacks personal jurisdiction over C-ONE and is therefore unable to do so.

20  / / / /

21  Dated;        March 8, 2008

22                               MATTHEWS & PARTNERS

23

24                      By:                                      

25                                   D. P. Sindicich, Of Counsel
                                 Attorneys for Defendant

26                                   C-One Technology
                                 a Taiwan Corporation

27

## SUPPORTING DECLARATION

1    I, the undersigned, declare as follows:

2        1.    I am an officer and director of C-One Technology the named Defendant in the above-entitled cause and have personal knowledge of each fact stated herein.

3        2.    C-One Technology is a Taiwanese Corporation which has its principal place of business in Hsin Chu, Taiwan. Its address is B1, No. 57, Dong Guang Road. C-One Technology is not registered as a Foreign Corporation with the California Secretary of State and it does not have a designated agent for service of process in the State of California.

4        3.    As of the date of this declaration, C-One Technology has not been served with copies of any summons and complaint in which it has been named as a Defendant. However, C-One Technology is informed and believes, based on the representations of its attorneys of record, that notice of hearing on an application for the issuance of a Preliminary Injunction has been set for Tuesday, March 25, 2008, in Santa Clara County Superior Court which is situated in the San Francisco Bay area of Northern California.

5        4.    C-One maintains no place of business within the State of California now or at any other time. C-One's only contacts or relationship with, or activities within, the State of California prior to receipt of this notice of motion were:

6        a.    Defending against a federal patent infringement claim in the Northern District of the State of California;

7        b.    Defending against a breach of an indemnification agreement entered into with Memorex which, by express terms, required that C-One consent to jurisdiction of Alameda Superior Court for the limited purpose of its enforcement; and

8        c.    The shipment of technological products, manufactured in Taiwan, to Pretec Electronics Corporation (a California Corporation) for distribution in the United States. Pretec Electronic's corporate status has since been dissolved.

1      5.    C-One Technologies has never had a written contractual relationship with

2  Plaintiff.

3      6.    C-One Technologies has not consented to the exercise of jurisdiction over it

4  by the courts of the State of California other than for the limited and express purpose set

5  forth in the indemnification agreement with Memorex referenced above and specifically does

6  not consent to this courts exercise jurisdiction over it in this instant matter.

7      7.    C-One makes this declaration only as a special appearance in support of its

8  objection to the court hearing Plaintiff's ex parte application for a temporary restraining

9  order.

10      8.    I declare under penalty of perjury under the laws of the State of California that

11  the foregoing is true and correct except those matters stated on information and belief and

12  to those specific matters I believe them to be true.

13      9.    I further declare that I am authorized to make this declaration under penalty

14  of perjury on behalf of C-One Technology and that I am making this declaration for that

15  purpose.

16      Executed on March _11_, 2008 in Hsin Chu, Taiwan.

17

18

19

20

21

22

23

24

25

26

27

1

**Certificate of Service**
*[California Code of Civil Procedure §§ 1013a & 2015.5]*

2

3    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party within the action. My address is 4322 Wilshire Boulevard, Suite 200, Los Angeles, CA 90010.   On **March 11, 2008** served the foregoing document(s), described as follows, on all interested

4    parties in this action by placing a true copy thereof

5    Title of Document:    **SPECIAL APPEARANCE BY DEFENDANT C-ONE**

6    **TECHNOLOGIES FOR THE LIMITED PURPOSE OF CHALLENGING THE COURT'S JURISDICTION TO HEAR**

7    **PLAINTIFF MOUNT & STOELKER'S MOTION FOR PRELIMINARY INJUNCTION DUE TO LACK OF IN PERSONAM**

8    **JURISDICTION OVER NAMED DEFENDANT C-ONE**

9    **TECHNOLOGY**

10    Case Number:    BC359710

11    **SEE ATTACHED SERVICE LIST**

12    ☐    PERSONAL DELIVERY: On the above date I caused the above described document(s) to be personally hand delivered to the addressee(s)

13

14    ☐    FACSIMILE: On the above date, I caused the above-described document(s) to be sent to the addressee(s) via the facsimile number on the attached service list.

15    ☐    FEDERAL EXPRESS: On the above date I caused the above-described document(s) to be

16    sent  to the addressee(s) via Federal Express with the shipping charges fully prepaid, for ☐ Overnight ☐ Priority Overnight Delivery

17    ☒    REGULAR MAIL:

18        ☐    I deposited such envelope(s) in the United States Mail at Los Angeles, California with the postage thereon fully prepaid.

19

20        ☒    I caused such envelope(s) to be deposited in the mail at Los Angeles, California with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S.

21        Postal Service on the same day in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid of postal cancellation date

22        or postage meter date is more than one day after the date of deposit for mailing in this affidavit.

23

24    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on **March 11, 2008** at Los Angeles, California.

25

26    Melanie Ocubillo

27

28

**122**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Service List**

Jerry Hauser
Phillips, Greenberg & Hauser, L.L.P.
Four Embarcadero Center, 39th Floor
San Francisco, CA 94111
Facsimile: (415) 398-5786

Counsel for Plaintiffs

# EXHIBIT F

1 | PHILLIPS, GREENBERG & HAUSER, L.L.P.
JERRY R. HAUSER, SBN. 111568
2 | ERIK C. VAN HESPEN, SBN. 214774
Four Embarcadero Center, 39th Floor
3 | San Francisco, California 94111
Telephone:    (415) 981-7777
4 | Facsimile:    (415) 398-5786

5 | Attorneys for Defendant,
MOUNT & STOELKER, A PROFESSIONAL CORPORATION
6

7

ENDORSED

2008 APR -3 P 2: 11

KIRI TORRE, CLERK OF THE SUPERIOR COURT
COUNTY OF SANTA CLARA, CALIFORNIA
BY _____
L. Wang

8 |              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 |                   IN AND FOR THE COUNTY OF SANTA CLARA

10

11 | MOUNT & STOELKER, A PROFESSIONAL          CASE NO.: 108 CV 105975
CORPORATION,
12
Plaintiffs,                    **NOTICE OF ENTRY OF ORDER**
13
-v-
14
C-ONE TECHNOLOGY, A TAIWANESE
15 | CORPORATION; PRETEC ELECTRONICS
CORPORATION, A CALIFORNIA
16 | CORPORATION; INTERNATIONAL
CENTER FOR DISPUTE RESOLUTION, A
17 | DIVISION OF THE AMERICAN
ARBITRATION ASSOCIATION; AND
18 | DOES 1 through 50 inclusive,

19 |              Defendants.
_____/
20

21 | TO PARTIES AND THEIR ATTORNEYS OF RECORD:

22 |         PLEASE TAKE NOTICE that on March 26 2008, the Order Granting Motion for Preliminary

23 | Injunction, attached hereto as Exhibit A, was entered in the above-entitled Court.

24 | DATE: March 31, 2008                      PHILLIPS, GREENBERG & HAUSER, L.L.P.

25

26 |                                           By: _____
                                                  JERRY R. HAUSER
27

28

125

## PROOF OF SERVICE

*C-One v. Mount & Stoelker*

The undersigned declares:  I am a resident of the United States and am employed in the City and County of San Francisco, State of California; I am over the age of eighteen years and not a party to the within action; my business address is Phillips, Greenberg & Hauser, LLP, Four Embarcadero Center, 39th Floor, San Francisco, California 94111.  On the date indicated below, I served the following documents:

**NOTICE OF ENTRY OF ORDER**

by placing a true copy thereof enclosed in a sealed envelope and served in the manner described below to the interested parties herein and addressed to:

Leodis Matthews
Matthews & Partners
4322 Wilshire Blvd., Suite 200
Los Angeles, CA 95110
(323) 930-5693

Sasha Carbone
ICDR Senior Case Manager
International Centre for Dispute Resolution
1633 Broadway
New York NY 10019-6708
(212) 716-5902

X  **BY FIRST CLASS MAIL:**  By placing a true copy of each document listed above in (an) envelope(s) addressed as shown above, sealing the envelope(s) and placing them for collection and mailing, following ordinary business practices, at my employer's office on the date below written.  to be deposited in the mail at my business address, I am readily familiar with this firm's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  In the ordinary course of business such correspondence is deposited with the United States Postal Service at San Francisco, California, with first-class postage fully prepaid thereon, on the same day as I place it for collection and mailing.

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.  Executed on March 31, 2008 at San Francisco, California.

_____
Valerie Vitullo

126

1
2
3
4
5
6
7

**FILED**

MAR 26 2008

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA/County of Santa Clara
BY _J. Alvarez_ DEPUTY
J. ALVAREZ

8      **SUPERIOR COURT OF CALIFORNIA**

9      **COUNTY OF SANTA CLARA**

10

11

12  MOUNT & STOELKER                          Case No.    1-08-CV105975

13                        Plaintiff,
                                             ORDER RE: MOTION FOR
14  vs.                                      PRELIMINARY INJUNCTION

15
    C-ONE TECHNOLOGY, et al.,
16
17                        Defendants.

18

19

20      The Motion for Preliminary Injunction filed by Plaintiff Mount & Stoelker came on for

21  hearing before the Honorable Mary Jo Levinger on March 25, 2008 at 9:00 a.m. in Department 5.

22  The matter having been submitted, the Court orders as follows:

23      The Court GRANTS the Motion for Preliminary Injunction. The injunction shall become

24  effective upon the posting of the undertaking in the amount of $5,000.

25

26

27  Dated: _March 26, 2008_                  _Mary Jo Levinger_

28                                           Mary Jo Levinger
                                             Judge of the Superior Court

1

Exhibit _A_

127

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
191 N. First Street
San Jose, CA  95113-1090

# FILED

MAR 26 2008

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA/County of Santa Clara
BY _____ DEPUTY

TO:    FILE COPY

RE:  Mount & Stoelker vs C-One Technology
Case Nbr:  1-08-CV-105975

PROOF OF SERVICE

Order Re: Motion for Preliminary Injunction

was delivered to the parties listed below in the above entitled case as set
forth in the sworn declaration below.

---

Parties/Attorneys of Record:

CC: Jerry R. Hauser , Phillips Greenberg & Hauser LLP
        Four Embarcadero Center, 39th Floor, San Francisco, CA 94111
    D P Sindicich , Matthews & Partners
        4322 Wilshire Blvd, Los Angeles, CA 90010-3792
    Leodis C Matthews , Matthews & Partners
        4322 Wilshire Blvd, Los Angeles, CA 90010-3792
    International Center For Dispute Resolution

If you, a party represented by you, or a witness to be called on behlaf of that party need an accommodation under the American with
Disabilities Act, please contact the Court Administrator's office at (408)882-2700, or use the Court's TDD line, (408)882-2690 or
the Voice/TDD California Relay Service, (800)735-2922.

DECLARATION OF SERVICE BY MAIL: I declare that I served this notice by enclosing a true copy in a sealed envelope, addressed to each
person whose name is shown above, and by depositing the envelope with postage fully prepaid, in the United States Mail at
San Jose, CA on 03/26/08.  KIRI TORRE, Chief Executive Officer/Clerk by Jean Alvarez, Deputy

128

1

## PROOF OF SERVICE

2

### C-One v. Mount & Stoelker

3

4

5

6

        The undersigned declares:  I am a resident of the United States and am employed in the City
and County of San Francisco, State of California; I am over the age of eighteen years and not a party
to the within action; my business address is Phillips, Greenberg & Hauser, LLP, Four Embarcadero
Center, 39th Floor, San Francisco, California 94111.  On the date indicated below, I served the
following documents:

7

**NOTICE OF ENTRY OF ORDER**

8

9

by placing a true copy thereof enclosed in a sealed envelope and served in the manner described
below to the interested parties herein and addressed to:

10

11

12

Leodis Matthews                             Sasha Carbone
Matthews & Partners                         ICDR Senior Case Manager
4322 Wilshire Blvd., Suite 200              International Centre for Dispute Resolution
Los Angeles, CA 95110                       1633 Broadway
(323) 930-5693                              New York NY 10019-6708
                                            (212) 716-5902

13

14

15

16

17

18

<u>X</u>     **BY FIRST CLASS MAIL:**  By placing a true copy of each document listed above in
        (an) envelope(s) addressed as shown above, sealing the envelope(s) and placing them for
        collection and mailing, following ordinary business practices, at my employer's office on the
        date below written.  to be deposited in the mail at my business address, I am readily familiar
        with this firm's business practice for collection and processing of correspondence for mailing
        with the United States Postal Service.  In the ordinary course of business such correspondence
        is deposited with the United States Postal Service at San Francisco, California, with first-class
        postage fully prepaid thereon, on the same day as I place it for collection and mailing.

19

20

        I declare under penalty of perjury under the laws of the State of California that the forgoing is
true and correct.  Executed on March 31, 2008 at San Francisco, California.

21

22

_____
                Valerie Vitullo

23

24

25

26

27

28

**129**